**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IOENGINE, LLC, | ) |
| | ) |
| *Plaintiff*, | ) Civil Action No. 18-452 (GMS) |
| | ) |
| v. | ) |
| | ) |
| PAYPAL HOLDINGS, INC., | ) JURY TRIAL DEMANDED |
| | ) |
| *Defendants*. | ) |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**</u>
<u>**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

SMITH, KATZENSTEIN & JENKINS LLP

*Of Counsel:*

Noah M. Leibowitz
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
(212) 698-3538
noah.leibowitz@dechert.com

Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Plaintiff IOENGINE, LLC*

Dated: July 9, 2018

# <u>TABLE OF CONTENTS</u>

**Page**

I.     NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.    SUMMARY OF ARGUMENT ........................................................................................ 1

III.   FACTUAL BACKGROUND .......................................................................................... 4

IV.    LEGAL STANDARD ..................................................................................................... 6

V.     ARGUMENT ................................................................................................................... 7

     A.     IOENGINE's Complaint Provides Notice of Direct Infringement of the
          Patents-in-Suit .......................................................................................................... 7

     B.     IOENGINE's Allegations of Willful Infringement are Well-Pleaded .................. 8

     C.     IOENGINE's Complaint Adequately Pleads Inducement ................................... 11

     D.     IOENGINE's Complaint Adequately Pleads Contributory Infringement ........... 14

     E.     IOENGINE's Complaint Adequately Pleads Joint Infringement ....................... 17

          1.     IOENGINE's Complaint Contains Facts Sufficient for a
               Reasonable Inference that PayPal Directs or Controls its POS
               Partners ...................................................................................................... 17

          2.     IOENGINE's Complaint Contains Facts Sufficient for a
               Reasonable Inference that a Joint Enterprise Exists Between
               PayPal and its POS Partners ...................................................................... 19

VI.    CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)........................................................................17, 18, 19, 20

*Apeldyn Corp. v. Sony Corp.*,
  852 F. Supp. 2d 568 (D. Del. 2012)..............................................................................2, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................6, 12, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................6, 12, 16

*Bio-Rad Labs Inc. v. Thermo Fisher Sci. Inc.*,
  267 F. Supp. 3d 499 (D. Del. 2017)..........................................................................11

*BlackBerry Ltd. v. Nokia Corp.*,
  No. 17-cv-155, 2018 WL 1401330 (D. Del. Mar. 20, 2018)....................................2, 8

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
  73 F. Supp. 3d 435, 441 (D. Del. 2014)....................................................................15

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465, 473 (D. Del. 2016) (Robinson, J.) ................................2, 8, 14

*E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH*,
  No. 11-773, 2012 WL 4511258 (D. Del. Sept. 28, 2012)......................................12

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
  802 F. Supp. 2d 527 (D. Del. 2011)..........................................................................19

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)..................................................................................16

*Halo Elecs., Inc. v. Pulse Elecs, Inc.*,
  136 S. Ct. 1923 (2016)................................................................................................8, 11

*Intellectual Ventures I LLC v. Ricoh Co.*,
  67 F.Supp.3d 656, 660 (D. Del. 2014)......................................................................16

*Kedra v. Schroeter*,
  876 F.3d 424 (3d Cir. 2017)......................................................................................6

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
     714 F.3d 1277 (Fed. Cir. 2013).............................................................................6

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
     No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018)........................................11

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
     869 F.3d 1372 (Fed. Cir. 2017)...........................................................................6, 7

*Lyda v. CBS Corp.*,
     838 F.3d 1331 (Fed. Cir. 2016)...........................................................................17

*McRo, Inc. v. Rockstar Games, Inc.*,
     No. 12-1513, 2014 WL 1051527 (D. Del. Mar. 17, 2014)..............................13, 14

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
     851 F.3d 1275 (Fed Cir. 2017)......................................................................9, 10, 11

*Nalco Co. v. Chem-Mod, LLC*,
     883 F.3d 1337 (Fed. Cir. 2018)...........................................................................11

*Phillips v. Cnty. of Allegheny*,
     515 F.3d 224 (3d Cir. 2008)..................................................................................6

*Pragmatus AV, LLC v. TangoMe, Inc.*,
     No. 11-1092, 2013 WL 571798 (D. Del. Feb. 13, 2013)......................................19

*Preferential Networks IP, LLC v. AT&T Mobility, LLC*,
     No. 2:16-cv-01374, 2017 WL 3816109 (E.D. Tex. July 15, 2017).........................8

*Rhodes Pharm. L.P. v. Indivior, Inc.*,
     No. 16-1308, 2018 WL 326405 (D. Del. Jan. 8, 2018) ...................................13, 16

*Taylor v. Peoples Natural Gas Co.*,
     49 F.3d 982 (3d Cir. 1995)...................................................................................10

*Telecomm Innovations, LLC v. Ricoh Co.*,
     966 F. Supp. 2d 390 (D. Del. 2013).................................................................12, 13

*Välinge Innovation AB v. Halstead New England Corp.*,
     No. 16-1082, 2018 WL 2411218 (D. Del. May 29, 2018) ....................9, 10, 11, 20

*Varian Med. Sys. v. Elekta, AB*,
     No. 15-871, 2016 WL 3748772 (D. Del. July 12, 2016)..................................9, 11

*Walker Digital, LLC v. Facebook, Inc.*,
     852 F. Supp. 2d 559 (D. Del. 2012)......................................................................15

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................................12

Fed. R. Civ. P. 12(b)(6) ................................................................................................ *passim*

## I.      NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement case filed by Plaintiff IOENGINE, LLC ("IOENGINE") against Defendant PayPal Holdings, Inc. ("PayPal").  *See* Complaint (D.I. 1).  Defendant PayPal has moved to dismiss IOENGINE's claims of willful infringement, induced infringement, contributory infringement, and joint infringement pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 8) (the "Motion").[1]  IOENGINE opposes PayPal's Motion.

## II.     SUMMARY OF ARGUMENT

1.      PayPal's Motion does not challenge—and therefore concedes for Rule 12(b)(6) purposes—that IOENGINE's direct, individual[2] infringement claims are well-pleaded.  Indeed, the Complaint contains over 80 pages of allegations detailing, on an element-by-element basis, how each of the accused PayPal products infringes a representative claim of each of IOENGINE's three patents-in-suit.  The Complaint cites to PayPal's product documentation, its website, instructional videos that PayPal distributes on YouTube and by other means, and pictures of tear-downs of the accused products, showing their internal components.

2.      PayPal moves to dismiss only IOENGINE's claims of willful infringement, indirect infringement (inducement and contributory infringement) and joint infringement.  But PayPal's Motion mistakes the applicable law and ignores the effect of the Complaint's detailed and lengthy allegations.  According to PayPal's principal argument, IOENGINE's willful infringement and indirect infringement claims fail because IOENGINE has not demonstrated PayPal's pre-suit

---

[1] While PayPal's brief begins with a request that the Court dismiss "the Complaint," *see* D.I. 9 at 4 (the "Op. Brief"), PayPal's Motion relates only to IOENGINE's claims of willful infringement, induced infringement, contributory infringement, and joint infringement.  *Id*.  Accordingly, there is no basis on which to dismiss the entirety of the Complaint.

[2] PayPal does challenge whether the direct infringement allegations support IOENGINE's ***joint*** infringement claims.  That argument is addressed below.

knowledge of the patents-in-suit.  But this is not necessary at the pleading stage.  Instead, claims of willful infringement can be predicated on continued infringement in the face of knowledge of the patent and notice of infringement derived from the complaint itself.  *See*, *e.g.*, *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (Robinson, J.); *BlackBerry Ltd. v. Nokia Corp.*, No. 17-cv-155, 2018 WL 1401330, at *3-4 (D. Del. Mar. 20, 2018).  Here, IOENGINE alleges, for example, that "[s]ince at least after receiving notice of this Complaint, Defendant has knowingly infringed…"  *See*, *e.g.*, Complaint at ¶ 26.  Coupled with the detailed allegations of direct infringement in the Complaint, which put PayPal on notice of its infringing conduct, at least as of that date—the sufficiency of which PayPal does not challenge—an allegation of post-Complaint knowledge is sufficient to support a claim of willful infringement.

3.      Likewise, on its indirect infringement claims, IOENGINE alleges, among other things, that "[s]ince at least after receiving notice of this Complaint, Defendant has knowingly contributed to the infringement of and induced infringement of, and continues to knowingly contribute to the infringement of and induce infringement of, one or more claims of the [Asserted] Patent[s]."  Complaint at ¶¶ 98, 178 and 273.  Each of these statements follows pages of detailed allegations of direct infringement, which the Complaint "repeats, re-alleges and incorporates by reference" into the claims of indirect infringement.  *See* Complaint at ¶¶ 97, 177, 272.  Again, knowledge of the patents-in-suit and infringing conduct provided in the Complaint satisfy the pleading requirements for indirect infringement.  *See*, *e.g.*, *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568 (D. Del. 2012).

4.      PayPal's other challenges to IOENGINE's indirect infringement claims are no better.  PayPal characterizes IOENGINE's inducement allegations as "conclusory" and "unsubstantiated," but they are not.  As explained below, IOENGINE specifically alleges—and

cites to PayPal's documentation, software repositories, websites and videos showing—that PayPal provides software development kits, technical information and support, instructional videos, documentation, and website materials, in each case that teach and encourage use of the accused PayPal products in an infringing manner. *See*, *e.g.*, Complaint at ¶¶ 28-96, 111-176, 186-271. Similarly, PayPal contends that the Complaint does not allege any "facts" showing that the accused products have no substantial non-infringing use. But PayPal can only reach that conclusion by ignoring the detailed allegations of direct infringement, showing how the accused products are specially adapted for use in a manner that infringes the patents-in-suit, and not staple articles of commerce having substantial non-infringing uses. Tellingly, PayPal's Motion does not identify a single non-infringing use for the accused products.

5.      Finally, with respect to joint infringement, PayPal asserts that IOENGINE does not plead that PayPal "directs or controls" or engages in a joint enterprise with any third party. Once again, PayPal ignores the Complaint's allegations that PayPal "provid[es] software development kits for PayPal Infringing Products[3]" and "instruct[s], and encourage[s] customers, Point of Sale Partners, and third parties to 'create fully customized, branded apps that enable credit or debit card payments in-store using PayPal card readers,'" (Complaint at ¶ 22, 100, 180, 275), and that PayPal maintains a website dedicated to its point-of-sale collaborators, which it refers to as its "POS partners." *Id*. at ¶ 22, nn.5-10. These allegations are more than sufficient to create a reasonable inference that PayPal directs or controls its POS Partners, or engages in a joint enterprise with those "Partners," which is all that is required at the pleading stage.

---

[3] *See* Complaint at ¶ 20 (describing the PayPal Infringing Products, which include, among other products and services, the PayPal Chip Card Reader, PayPal Mobile Card Reader, PayPal Chip and Swipe Reader, and PayPal Chip and Tap Reader, as well as PayPal or third-party mobile applications used in connection with PayPal's card reader products, such as the PayPal Here App).

6.     In sum, the Complaint adequately pleads willful infringement, inducement, contributory infringement and joint infringement.  PayPal's Motion must accordingly be denied.

## III.    FACTUAL BACKGROUND

On March 23, 2018, IOENGINE filed its Complaint for Patent Infringement (D.I. 1) ("the "Complaint").  On that same date, IOENGINE sent a letter attaching a copy of the Complaint and the patents-in-suit to Louise Pentland and Wanji Walcott, Executive Vice President, Chief Business Affairs and Legal Officer at PayPal, and Senior Vice President, General Counsel at PayPal, respectively, by email and Federal Express.  *See* Declaration of Noah M. Leibowitz (the "Leibowitz Decl.") at Ex. A.  IOENGINE formally served the Complaint on PayPal two weeks later.  (D.I. 6).  The Complaint contains extensive, detailed allegations as to how each of the PayPal Infringing Products infringes an exemplary claim of each of the three IOENGINE patents-in-suit, *i.e.* U.S. Patent Nos. 8,539,047 (the "'047 Patent"), 9,059,969 (the "'969 Patent"), and 9,774,703 (the "'703 Patent") (collectively, the "Patents-in-Suit").  The infringement allegations detail the functionality of the PayPal Infringing Products and include:

- Citations to PayPal documents, screen captures from PayPal instructional videos, screen captures of the PayPal Here App, and pictures of the internal components of the devices (s*ee*, *e.g.*, Complaint at ¶¶ 28-96, 111-176, 186-271);

- Citations to PayPal's "PayPal Developer" website, which provides extensive documentation directing how PayPal's third party "partners" can use PayPal's Software Development Kit ("SDK") to develop apps compatible with PayPal's mobile payment devices and systems (*see*, *e.g.*, Complaint at ¶¶ 22, 100, 180, 275);

- Citations to PayPal's website, which instructs and encourages end users to use the PayPal Infringing Products in an infringing manner (*see*, *e.g.*, Complaint at ¶¶ 101, 181, 276); and

- Citations to PayPal's "Verified" YouTube video channel, which includes videos that instruct and encourage end users to make and accept mobile payments in a way that infringes the Patents-in-Suit (*see*, *e.g.,* Complaint at ¶¶ 102, 103, 182, 183, 277, 278; *see also* Leibowitz Decl. Ex. E).[4]

These detailed allegations, which span over 80 pages of the Complaint, are provided in support of IOENGINE's allegations of willfulness, inducement, contributory infringement, and joint infringement.  By way of example, the Complaint includes citations to PayPal's website (*see* Complaint at ¶¶ 101, 181, 276), which instructs and encourages end users to "[s]ign up for PayPal Here," "[d]ownload the [infringing] PayPal Here app," and "[p]urchase an [infringing] card reader."  *See* https://www.paypal.com/us/webapps/mpp/credit-card-reader.  Further, IOENGINE's Complaint refers to PayPal's "Verified" YouTube video channel (*see* Complaint at ¶¶ 102, 103, 182, 183, 277, 278), which contains more than a dozen videos that instruct and encourage customers to use the PayPal card readers and PayPal Here App to make and accept mobile payments in ways that infringe the Patents-in-Suit.  *See* https://www.youtube.com/user/PayPal.  IOENGINE's infringement allegations even provide screen captures from some of these videos, which demonstrate use of the infringing functionality.  *See, e.g.*, Complaint at ¶ 34 (demonstrating how to perform the process of connecting a reader device to a smartphone), ¶ 38 (demonstrating

---

[4] On YouTube, a verification badge indicates that the channel belongs to an established creator or is the official channel of a brand, business, or organization.  Leibowitz Decl. Ex. E.  To obtain verification, a YouTube channel must have 100,000 subscribers.  *Id.*

how to enter a charge amount and initiate the charge).  Finally, the Complaint "repeats, re-alleges and incorporates by reference" these allegations into the claims of indirect infringement.  *See* Complaint at ¶¶ 97, 177, 272.  It is these detailed allegations that PayPal presently challenges.

## IV.   LEGAL STANDARD

In considering a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); s*ee also Kedra v. Schroeter*, 876 F.3d 424, 440-41 (3d Cir. 2017).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, 556 U.S. at 678.  Although the standard "asks for more than a sheer possibility that a defendant has acted unlawfully," it is not "akin to a probability requirement."  *Id.*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 554-55 (internal quotations omitted).  Ultimately, there is no requirement for a plaintiff to "prove its case at the pleading state" to survive a Rule 12(b)(6) motion.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotations omitted).  Rather, a plaintiff need only to "place the alleged infringer 'on notice of what activity… is being accused of infringement.'"  *Id.* (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013) (omission in original)).

## V.      ARGUMENT

### A.      IOENGINE's Complaint Provides Notice of Direct Infringement of the Patents-in-Suit

PayPal does not move to dismiss the Complaint's allegations of direct, individual infringement, and so it is undisputed that the filing of the Complaint on March 23, 2018 establishes PayPal's actual knowledge of the Patents-in-Suit and its direct infringement at least as of that date. *See Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 573 (D. Del. 2012) (finding the filing of litigation asserting infringement "indisputably" makes the defendant aware of the patent).   In addition, that same day, IOENGINE provided PayPal with a copy of the Complaint and Patents-in-Suit by email and Federal Express.   *See* Leibowitz Decl. Ex. A.   IOENGINE's Complaint contains over 80 pages of detailed allegations, on an element-by-element basis, as to how each of the PayPal Infringing Products infringes a representative claim of each of the Patents-in-Suit. These allegations include citations to PayPal documents and software repositories, links to and screen captures from PayPal's instructional videos, screen captures of the PayPal Here App showing infringing functionality being carried out, and tear-down pictures of the internal components of the infringing PayPal devices.   *See*, *e.g.*, Complaint at ¶¶ 28-96, 111-176, 186-271.[5]

The detailed infringement allegations in IOENGINE's Complaint sufficiently meet the standard necessary to plead direct infringement.   There is no requirement that IOENGINE "prove its case at the pleading stage"; it need only "place the alleged infringer 'on notice of what activity . . . is being accused of infringement."   *Lifetime Indus.*, 869 F.3d at 1379.   The Complaint clearly

---

[5] Unsurprisingly, PayPal does not dispute the sufficiency of IOENGINE's allegations of direct, individual infringement.  Op. Brief at 2.

lays out the products and activities accused of infringing and provides notice of those products and activities to PayPal.

### B.     IOENGINE's Allegations of Willful Infringement are Well-Pleaded

As described above, IOENGINE's Complaint (as well as its correspondence to PayPal's Executive Vice President, Chief Business Affairs and Legal Officer, and Senior Vice President, General Counsel on that day) provided PayPal with knowledge of the Patents-in-Suit and put PayPal on notice of its infringement.  Accordingly, IOENGINE has adequately pleaded that PayPal's continued infringement, at least *after* receiving the Complaint on March 23, 2018, is willful.  *See*, *e.g.*, Complaint at ¶ 26 ("Since at least after receiving notice of this Complaint, Defendant has knowingly infringed…").  *See also id*. at ¶¶ 109, 189.  On this basis, IOENGINE's allegations of willful infringement satisfy Rule 12(b)(6) and PayPal's Motion should be denied.

The notice of infringement provided by IOENGINE's Complaint is sufficient to support a claim of willfulness.  *See DermaFocus LLC*, 201 F. Supp. 3d at 473 (noting that post-*Halo*, "mere notice of the charge of infringement gleaned from service of the complaint" is sufficient for willful infringement claims to withstand a motion to dismiss); s*ee also BlackBerry Ltd.*, 2018 WL 1401330, at *3-4 (finding that, at the motion to dismiss stage, a complaint that adequately pleads direct infringement places a defendant on notice of the asserted patents and its allegedly infringing activity and is sufficient to support a willful infringement claim); *Preferential Networks IP, LLC v. AT&T Mobility, LLC*, No. 2:16-cv-01374, 2017 WL 3816109, at *4 (E.D. Tex. July 15, 2017) ("[U]nder *Halo*, mere notice of the charge of infringement resulting from service of the complaint is sufficient to withstand a Rule 12(b)(6) challenge to a claim for enhanced damages.") (citing *DermaFocus*, 201 F. Supp. 3d at 473).

PayPal principally cites two cases in support of its theory that the Complaint does not adequately plead willfulness.  Neither stands for what PayPal asserts.

In *Varian Medical Systems v. Elekta, AB*, No. 15-871, 2016 WL 3748772 (D. Del. July 12, 2016) the Court dismissed the willfulness claims because it found that "the Complaint [did] not sufficiently articulate how . . . use of the product can be said to constitute infringement of at least claim 1 of the patent-in-suit." *Id.* at *4. In short, the willful infringement claim in *Varian* failed because the allegations of direct infringement were *not* well-pleaded. But that is not the case here. IOENGINE has clearly and extensively pleaded, on an element-by-element basis, how PayPal infringes the Patents-in-Suit, and PayPal does not challenge the sufficiency of the direct, individual infringement allegations. *See*, *e.g.*, Complaint at ¶¶ 28-96, 111-176, 186-271. There can be no doubt that PayPal was on notice of the Patents-in-Suit and its infringing conduct as of the date of the Complaint.

*Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082, 2018 WL 2411218 (D. Del. May 29, 2018) is similarly distinguishable. In *Välinge*, the Court did not, as PayPal incorrectly states, conclude that a *well-pleaded* complaint "was an insufficient basis to plausibly infer that defendant had the requisite subjective intent to infringe." Op. Brief at 16. Instead, the Court found a lack of notice for the purposes of willfulness because "[plaintiff] did not plead sufficient facts in the [second amended complaint] to plausibly demonstrate that, between the date of filing of the original Complaint and the date of the filing of the [second amended complaint] Defendants were on notice of how it is that they were said to infringe the asserted patents." *Välinge*, 2018 WL 2411218, at *13.

*Välinge* also premised its reasoning on the Federal Circuit's opinion in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed Cir. 2017). But *Mentor Graphics* did not address the issue of whether post-complaint infringement is a sufficient basis on which to allege willfulness. Instead, *Mentor Graphics* **reversed** a motion *in limine* decision that precluded the patentee from

9

presenting evidence of willful infringement, finding that the district court abused its discretion, and remanded for consideration of willfulness. *Id.* at 1295. In so doing, the Court determined that the relevant date for determining whether infringing conduct is pre-suit or post-suit is the date of the patentee's affirmative allegation of infringement (the patentee's counterclaim date in that case, which originated as a declaratory judgment action). *Id.* It then found that the conduct in question was pre-suit, not post-suit. *Mentor Graphics* also held that a patentee need not move for a preliminary injunction in order to state a claim for willful infringement. *Id.* *Välinge* interprets these rulings to say that a claim for willful infringement should allege that the infringer willfully infringed the patent prior to the date of the governing pleading. *Välinge*, 2018 WL 2411218, at *11. But this infers a pleading standard, which the Federal Circuit nowhere established, from an evidentiary ruling that remanded for a consideration of willfulness. It also conflicts with the longstanding premise of appellate procedure that a reviewing court will decide the issue before it on the narrowest possible grounds. *Taylor v. Peoples Nat. Gas Co.*, 49 F.3d 982, 991 (3d Cir. 1995) ("It is well settled law that in general cases are to be decided on the narrowest legal grounds available…") (internal quotations omitted). The Federal Circuit did not need to decide the question of whether post-complaint infringement is sufficient to support an allegation of willfulness, because it found that the infringing conduct at issue in *Mentor Graphics* was pre-complaint.

Importantly, the *Välinge* court held that an amended complaint could adequately support an allegation of willfulness based on the time between the filing of the initial complaint and the amendment. Accordingly, should the Court here be persuaded by PayPal's argument, the simple remedy is to permit an amended complaint that alleges willfulness based on PayPal's knowledge of the March 23, 2018 Complaint. It is respectfully submitted, however, that this elevation of form over substance, which would necessitate an amended pleading to allege willfulness in nearly every

10

patent case, demonstrates that PayPal's reliance on the *Välinge* court's interpretation of *Mentor Graphics* (which did not so hold) is questionable, particularly in light of this Court's precedent that holds the opposite.

Finally, PayPal argues that IOENGINE's allegations of willfulness should be dismissed for failing to "plausibly show[]… 'egregious' misconduct." Op. Brief at 15. But PayPal then admits (as it must, based on this Court's precedent) that "'egregiousness' should not be a part of the calculus for determining whether a patentee has set out a plausible claim of willful infringement." *See id.* (quoting *Välinge*, 2018 WL 2411218, at *13); *see also Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018) ("[E]ven after Halo, broader allegations of willfulness without a specific showing of egregiousness are sufficient to withstand a motion to dismiss.") (citing *Bio-Rad Labs Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) ("At the pleading stage, it is not necessary to show that the case is egregious."). The cases that PayPal cites are not to the contrary. Although *Halo* held that egregious conduct can support a finding of willful infringement, it did not establish a *pleading* standard. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-34 (2016). Nor did *Varian* require that egregiousness be specifically pleaded. *Varian*, 2016 WL 3748772, at *7-8.

Because the Complaint's allegations of willful infringement pass muster under Rule 12(b)(6), PayPal's Motion to dismiss IOENGINE's willful infringement claims should be denied.

## C.    IOENGINE's Complaint Adequately Pleads Inducement

To survive a motion to dismiss an allegation of induced infringement, a complaint need only "plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (quoting *Lifetime Indus.*, 869 F.3d at 1379 (Fed. Cir. 2017)) (alterations in original); s*ee also Telecomm Innovations, LLC v.*

11

*Ricoh Co.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013) ("For a post-complaint claim of induced infringement to pass muster under Federal Rule of Civil Procedure 8, plaintiff need only identify the patent-at-issue, the allegedly infringing conduct, the notice afforded by service of the original complaint, and the apparent decision to continue the inducement post-service") (internal citations omitted).  Of particular import on the instant Motion, "while *Twombly* and *Iqbal* require facts to be pled that allow for the plausible inference that the elements of an inducement claim can be met, when it comes to knowledge of the patent-at issue, a plaintiff's filing (and a defendant's receipt) of the complaint are facts that establish such knowledge—at least as of the date of the filing." *E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH*, No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012).

IOENGINE's March 23, 2018 Complaint provided PayPal with actual knowledge of the Patents-in-Suit and notice of infringement.  That same Complaint included a detailed description of direct infringement of each of the Patents-in-Suit, and PayPal has not challenged the sufficiency of those direct, individual infringement allegations.  *See* Section III, *supra*.  This is sufficient knowledge of the Patents-in-Suit and infringement for purposes of an inducement claim.  *See Telecomm Innovations,* 966 F. Supp. 2d at 393; *Heraeus*, 2012 WL 4511258, at *6.

IOENGINE's Complaint also provides a detailed description of PayPal's intent to induce infringement by third parties "[s]ince at least after receiving notice of [the] Complaint."  Complaint at ¶ 98; s*ee also id.* at ¶¶ 178, 273.  Specifically, the Complaint provides citations to PayPal's explicit encouragement and instructions to its customers to carry out infringing activities.  For example, the Complaint includes citations to PayPal's website (*see* Complaint at ¶¶ 101, 181, 276) which instructs and encourages end users to "[s]ign up for PayPal Here," "[d]ownload the [infringing] PayPal Here app," and "[p]urchase an [infringing] card reader."  *See*

12

https://www.paypal.com/us/webapps/mpp/credit-card-reader.  Further, IOENGINE's Complaint

refers to PayPal's "Verified" YouTube video channel (*see* Complaint at ¶¶ 102, 103, 182, 183,

277, 278), which contains more than a dozen videos that instruct and encourage customers to make

and   accept   mobile   payments   in   ways   that   infringe   the   Patents-in-Suit.    *See*

https://www.youtube.com/user/PayPal.    IOENGINE's   infringement   allegations   even   provide

screen captures from some of these videos, which demonstrate use of the infringing functionality.

*See, e.g.*, Complaint at ¶ 34 (demonstrating how to perform the process of connecting a reader

device to a smartphone), ¶ 38 (demonstrating how to enter a charge amount and initiate the charge).

These citations to PayPal's website and "Verified" YouTube channel are more than

sufficient to show that inducement is plausible and to overcome PayPal's Rule 12(b)(6) challenge.

*See Telecomm Innovations*, 966 F. Supp. 2d at 395 (D. Del. 2013) (finding inducement of

infringement sufficiently pleaded where plaintiff alleged "that defendants provided technical

support and instructions to their customers on how to use products in such a way as to infringe the

patented invention"); *Rhodes Pharm. L.P. v. Indivior, Inc.*, No. 16-1308, 2018 WL 326405, at *8

(D. Del. Jan. 8, 2018) (declining to dismiss claim of induced infringement where complaint, via

examples of pharmaceutical prescribing information, provided defendant with notice of the

induced infringement claim).

PayPal relies upon *McRo, Inc. v. Rockstar Games, Inc.*, No. 12-1513, 2014 WL 1051527

(D. Del. Mar. 17, 2014) for the argument that IOENGINE's infringement allegations are

insufficient, implying that "little of substance is said [by IOENGINE] about what that 'something

[*i.e.*, infringement]' is in the first place."  Op. Brief at 12 (quoting *McRo,* 2014 WL 1051527, at

*6).  But *McRo* is entirely distinguishable.  In *McRo,* the plaintiff "[failed to] plead[] sufficient

facts relating to how [third party] game developers' actions are said to amount to infringement."

13

*McRo*, 2014 WL 1051527, at *6.[6]   The finding in *McRo* is entirely inapplicable to IOENGINE's

Complaint, which includes significant detail on how end users infringe by using the PayPal

Infringing Products to accept mobile payments and how PayPal instructs and encourages that

infringement with its product documentation, websites and videos.   Further, the Complaint

specifically "repeats, re-alleges and incorporates by reference" the direct infringement allegations

into the inducement claims.   *See* Complaint at ¶¶ 97, 177, 272.

Accordingly, IOENGINE's allegations of inducement of infringement pass muster under

Rule 12(b)(6) and PayPal's Motion should be denied as to IOENGINE's inducement claims.

### D.   IOENGINE's Complaint Adequately Pleads Contributory Infringement

PayPal challenges IOENGINE's contributory infringement allegations in two respects,

asserting that they do not adequately plead: (1) knowledge of the Patents-in-Suit and intent to

infringe; and (2) that the PayPal Infringing Products have no substantial non-infringing use.   Op.

Brief at 13-15.   As discussed above, IOENGINE's Complaint provided PayPal with actual

knowledge of the Patents-in-Suit and with a detailed description of how the combination of "the

PayPal Infringing Products with PayPal's Point of Sale Partner['s] [Apps]," infringe the Patents-

in-Suit.   Complaint at ¶ 22; *see also id*. at ¶¶ 97-105, 177-85, 272-80.   That is sufficient to

adequately plead knowledge of the Patents-in-Suit and infringement for purposes of contributory

infringement.   *DermaFocus*, 201 F. Supp. 3d at 471 (finding that contributory infringement was

adequately pleaded where plaintiff showed that defendant "had (at least post-suit) knowledge of

the patent").   Moreover, as alleged, PayPal intended for the infringement to continue as it (i)

---

[6] The *McRo* Court found that those allegations lacked any detail on "'which [particular computer or video] games are at issue'; 'what qualities those games share that would infringe the specific mechanisms for lip-synchronization claimed in the patents-in-suit'; or 'how any video game products allegedly infringe.'"   *Id*.

14

"continue[d] to offer for sale and sell, [those] products and services embodying the patented inventions," Complaint at ¶ 8; and (ii) "knowingly contribute[d] to the infringement of … one or more claims of the [Patents-in-Suit] with specific intent that the PayPal Infringing Products be used by its customers, Point of Sale Partners, and third parties to directly infringe the [Patents-in-Suit]..."  Complaint at ¶¶ 98, 178, 273.  This suffices to show an intent to infringe.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565-67 (D. Del. 2012) (finding allegations that defendants, armed with the knowledge of the complaint, continued the allegedly infringing conduct sufficient to establish intent to infringe).

PayPal argues that IOENGINE failed to plead that the PayPal Infringing Products have no substantial non-infringing use.  *See* Op. Brief at 14.  But that is simply incorrect.  IOENGINE alleges that the PayPal Infringing Products "constitute a material part of the invention and are not staple articles or commodities of commerce suitable for substantial non-infringing use." Complaint at ¶¶ 26, 98, 109, 178, 189, 273.  And the detailed allegations explaining the operation of the PayPal Infringing Products and their infringement, which PayPal does not challenge and which are incorporated by reference into the indirect infringement claims, support that the PayPal Infringing Products are not "staple articles or commodities of commerce suitable for substantial non-infringing use."  *See Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 441 (D. Del. 2014) (denying a motion to dismiss claims of contributory infringement and finding that even "summary statements for . . . contributory infringement [that are] facially plausible [can] provide [defendant] notice of the indirect infringement claims," "at least [since] the filing date of the complaint").

Moreover, as detailed in IOENGINE's Complaint, the PayPal Infringing Products are designed to carry out the claimed functionality.  The purpose of PayPal's infringing products is to

be "portable device[s] that offer[] a 'secure way to process chip card, contactless, and swipe payments on-the-go or in your store.'"  Complaint at ¶ 28 (describing the infringing PayPal Chip Card Reader) (quoting the PayPal Chip Card Reader Guide, available at https://www.paypal.com/us/webapps/mpp/credit-card-reader-how-to/chip-card-reader); s*ee also* Complaint at ¶¶ 46, 60, 77, 128, 142, 158, 212, 229, 249.  The Complaint also describes in detail the manner in which the infringing PayPal devices operate and infringe, by "[performing] card reader device setup, processing chip card ('EMV') card payments, processing magnetic stripe card payments, processing contactless payments, processing refunds, and processing firmware updates."  Complaint at ¶¶ 104, 184, 179 (describing the PayPal Chip Card Reader); *see also* Complaint at 9-34, 39-63, 68-96.

IOENGINE has adequately stated a claim for contributory infringement by "plead[ing] facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Intellectual Ventures I LLC v. Ricoh Co.*, 67 F. Supp. 3d 656, 660 (D. Del. 2014) (internal quotes omitted); *see also Rhodes Pharm.*, 2018 WL 326405, at *9 ("A simple allegation that a product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal*").  Tellingly, in its Motion, PayPal does not identify *any* other uses of the PayPal Infringing Products, let along any *substantial non-infringing* use.  To the extent that any separate and distinct, non-infringing uses of the infringing products *do* exist—none of which have been identified by PayPal—the mere possibility of such unknown, separate, and distinct uses would not render IOENGINE's pleading inadequate.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331 (Fed. Cir. 2010) (finding that an accused product had no substantial non-infringing uses where any potential non-infringing uses were "separate and distinct" functions).

IOENGINE's allegations of contributory infringement are sufficient under Rule 12(b)(6), and PayPal's Motion should be denied as to IOENGINE's contributory infringement claims.

### E.       IOENGINE's Complaint Adequately Pleads Joint Infringement

In addition to its allegations of direct, individual infringement, IOENGINE's Complaint also alleges that PayPal *jointly* infringes by, for example, orchestrating the infringing use of the PayPal Infringing Products by PayPal's Point of Sale "Partners" and their mobile payment apps. *See, e.g.*, Complaint at ¶ 32 (describing the infringing terminal as "for example, an Apple iOS or Android device . . . that contains the PayPal Here App ***or a POS Partner App***") (emphasis added).

To survive a motion to dismiss, a claim of joint infringement need additionally "plead[] facts sufficient to allow a reasonable inference that . . . *either* (1) one party exercises the requisite 'direction or control' over the others' performance *or* (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)) (emphasis added).   IOENGINE's Complaint satisfies both alternative prongs of the relevant analysis.

### 1.    IOENGINE's Complaint Contains Facts Sufficient for a Reasonable Inference that PayPal Directs or Controls its POS Partners

PayPal's relationship with its POS Partners, as alleged in the Complaint, allows a reasonable inference that PayPal exercises direction or control over its POS Partners.

The Federal Circuit has held that the 'direction or control' test can be met "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs.*, 797 F.3d at 1023.   IOENGINE's Complaint describes how PayPal "provid[es] software development kits for the PayPal Infringing Products," which "instruct, and encourage customers,

17

Point of Sale Partners, and third parties to 'create fully customized, branded apps that enable credit or debit card payments in-store using PayPal card readers.'" Complaint at ¶¶ 22, 100, 180, 275 (quoting https://developer.paypal.com/docs/integration/paypal-here/ (the "PayPal Developer Website") (Leibowitz Decl. Ex. B)); *see also* Complaint at nn.4, 30, 45, 59 (referring to PayPal's Developer Website). The PayPal Developer Website referenced in the Complaint also explains that "[t]he PayPal Here (PPH) SDK enables third-party providers or merchants to integrate PayPal Here's point-of-sale payment solution in their app," and provides third parties with sample iOS and Android applications, an SDK Guide, a SandBox Testing Guide to "[t]est [third-party] integration in [PayPal's] sandbox environment," a Merchant OnBoarding Guide, a list of Best Practices to "ensure that [third-parties] provide the best possible experience to [their] customers," and more. *See* PayPal Developer Website. This extensive and highly technical documentation is intended to direct third party developers on how to create applications that work with the PayPal Infringing Products and to control how those partner applications interact with PayPal's systems.

Indeed, the ability of PayPal's POS Partners to interact with the PayPal Infringing Products and to process payments using those devices is predicated upon the POS Partners' use of PayPal's SDK, which itself performs or participates in steps of the claims of the Patents-in-Suit when run by the POS Partners. *See Akamai*, 797 F.3d at 1024 (finding substantial evidence showing that the defendant conditioned its customers' use of its content delivery network upon its customers' performance of the infringing steps). For example, the PayPal SDK is designed to allow PayPal's partners to access portions of PayPal's code in order to perform "[d]evice discovery" (*i.e.*, "to connect a card reader"), to perform a "[r]eader firmware update," to "[a]ccept a transaction," and to process a refund, each of which is infringing functionality, as alleged in the Complaint. *See* PayPal Developer Website, at "PayPal Here SDK" (https://developer.paypal.com/docs/integration

18

/paypal-here/sdk-dev/).   In doing so, PayPal's SDK "establishes the manner or timing of that performance" by controlling *if* and *how* a POS Partner is able to interact with the PayPal Infringing Products to carry out the infringing functionality.   *See Akamai*, 797 F.3d at 1023.   The provision of SDKs and code to PayPal's partners at least supports a reasonable inference that PayPal directs and controls the infringing functionalities in the PayPal Infringing Products and the POS Partner apps.   *See Pragmatus AV, LLC v. TangoMe, Inc.*, No. 11-1092, 2013 WL 571798, at *3 (D. Del. Feb. 13, 2013) ("[F]or a claim of joint infringement" a plaintiff must "plead facts sufficient to allow a reasonable inference that one party exercises the requisite 'direction or control,' such that performance of every step is attributable to the controlling party") (quoting *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534-35 (D. Del. 2011)).

On this basis alone, PayPal's motion to dismiss IOENGINE's claims of joint infringement should be denied.

2.    IOENGINE's Complaint Contains Facts Sufficient for a Reasonable Inference that a Joint Enterprise Exists Between PayPal and its POS Partners

In the alternative, PayPal's relationship with its POS "Partners" also allows for a reasonable inference of the existence of a joint enterprise.

A joint enterprise requires: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023.   The Complaint provides no fewer than six citations to PayPal's website dedicated to its point-of-sale collaborators, which PayPal refers to as its "POS ***partners***."   *See* Complaint at ¶ 22, nn.5-10.   PayPal's website, for example, directs prospective POS Partners to "[s]ign up for a [POS Partner] account," to "[s]ign

19

up for a PayPal account," and then to "[l]ink [the POS Partner] and PayPal." *See* https://www.paypal.com/us/webapps/mpp/point-of-sale-systems (the "PayPal POS Partner Page") (Leibowitz Decl. Ex. C); https://www.paypal.com/us/webapps/mpp/point-of-sale-systems/retail-pos/vend (the "VEND POS Partner Page") (Leibowitz Decl. Ex. D), *see also* Complaint at ¶ 22, n.6 (citing to the VEND POS Partner Page).  Moreover, the PayPal Developer Website, which is repeatedly referenced in IOENGINE's Complaint, (s*ee* Complaint at ¶¶ 22, 100, 180, 275) allows potential POS partners to "contact [PayPal] for any integration or ***partnership program*** questions." *See* PayPal Developer Website (Leibowitz Decl. Ex B) (emphasis added).  PayPal then promotes its POS Partners, advertising that each one has its own solutions, "each . . . tailored to a specific business.  *Id*.

These, and the other allegations in the Complaint, allow for a reasonable inference that PayPal and its POS Partners have entered into agreements (*e.g.*, the POS Partner "partnership program"), have a common purpose and a community of pecuniary interest in that purpose (*e.g.*, to allow POS Partner customers to use the PayPal Infringing Products in order to accept mobile payments), and that both parties participate in the enterprise.  *See Akamai*, 797 F.3d at 1023.

## VI.   CONCLUSION

The allegations of willful infringement, inducement contributory infringement and joint infringement in IOENGINE's Complaint are well pleaded and more than sufficient to overcome PayPal's Rule 12(b)(6) challenge.  As such, PayPal's Motion should be denied in its entirety.  In the event that the Court finds any merit in PayPal's Motion—and it should not—IOENGINE respectfully requests permission to amend its Complaint to supplement the affected allegations. *See Välinge*, 2018 WL 2411218, at *13 (holding that a further pleading would be able to plausibly show a subjective intent to infringe the asserted patents).

Dated**:** July 9, 2018

*Of Counsel:*

Noah M. Leibowitz
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
(212) 698-3538
noah.leibowitz@dechert.com

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Eve H. Ormerod*
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Plaintiff IOENGINE, LLC*