# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IOENGINE, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>PAYPAL HOLDINGS, INC.,<br><br>    *Defendant*. | Civil Action No. 18-452-WCB |
| INGENICO INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>IOENGINE, LLC,<br><br>    *Defendant*.<br><br>IOENGINE, LLC,<br><br>    *Counterclaim Plaintiff,*<br><br>v.<br><br>INGENICO INC.,<br>INGENICO CORP., and<br>INGENICO GROUP, S.A.,<br><br>    *Counterclaim Defendants.* | Civil Action No. 18-826-WCB |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement action brought by plaintiff IOENGINE, LLC ("IOENGINE") against defendant PayPal Holdings, Inc. ("PayPal"). Before the Court is IOENGINE's motion to dismiss PayPal's third, sixth, and ninth counterclaims and to strike PayPal's fifth affirmative defense. Dkt. No. 59. In connection with the motion to dismiss and strike, IOENGINE has submitted a request that the Court hear oral argument on the motion. Dkt. No. 69. The Court denies the motion to dismiss and denies the request for oral argument.

## BACKGROUND

IOENGINE is the assignee of all right, title, and interest in and to U.S. Patent Nos. 8,539,047 ("the '047 patent"), 9,059,969 ("the '969 patent"), and 9,774,703 ("the '703 patent"), each of which is entitled "Apparatus, Method and System for a Tunneling Client Access Point." Dkt. No. 1, at 4. The applications that led to the '047, '969, and '703 patents were continuation applications from U.S. Patent Application No. 10/807,731, which issued as U.S. Patent No. 7,861,006 ("the '006 patent"). *Id.*; Dkt. No. 60, at 1 n.1. IOENGINE alleges that PayPal has infringed, and continues to infringe, one or more claims of the '047, '969, and '703 patents. *See* Dkt. No. 1, at 7, 35, 37, 64, 66, 97.

In its Answer, PayPal denies infringement of the asserted claims. Dkt. No. 52, at 1–31. PayPal also raises nine counterclaims, including three alleging inequitable conduct. The third counterclaim alleges that "the '047 patent is unenforceable due to the named inventor Scott McNulty's and/or his patent attorneys' inequitable conduct during the prosecution of the applications that led to the '047 patent and its parent, [the '006 patent]." *Id.* at 44. The sixth counterclaim alleges that "the '969 patent is unenforceable due to the named inventor Scott McNulty's and/or his patent attorneys' inequitable conduct during the prosecution of the

applications that led to the '969 patent and its parent patents (the '006 and '047 patents)." *Id.* at 46. And the ninth counterclaim similarly alleges that "the '703 patent is unenforceable due to the named inventor Scott McNulty's and/or his patent attorneys' inequitable conduct during the prosecution of the applications that led to the '703 patent and its parent patents (the '006, '047, and '969 patents)." *Id.* at 48.

In addition, PayPal raises nine affirmative defenses. PayPal's fifth affirmative defense is that "[a]ll of the Asserted Patents, as well as [the '006 patent], which is a parent patent to all of the Asserted Patents, are unenforceable due to the named inventor Scott McNulty's and/or his patent attorneys' inequitable conduct during the prosecution of the applications that led to the '006, '047, and '969 patents." *Id.* at 32–38.

IOENGINE moves to dismiss with prejudice PayPal's third, sixth, and ninth counterclaims under Federal Rule of Civil Procedure 12(b)(6), and it moves to strike with prejudice PayPal's fifth affirmative defense under Federal Rule of Civil Procedure 12(f). Dkt. No. 59.

## DISCUSSION

### I. Standard of Review

#### A. Pleading Inequitable Conduct

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. CV 12-1461-LPS-CJB, 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017). In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361,

3

374 n.7 (3d Cir. 2002). Nonetheless, as the Supreme Court has made clear, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Above and beyond the *Iqbal/Twombly* pleading standard, allegations of inequitable conduct must satisfy Federal Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) ("'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)" (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003))); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. CIV.A. 09-955-LPS, 2012 WL 600715, at *5 (D. Del. Feb. 3, 2012). "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327. Although knowledge and intent may be asserted generally, a sufficient pleading of inequitable conduct must "recite[] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld

4

that information with a specific intent to deceive the PTO." *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen*, 575 F.3d at 1318, 1330).

### B. Motion to Strike Under Rule 12(f)

"Rule 12(b)(6) does not offer a mechanism for dismissing an affirmative defense." *Wyeth*, 2012 WL 600715, at *4. Instead, "pursuant to Rule 12(f), the Court 'may strike from a pleading any insufficient defense.'" *Id.* (quoting Fed. R. Civ. P. 12(f)). Generally, motions to strike under Rule 12(f) are disfavored and "[a] court should not strike a defense unless the insufficiency is 'clearly apparent.'" *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). "However, 'a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses.'" *Fesnak*, 722 F. Supp. 2d at 502 (quoting *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009)).

## II. The Imation Litigation

IOENGINE has brought two previous actions in this district on some of the same claims against different defendants. One of those cases was *IOENGINE, LLC v. GlassBridge Enterprises, Inc. (formerly Imation Corp.)*, C.A. No. 1:14-cv-01572 (D. Del.) ("*Imation*"). That case, which was presided over by Judge Sleet, went to verdict and was settled shortly thereafter. In that case, in which IOENGINE asserted the '047 patent, the defendant Imation asserted inequitable conduct by Mr. McNulty as a counterclaim and a defense. *Imation*, Dkt. No. 48-1, at 5, 7–37.

In the *Imation* case, as in this one, IOENGINE moved to dismiss the inequitable conduct counterclaim and strike the defense of inequitable conduct. *Imation*, Dkt. No. 53. After briefing and argument, Judge Sleet denied the motion to dismiss and strike. *Id.*, Dkt. No. 84, at 107–08.

The legal issues in the *Imation* case were tried to a jury and resulted in a verdict in IOENGINE's favor on the '047 patent. Following the verdict, Imation moved for the court to hold the asserted patent unenforceable because of inequitable conduct. *Id.*, Dkt. No. 210. The inequitable conduct issue, however, was left unresolved, because the case settled before Judge Sleet issued a ruling on that issue.

PayPal's theory of inequitable conduct in this case relies heavily on the proceedings in the *Imation* case and the evidence submitted in that case. Dkt. No. 52, at 32–38 (citing to *Imation,* Dkt. Nos. 48, 170, 229, 239, 241, 246, and 247-1). Although IOENGINE understandably does not urge the Court to follow Judge Sleet's lead in ruling on the motion to dismiss the counterclaim and defense of inequitable conduct, IOENGINE nonetheless argues that the Court should "consider the entirety of those documents as well as additional parts of the record cited by IOENGINE." Dkt. No. 60, at 2.

This Court gives considerable weight to the fact that Judge Sleet denied IOENGINE's motion to dismiss the inequitable conduct allegations in a parallel case involving a challenge to one of the patents at issue in this case. IOENGINE, however, urges the Court to take a different view of the evidence on the merits of the inequitable conduct issue that was presented to Judge Sleet in that case and, based on that evidence, reach a different conclusion as to its motion to dismiss.

In the Court's view, IOENGINE has the procedure all wrong. The question before the Court in the current posture of the case, as it was before Judge Sleet at the same juncture in the *Imation* case, is simply whether, based entirely on the allegations in the defendant's answer and counterclaims, together with any materials attached to the answer and counterclaims, and viewing those allegations in the light most favorable to the defendant, PayPal's allegations of inequitable

6

conduct are sufficient to survive a motion to dismiss. The Court's task at the motion to dismiss stage is not to weigh the evidence—even the evidence that was presented to the district court in the *Imation* case.

While IOENGINE argues that the Court should consider the evidence from the *Imation* case under a theory of judicial notice, the Court declines to consider that evidence as judicially noticeable. The circumstances of the *Imation* case are, of course, subject to judicial notice, such as the nature of the claims and the outcome of the case. But the materials submitted in that case cannot be weighed in assessing IOENGINE's motion to dismiss. Evidence submitted in a prior case and facts adjudicated in that case are not subject to judicial notice and are not otherwise admissible on a motion to dismiss, except to the extent they are incorporated in the claims or counterclaims at issue. *See Morrissey v. Luzerne County Community College*, 117 Fed. Appx. 809, 815 (3d Cir. 2004) ("A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Facts adjudicated in a prior case fall short of this standard.").[1] Accordingly, while the Court will treat Judge Sleet's decision on the similar motion to dismiss in the *Imation* case as an important within-district precedent, the Court will not

---

[1] The cases on which IOENGINE relies do not support its judicial notice argument. The first, *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007), held that a court may take judicial notice of another court's opinions for purposes such as to show that a party was aware of the prior judicial order regardless of the truth of the contents of that order, and that it was permissible for the district court in that case to take judicial notice of a preliminary hearing in another case to show that a party had been required to answer certain criminal charges. *Id.* at 268. The second case, *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192 (3d Cir. 1993), held that an indisputably authentic document on which the complaint is based can be considered if it is attached to a motion to dismiss. *Id.* at 1196. The court emphasized that its ruling did not "undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings." *Id.* IOENGINE's judicial notice argument goes well beyond the limited scope of the argument endorsed in those cases.

convert this dismissal proceeding into an adjudication on the merits by considering the evidence that was presented on the merits of the inequitable conduct issue in that case.

**III. Motion to Dismiss PayPal's Third, Sixth, and Ninth Counterclaims**

PayPal asserts that the '047, '969, and '703 patents are unenforceable under the doctrine of inequitable conduct on two grounds:

First, PayPal argues that "[o]n information and belief, Mr. McNulty and/or his patent attorneys violated [their] duty of candor by submitting a false declaration to the PTO in the prosecution of the parent '006 patent." Dkt. No. 52, at 33. IOENGINE does not challenge this basis for inequitable conduct in its motion to dismiss. *See* Dkt. No. 60, at 1 n.1 ("PayPal also alleges inequitable conduct on the basis of a Section 1.131 Declaration filed during prosecution of U.S. Patent Application No. 10/807,731 . . . which issued as U.S. Patent No. 7,861,006 . . . . IOENGINE expects to move for summary judgment on this issue at an appropriate time."); Dkt. No. 68, at 9 n.4 ("That IOENGINE did not move to dismiss PayPal's other basis for inequitable conduct in no way concedes that such allegations have any merit.").

Second, PayPal argues that "Mr. McNulty and/or his patent attorneys also committed inequitable conduct by withholding the DiskOnKey prior art, and details regarding its default functionality, from the PTO." Dkt. No. 52, at 35. According to PayPal, "having declared that his alleged prototype was completed prior to December 12, 2002, more than a year before the application leading to the '006 patent was filed (on March 23, 2004), and well before the applications leading to the '047 and '969 patents were filed in 2010 and 2013, respectively, Mr. McNulty would have been well aware that the DiskOnKey constituted prior art to the '006, '047, and '969 patents." *Id.* IOENGINE attacks this allegation of inequitable conduct on multiple grounds, all of which fail at the motion to dismiss stage.

8

1. IOENGINE first argues that "PayPal makes no attempt to allege that the 'DiskOnKey' was material to the '703 Patent or that there was any intent to deceive the PTO during prosecution of the '703 Patent." Dkt. No. 60, at 7. Accordingly, IOENGINE argues that "PayPal's Allegations as to the '703 Patent must fail." *Id.* at 9.

While it is true that PayPal does not explicitly discuss the '703 patent, the '703 patent remains implicated by Mr. McNulty's alleged conduct. "[I]nequitable conduct 'early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.'" *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (quoting *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990)). Courts in this district have found that "all patent claims having 'an immediate and necessary relation' to [the inequitable] conduct," such as claims in a continuation application, will be rendered unenforceable. *Truth Hardware Corp. v. Ashland Prods., Inc.*, No. CIV.A. 02-1541, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–46 (1933)); *see Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 571 (D. Del. 2014) ("Continuation applications . . . relate to the same invention"); *see also Agfa Corp.*, 451 F.3d at 1379 (holding that the trial court permissibly rendered unenforceable the '324 patent due to inequitable conduct found with regard to its patent because "[t]he '324 patent is a continuation . . . of the '014 patent [and the plaintiff] has not suggested that the '324 patent claims subject matter sufficiently distinct from its parent"). On the other hand, "where the claims are subsequently separated from those tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the patent application." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998); *see Robocast*, 39 F. Supp. 3d at 571 ("A

9

divisional application is drawn to a different invention, and different inventions do not share an 'immediate and necessary' relation to each other.").

IOENGINE acknowledges that the '703 patent is a continuation of the '047 patent. Dkt. No. 60, at 4 n.3. Given the relationship between the two patents, and in light of the above-cited case law, which generally regards continuation applications as sharing an "immediate and necessary relation" to earlier applications, the Court declines to dismiss the inequitable conduct allegations directed to the '703 patent. *See Truth Hardware*, 2003 WL 22005839, at *1; *see also Agfa Corp.*, 451 F.3d at 1379.

2. IOENGINE next argues that "PayPal fails to provide any explanation of materiality as to the '006, '969 or '703 Patents, including failing even to identify any claims or limitations of those Patents that DiskOnKey is relevant to." Dkt. No. 60, at 9 (emphasis in original). Relatedly, IOENGINE argues that PayPal's allegations as to claim 1 of the '047 patent, which is the only claim identified in the fifth affirmative defense, are deficient. *See id.* The Court will address these arguments in reverse order.

PayPal alleges that the DiskOnKey product, as sold, disclosed each of the limitations of claim 1 of the '047 patent. Dkt. No. 52, at 36. Claim 1 of the '047 patent states as follows:

> 1. A portable device, comprising:
>    (a) an external communications interface configured to enable the transmission of a plurality of communications between the portable device and a terminal comprising a terminal processor, a first input component, a first output component, and a network interface;
>    (b) a processor; and
>    (c) a memory having executable program code stored thereon, including:
>       (1) first program code which, when executed, causes an interactive user interface to be presented on the first output component, wherein the interactive user interface is configured to enable the user to cause the portable device processor to execute program code stored on the portable device memory;
>       (2) second program code which, when executed, enables the portable device to (i) receive a communication resulting from user interaction with the interactive user

> interface and (ii) cause a communication to be sent through the terminal network interface to a communications network node; and
> (3) third program code which, when executed by the portable device processor in response to a communication resulting from user interaction with the interactive user interface, causes a communication to be transmitted to a communications network node;
>
> wherein the portable device is configured to effect the display on the first output component of processing activity of program code stored on the portable device memory; and
>
> wherein the portable device is configured to communicate with the terminal and to communicate through the terminal network interface with the communications network node.

First, PayPal's Answer alleges that DiskOnKey was a portable memory device that included an on-board processor. According to PayPal, this combination of features was material to the prosecution of the '047 patent because the applicant relied on the absence of an on-board processor on prior art portable memory devices to distinguish the '047 patent from the prior art. For support, PayPal's Answer quotes the '047 applicant's response to an office action dated January 25, 2013, in which the applicant challenged the examiner's 35 U.S.C. § 103(a) rejection over U.S. Patent No. 7,051,157 ("James") and U.S. Patent Publication No. 2002/0044663 A1 ("King")—the James/King combination. There, the applicant argued that

> it would not have been obvious to one of ordinary skill in the art to include an on-board processor [as disclosed in King] on the portable memory device disclosed in James. The entire focus of James involves the use of the host computer processor to directly execute applications software stored on the portable memory device. Including an on-board processor would be contrary to this fundamental aspect of James.

Dkt. No. 52, at 36.

Second, PayPal's Answer alleges that DiskOnKey was material to the patentability of the '047 patent because of its stored program code. According to PayPal, DiskOnKey's on-board processor "operated in conjunction with graphical user interfaces and contained 'autorun' features that could, for example, launch websites and other applications." *Id.* at 37. PayPal alleges that

11

those prior art capabilities were withheld from the examiner in the same January 25, 2013 office action, in which the applicant argued that "the prior art did not disclose any of the claimed code." *Id.*

In response to those allegations, IOENGINE argues that the DiskOnKey prior art was cumulative, not material. In support of this argument, IOENGINE characterizes the '047 applicant's response to the January 25, 2013 office action somewhat differently than PayPal. According to IOENGINE, the applicant did not argue that the prior art failed to teach a portable device with an on-board processor. Dkt. No. 60, at 11 ("Contrary to PayPal's allegation, there is nothing in the language PayPal quotes that argues that the prior art failed to teach a portable device with an on-board processor."). Instead, according to IOENGINE, to traverse the examiner's rejection, the applicant focused on the prior art's failure to disclose any of the three claimed program codes. *Id.* ("Mr. McNulty overcame the James/King combination, not by claiming a lack of an on-board processor as PayPal suggests, but by explaining that the James/King combination failed to disclose any of the three claimed program codes that would use King's on-board processor in the way claimed.").

The Court rejects IOENGINE's argument. The '047 applicant traversed the James/King combination on two grounds. The first was that "it would not have been obvious to one of ordinary skill in the art to include an on-board processor [as disclosed in King] on the portable memory device disclosed in James." Dkt. No. 52, at 36. This ground, contrary to IOENGINE's characterization, is clearly an attempt to traverse the James/King combination based on the argument that the prior art failed to teach a portable device with an on-board processor. The second ground was that the James/King combination failed to disclose any of the three claimed program codes that would use King's on-board processor in the manner claimed in the application. The

12

examiner could have relied on either ground, or both grounds, as the basis for allowance over the James/King combination. It is reasonably plausible that the examiner relied on the first ground, and for at least that reason, DiskOnKey would have been material because it disclosed an on-board processor on a portable memory device.

IOENGINE's other arguments challenging the materiality of the DiskOnKey reference also fail. As noted by PayPal, IOENGINE "impermissibly seeks to go beyond the four corners of the pleadings to advance its own version of the facts." Dkt. No. 66, at 6. IOENGINE has based its argument on evidence outside the scope of materials properly considered on a motion to dismiss.

In particular, IOENGINE argues that in the subsequent prosecution of the '703 patent, which (according to the PTO) has broader claims than the '047 patent and the '969 patent, the DiskOnKey product was disclosed, yet the examiner did not issue a rejection based on DiskOnKey in that prosecution. While this argument may be pertinent to the merits of the inequitable conduct issue, it does not provide a basis for the Court to grant IOENGINE's motion to dismiss, as it would require the Court to assess evidence outside the scope of the complaint, its attachments, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record.").

In light of the fact that the examiner could have relied on the applicant's first ground for allowance—i.e., that the prior art failed to teach a portable device with an on-board processor— the Court concludes that materiality has been adequately pleaded.[2] As to the alleged lack of any

---

[2] Because the Court finds that the DiskOnKey prior art reference is material to the patentability of the '047 patent on at least one ground, the Court does not reach the question whether the DiskOnKey reference is also material on a second ground, its program code.

13

explanation of materiality for the '969 or '703 patents, the Court agrees with PayPal's assertion that "IOENGINE's inequitable conduct associated with claim 1 of the '047 patent is subject to infectious unenforceability, rendering each of the Asserted Patents unenforceable."[3] Dkt. No. 66, at 14; *see Agfa Corp.*, 451 F.3d at 1379.

3. IOENGINE also argues that PayPal failed to adequately plead that Mr. McNulty specifically intended to deceive the PTO with regard to the DiskOnKey prior art reference. First, according to IOENGINE, "PayPal's allegations regarding intent focus on just one claim limitation, an on-board processor . . . [b]ut Mr. McNulty never claimed to have invented generic portable devices with on-board processors; his invention was instead centered on specific executable program code." Dkt. No. 60, at 15.

For the same reasons as discussed above, this argument fails. During the prosecution of the '047 patent, the applicant argued that the invention was not disclosed by the prior art because the prior art "does not disclose, teach or suggest any function, operation or activity by the portable memory device or the host computer which would benefit from including an on-board processor." Dkt. No. 61, Ex. 7, at 9–10. Given Mr. McNulty's familiarity with the DiskOnKey hardware and his statements to the examiner in an attempt to traverse the prior art, it is not implausible to infer that Mr. McNulty "knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co.*, 655 F.3d at 1350 (citing *Exergen*, 575 F.3d at 1318, 1330).

---

[3] Neither the three counterclaims nor the fifth affirmative defense depends on a finding of materiality as to the '006 patent. Therefore, the Court need not address whether, under the second inequitable conduct theory, PayPal also met the materiality pleading requirements for the '006 patent.

In the alternative, IOENGINE argues that Mr. McNulty showed the examiner his prototype, which was built on the hardware of a DiskOnKey device. According to IOENGINE, "[i]f Mr. McNulty intended to conceal the existence of the DiskOnKey from the PTO, it would truly be a strange choice to demonstrate his prototype, which was based on DiskOnKey hardware, in an in-person interview with the PTO Examiner." Dkt. No. 60, at 16. However, IOENGINE fails to explain how the examiner would appreciate the functionality of the DiskOnKey hardware, prior to Mr. McNulty's alterations, simply because Mr. McNulty demonstrated a prototype built on that hardware. Without drawing factual inferences in favor of IOENGINE, the Court cannot conclude that the examiner was made aware of DiskOnKey's default functionality simply because Mr. McNulty demonstrated a prototype based on DiskOnKey hardware.

Based on the pleadings, the Court concludes that IOENGINE has not shown that PayPal's theory of inequitable conduct is so lacking in plausibility that it fails as a matter of law. The Court therefore denies IOENGINE's motion to dismiss PayPal's counterclaims.

## IV. Motion to Strike PayPal's Fifth Affirmative Defense

PayPal's fifth affirmative defense rises and falls with PayPal's third, sixth, and ninth counterclaims. *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. CV 12-441-RGA, 2014 WL 2622240, at *1 n.1 (D. Del. June 11, 2014). In light of the Court's ruling that PayPal has adequately pleaded inequitable conduct in its counterclaims, the Court also denies IOENGINE's motion to strike.

## CONCLUSION

IOENGINE's motion to dismiss PayPal's third, sixth, and ninth counterclaims and motion to strike PayPal's fifth affirmative defense, Dkt. No. 59, is denied. IOENGINE's request for oral argument, Dkt. No. 69, is also denied.

IT IS SO ORDERED.

SIGNED THIS 15th day of May, 2019.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE