**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

IOENGINE, LLC,

     *Plaintiff,*

v.

PAYPAL HOLDINGS, INC.,

     *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 18-452-WCB

INGENICO INC.,

     *Plaintiff,*

v.

IOENGINE, LLC,

     *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 18-826-WCB

IOENGINE, LLC,

     *Counterclaim Plaintiff,*

v.

INGENICO INC.,
INGENICO CORP., and
INGENICO GROUP, S.A.,

     *Counterclaim Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§

## MEMORANDUM OPINION AND ORDER

Before this Court are motions by Ingenico Inc., Ingenico Corp., and Ingenico Group S.A. (collectively, "Ingenico") and by PayPal Holdings, Inc., ("PayPal") for stays of Civil Action Nos. 18-452 and 18-826 pending *inter partes* review ("IPR") in IPR2019-00416 by the Patent Trial and Appeal Board ("PTAB"). The motions are granted.

## BACKGROUND

IOENGINE, LLC ("IOENGINE") is the assignee of U.S. Patent Nos. 8,539,047 ("the '047 patent"), 9,059,969 ("the '969 patent"), and 9,774,703 ("the '703 patent"), each of which is entitled "Apparatus, Method and System for a Tunneling Client Access Point." *IOENGINE LLC v. PayPal Holdings, Inc.*, No. 18-cv-452 ("*PayPal Action*"), Dkt. No. 1, at 4. The applications that led to the '047, '969, and '703 patents were continuation applications from U.S. Patent Application No. 10/807,731, which issued as U.S. Patent No. 7,861,006 ("the '006 patent"). *Id.*; *PayPal Action*, Dkt. No. 60, at 1 n.1.

On March 23, 2018, IOENGINE filed a complaint against PayPal in a case designated as Civil Action No. 18-452. The complaint alleged that PayPal had infringed the '047, '969, and '703 patents in connection with mobile credit card reader products that included products that Ingenico, Inc., had supplied to PayPal. *PayPal Action*, Dkt. No. 1, at 4; *Ingenico Inc. v. IOENGINE LLC, Inc.*, No. 18-cv-826 ("*Ingenico Action*"), Dkt. No. 1, at 2–3. The filing of the complaint against PayPal triggered an indemnity request by PayPal to Ingenico Inc. *Ingenico Action*, Dkt. No. 1, at 3.

In response, on June 1, 2018, Ingenico Inc. filed a declaratory judgment action against IOENGINE, in a case designated as Civil Action No. 18-826. Ingenico Inc. sought a declaration of non-infringement of the three patents-in suit in the *PayPal Action*. IOENGINE filed an answer

to Ingenico Inc.'s declaratory judgment complaint on August 17, 2018, and included counterclaims alleging infringement of the same three patents not only by Ingenico Inc., but also by two related companies, Ingenico Corp. and Ingenico Group S.A.

The three asserted patents contain a total of 189 claims. IOENGINE's infringement contentions, served on March 1, 2019, asserted 20 of those 189 claims: claims 1-2, 4, 12, and 25 of the '047 patent; claims 2-4 and 7 of the '969 patent; and claims 55-57, 61, 100, 104-06, 110-11, and 123 of the '703 patent. *Ingenico Action*, Dkt. No. 104, at 2.

Between December 2018 and April 2019, PayPal and Ingenico separately filed a total of 12 petitions for *inter partes* review. Collectively, the petitions challenged all the asserted claims of the three patents in suit and certain other claims of those patents as well. The tables below summarize the subject matter and timeline for each of those IPR petitions:

**Ingenico IPRs**

| IPR Petition Number | Challenged Patent | Challenged Claims | Filing Date | Institution Decision Date/Due Date | Final Written Decision Due Date |
|---|---|---|---|---|---|
| IPR2019-00416 | '047 patent | 1-21, 23-25, 27, 28 | 12/17/2018 | 07/15/2019 | 07/15/2020 |
| IPR2019-00584 | '703 patent | 1-54 | 01/22/2019 | 08/12/2019 | 08/12/2020 |
| IPR2019-00879 | '969 patent | 1-8, 10-16, 19-21, 24-29 | 03/25/2019 | 10/16/2019 | 10/16/2020 |
| IPR2019-00929 | '703 patent | 55-63, 65-72, 74, 75, 77, 78, 81-87, 89, 90, 92-98, 100, 101, 103-112, 114-121, 123, 124, 126-129 | 04/05/2019 | 10/10/2019 | 10/10/2020 |

**PayPal IPRs**

| IPR Petition Number | Challenged Patents | Challenged Claims | Filing Date | Institution Decision Date/Due Date | Final Written Decision Due Date |
|---|---|---|---|---|---|
| IPR2019-00884 | '047 patent | 1-9, 12-16, 18-31 | 03/29/2019 | 10/17/2019 | 10/17/2020 |
| IPR2019-00885 | '047 patent | 1, 7, 9-11, 14, 16-17 | 03/29/2019 | 10/17/2019 | 10/17/2020 |
| IPR2019-00886 | '047 patent | 1-4, 6-9, 12-16, 18-31 | 03/29/2019 | 11/10/2019 | 11/10/2020 |
| IPR2019-00887 | '047 patent | 5, 10-11, 17 | 03/29/2019 | 11/10/2019 | 11/10/2020 |
| IPR2019-00906 | '969 patent | 1-22, 24-29 | 04/04/2019 | 12/06/2019 | 12/06/2020 |
| IPR2019-00907 | '969 patent | 1-22, 24-29 | 04/04/2019 | 12/06/2019 | 12/06/2020 |
| IPR2019-00930 | '703 patent | 55-72, 74-75, 77-79, 81-87, 89-90, 92-98, 100-101, 103-121, 123-124, 126-129 | 04/08/2019 | 11/15/2019 | 11/15/2020 |
| IPR2019-00931 | '703 patent | 55-72, 74-75, 77-79, 81-87, 89-90, 92-98, 100-101, 103-121, 123-124, 126-129 | 04/08/2019 | 11/15/2019 | 11/15/2020 |

The PTAB has already acted on two of Ingenico's IPR petitions. On July 15, 2019, the PTAB granted the petition in IPR2019-00416, and on August 12, 2019, it denied the petition in IPR2019-00584.[1]

In its decision instituting review in IPR2019-00416, the PTAB construed the terms "interactive user interface" and "communicate through the terminal network interface with the communications network node"/ "cause a communication to be sent through the terminal network

---

[1] As PayPal points out, Dkt. No. 114, at 4, IPR2019-00584 sought review of claims are not at issue in the two district court actions.

interface to a communications network node," which are two of the eight terms that the parties identified as disputed terms in their Joint Claim Construction Chart in the district court cases. *Ingenico Inc. v. IOENGINE, LLC*, No. IPR2019-00416, Paper 20 (P.T.A.B. July 15, 2019); *PayPal Action*, Dkt. No. 91, at 1–2.

On July 17, 2019, Ingenico moved for a stay of the *Ingenico Action* pending the resolution of IPR2019-00416. *Ingenico Action*, Dkt. No. 103. Thereafter, on July 30, 2019, PayPal moved for a stay of the *PayPal Action* pending the resolution of the same IPR. *PayPal Action*, Dkt. No. 93. At the current stage of the proceeding, the parties are engaged in claim construction briefing and have conducted a significant amount of discovery. The following case milestones, however, lie ahead:

(1) a claim construction hearing is scheduled for August 29, 2019;

(2) fact discovery is continuing and does not close until October 30, 2019;

(3) all depositions remain to be taken;

(4) expert discovery has yet to begin; it is scheduled to close on February 18, 2020;

(5) a pretrial conference is scheduled for July 20, 2020; and

(6) trials in the two cases are scheduled to be conducted in July and August 2020.

*See PayPal Action*, Dkt. No. 49; *Ingenico Action*, Dkt. No. 57; *see also PayPal Action*, Dkt. No. 94, at 5; *Ingenico Action*, Dkt. No. 104, at 2.

### DISCUSSION

The question whether a stay of district court proceedings should be granted when *inter partes* review is instituted on some or all of the claims at issue in the district court litigation has arisen frequently since the enactment of the Leahy-Smith America Invents Act ("AIA") in 2011.

The principles governing the question whether to stay the case pending *inter partes* review have been developed by courts in numerous decisions since that time.

A district court has inherent power to control its own docket, including the power to stay the proceedings before it. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). In particular, the question whether to stay proceedings pending review by the Patent and Trademark Office ("PTO") of the validity of the patent or patents at issue in the lawsuit is a matter committed to the district court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (request for a stay pending *inter partes* reexamination). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing cases).

District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of the patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly when discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, No. CV 12-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases).

The related context of Covered Business Methods ("CBM") review provides guidance as to the principles that apply to stay applications in the IPR setting. In the uncodified portion of the AIA that was directed to CBM review proceedings, Congress set forth four factors that govern whether a stay should be granted pending CBM review proceedings before the PTAB. Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011). Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant review proceedings, with a fourth factor added. The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, indicates that the "burden of litigation" factor should be given special attention.

While the four-factor test that Congress enacted for stays in CBM proceedings does not expressly extend to IPR cases, the policy considerations that apply in the two contexts are similar, and the Federal Circuit has held that the fourth factor set forth in the CBM statute may properly be applied to stays in IPR cases as well. *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *see also Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, Civil Action No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013). The Court will therefore address the "burden of litigation" factor as part of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review. As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM review proceedings. 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Schumer).

Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties was not restricted to the CBM review context. The legislative history indicates that Congress recognized that the same underlying policy considerations that apply to CBM review apply to *inter partes* review as well. *See* H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (*inter partes* review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Chuck Grassley); *id*. at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including *inter partes* review, was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl). In light of the parallel policies underlying the CBM and *inter partes* review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings.

The benefits of *inter partes* review are the same as those served by CBM review: giving the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of some of the burdens of deciding issues of obviousness and anticipation, and saving the courts from having to adjudicate infringement claims based on patents of questionable validity. For those reasons, courts have concluded that the "liberal policy" in favor of stays in CBM cases also applies to stays pending instituted IPR proceedings. *See Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, No. CV-17-03125, 2018 WL 6242280, at *3–8 (D. Ariz. Nov. 29, 2018); *Nautilus, Inc. v. ICON Health & Fitness, Inc.*, Case No. 1:17-cv-154, 2018 WL 4215095, at *2 (D. Utah Sept. 4, 2018); *Qualcomm Inc. v. Apple Inc.*, Case No. 3:17-cv-2403, 2018 WL 4104966, at *1 (S.D. Cal. Aug. 29, 2018); *Canfield Sci., Inc. v. Drugge*, Civil Action No. 16-4636, 2018 WL 2973404, at *2 (D.N.J. June 13, 2018); *Chrimar Sys. Inc. v. Ruckus Wireless, Inc.,* Case No. 16-

cv-186 et al., 2016 WL 5403595, at *3 (N.D. Cal. Sept. 26, 2016); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, Case No. 3:16-cv-410, 2016 WL 3844209, at *2 (D. Or. July 15, 2016); *Gatearm Techs., Inc. v. Access Masters, LLC*, Civil Action No. 14-62697, 2015 WL 13752667, at *1 (S.D. Fla. July 13, 2015); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014); *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160, 2014 WL 2511308, at *2 (W.D. Mo. June 4, 2014) ("Although the decision to grant a stay remains firmly in the district court's discretion, the interests of judicial economy and deference to the PTO's expertise have given rise to a 'liberal policy in favor of grant stays.'"). Summarizing the state of the law on this issue, the court in the *NFC Tech.* case stated that "after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed." *NFC Tech.*, 2015 WL 1069111, at *7.

Although the three-factor test informs the Court's inquiry, that test is not a prescriptive template. The district court retains the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata*, 830 F.3d at 1362. "[U]ltimately the Court must decide stay requests on a case-by-case basis." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, Case No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014); *see also Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, Case No. SACV 17-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) ("the totality of the circumstances governs" (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013))); *Qualcomm Inc.,* 2018 WL 4104966, at *1; *Image Processing Techs., LLC v. Samsung Elecs. Co.*, Case No. 2:16-cv-505, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) ("motions to stay are highly individualized matters"); *Realtime Data LLC v., Actian Corp.*, Case No. 6:15-cv-463, 2016 U.S. Dist. LEXIS 187446, at *7 (E.D. Tex. Nov. 29, 2016); *Drink Tanks Corp.*, 2016 WL 3844209,

at *2; *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-1153, 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

The court now turns to an assessment of each of the factors bearing on whether to grant the motions for a stay.

## I. The State of the Proceedings

In the two cases before the Court, claim construction briefing has been completed, and fact discovery is ongoing. According to IOENGINE, "[a] stay of proceedings would interrupt both the discovery and claim construction processes, processes that have already progressed significantly and which would need to be restarted on the same issues upon the conclusion of IPR proceedings." *Ingenico Action*, Dkt. No. 109, at 19. Specifically, IOENGINE states that the parties have "produced over 100,000 pages of documents, conducted more than 110 hours of review of party source code, and served and responded to dozens of interrogatories, over 250 requests for production, and multiple requests for admission." *PayPal Action*, Dkt. No. 107, at 14. IOENGINE also states that both PayPal and Ingenico have served multiple third party subpoenas, with commanded response dates between May and August of 2019. *Id.*

While IOENGINE's observations indicate that there has been significant progress in the two cases, the most burdensome stages of the cases—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future. *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 13 (E.D. Tex. Feb. 14, 2019); *see Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, because "[d]espite the substantial time and effort

already spent in this case, the most burdensome task is yet to come.").  No depositions have been taken, expert discovery has not begun, and the trials in the two cases are approximately a year away, even assuming there is no slippage in the trial schedule.  *Ingenico Action*, Dkt. No. 104, at 2.  In the Court's view, the state of the litigation cuts in favor of a stay.  *See CallWave Commc'ns, LLC v. AT&T Mobility LLC*, Civil Action Nos. 12-1702 et al., 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (stage of the litigation favored a stay where "[d]iscovery is more advanced than would be ideal, but . . . few depositions have been taken and expert discovery has not yet begun"); *ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356–57 (D. Mass. 2015) (finding that the "stage of the litigation" factor weighed in favor of a stay where no depositions had been taken and expert discovery had not begun, "[n]otwithstanding the fact that substantial document and written discovery ha[d] already occurred, and a claim construction opinion ha[d] been issued").

To be sure, this case is not "in its infancy."  Nonetheless, "it appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future."  *NFC Tech.*, 2015 WL 1069111, at *3.  The likelihood of substantial continuing pretrial work by the parties (and by the Court) is increased by IOENGINE's recent filing of a motion for leave to supplement its complaint and its answer and counterclaims with a newly issued patent, *see Ingenico Action*, Dkt. No. 118, and the parties' disputes over email production, *see Ingenico Action*, Dkt. No. 114, Exh. D.  Therefore, the Court believes that "denying a stay because of the progress of the case to this point would impose significant expenses on the parties that might be avoided if the stay results in the simplification of further court proceedings."  *NFC Tech.*, 2015 WL 1069111, at *3.

## II. Prejudice

### a. The Ingenico Action

In analyzing whether a plaintiff would suffer undue prejudice (and relatedly whether a defendant would gain an unfair tactical advantage) if a stay were granted, courts in this district have examined four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019); *Contour IP Holding, LLC v. GoPro,Inc.*, No. CV 15-1108, 2016 WL 4474340, at *4 (D. Del. July 14, 2016); *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *4. In light of those factors, IOENGINE makes several arguments about why granting a stay of its action against the Ingenico defendants would be unduly prejudicial.

First, IOENGINE argues that Ingenico could have filed its IPR petitions challenging IOENGINE's patents immediately after being notified of IOENGINE's complaint against PayPal. Instead, according to IOENGINE, Ingenico "chose to invoke the power of this Court . . . [and] should not now be allowed to abandon its chosen forum." *Ingenico Action*, Dkt. No. 109, at 16.

That characterization of the procedural history of the case ignores the indemnity request from PayPal that prompted Ingenico to seek declaratory relief. As noted by Ingenico, "[i]t was IOENGINE . . . that initiated litigation against PayPal, a customer of Ingenico, alleging infringement of three products supplied by Ingenico, causing Ingenico to act." *Ingenico Action*, Dkt. No. 114, at 8. For that reason, the Court discounts IOENGINE's argument that Ingenico is seeking to walk away from a district court action that it filed on its own initiative.

IOENGINE also argues that "Ingenico did not file its first petition for *inter partes* review for more than *six months* after it initiated this action, and almost *nine months* after its customer

and indemnitee PayPal was sued." *Ingenico Action*, Dkt. No. 109, at 16 (emphasis in original). According to IOENGINE, the delay in filing the initial IPR petition was a calculated maneuver. On October 6, 2018, Ingenico moved to dismiss the counterclaims against Ingenico Group S.A. ("Ingenico France") for lack of personal jurisdiction. IOENGINE alleges that Ingenico, "[k]nowing that naming Ingenico France as a 'real party in interest' in the IPR proceedings would undermine its jurisdictional argument . . . [,] timed its IPR petition for the same day as the hearing before the Court on its motion to dismiss—preventing IOENGINE from raising this issue before the Court at oral argument." *Id.* at 16–17. IOENGINE also argues that Ingenico had an opportunity to seek *inter partes* review earlier in the case, but chose to pursue litigation and to aggressively challenge IOENGINE at every turn.

Ingenico offers a different perspective. Ingenico argues that it was "extremely diligent" in filing its IPR. *Ingenico Action*, Dkt. No. 114, at 7. According to Ingenico, the '047 IPR was filed before the Court entered a scheduling order, before there was any material activity in the case, and six weeks before IOENGINE identified the subset of the claims (out of a possible 189) that it would be asserting. *See id.* As for IOENGINE's gamesmanship theory, Ingenico insists that there was no dilatory motive behind the timing of the petition, and the fact that the petition was filed on the same day as the hearing on the motion to dismiss was purely coincidental. Ingenico adds that "[h]ad IOENGINE felt that the naming of Ingenico [France] as a real party-in-interest in the IPR was material to the Court's decision relating to personal jurisdiction, IOENGINE could have brought this to the Court's attention when that motion was pending." *Id.* at 8.

The Court is not persuaded by IOENGINE's argument. Notwithstanding that the IPR was filed on the same date that the Court held its hearing on the motion to dismiss, the facts do not suggest a dilatory motive behind the timing of the petition. Because Ingenico filed its IPR petition

before the Court ruled on the motion to dismiss, Ingenico remained vulnerable to attack by the same "real party in interest" argument (assuming there was any force to that argument), which could have been raised after the hearing and before the Court acted on the motion. The claim of gamesmanship aside, the Court finds that in light of the complexity entailed in seeking *inter partes* review, a delay of six months from the filing of the complaint is not unreasonable. *NFC Tech.*, 2015 WL 1069111, at *4 (citing cases).

Second, with respect to the timing of the stay request, Ingenico filed its motion for a stay within three days after the '047 IPR institution decision was published. An earlier request for a stay would have been premature, as courts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted, and a pre-institution request therefore would have been futile. *See, e.g.*, *Invensas Corp. v. Samsung Elecs. Co.*, Civil Action No. 17-1363, 2018 WL 4762957, at *6 (D. Del. Oct. 2, 2018); *Universal Secure Registry, LLC v. Apple Inc.*, Civil Action No. 17-585, 2018 WL 4486379, at *4–5 (D. Del. Sept. 19, 2018); *454 Life Scis. Corp. v. ION Torrent Sys., Inc.*, No. 15-595, 2016 WL 6594083, at *4 (D. Del. Nov. 7, 2016) (stay motion filed shortly after PTAB issued its institution decisions, "which is generally the ideal time at which to file such a request."). The Court finds that Ingenico diligently moved for the requested stay.

Third, with respect to the status of the review proceeding, the Ingenico IPR on the '047 patent was instituted in July of this year and will presumably be completed by July 2020. *See* 37 C.F.R. § 42.100(c). In addition, institution decisions in the remaining petitions filed by Ingenico and PayPal will be made between October and December of this year. Thus, while the IPRs are not at an advanced stage, the potential for the IPRs to significantly affect the litigation is high. If a stay is not granted, a decision as to the validity of the '047 patent (and decisions as to the validity

of the other two patents-in-suit) could come at the time of the trials in the district court actions or during post-trial motions practice. The prospect that contemporaneous IPR decisions will have a significant effect on the issues presented in the litigation counsels in favor of a stay. *See Huvepharma Eood v. Associtated British Foods, PLC*, Civil Action No. 18-129, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) ("Plaintiffs contemplate having anticipation and obviousness tried twice, whereas a stay will mean that those issues will only need to be tried once.").

Fourth, as to the relationship between the parties, it is undisputed that IOENGINE is a patent assertion entity and does not compete with Ingenico or PayPal. To be sure, IOENGINE's interest in the prompt enforcement of its patent rights is entitled to weight. *See CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 7; *NFC Tech.*, 2015 WL 1069111, at *2. However, that factor is present in every case in which a patentee resists a stay, and it is therefore insufficient, standing alone, to defeat a stay motion. *See BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013); *see also CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 7; *CyWee Grp. Ltd. v. Huawei Device Co.*, Case No. 2:17-cv-495, 2018 WL 4002776, at * 3 (E.D. Tex. Aug. 22, 2018); *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:12-cv-855, 2018 WL 398433, at *3 (E.D. Tex. Jan. 12, 2018); *NFC Tech.*, 2015 WL 1069111, at *2. That is especially true for non-practicing entities, such as IOENGINE, that "do[] not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay." *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent Autel does not practice will not greatly harm Autel."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No.

12-cv-1107 et al., 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (holding that the plaintiff's status "as a non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market" if a stay is granted). The relationship of the parties therefore does not cut against issuance of a stay.

Beyond those factors, IOENGINE argues that it "will suffer some prejudice from a stay, due to loss of [its] chosen forum, the possibility of necessary witnesses' memories fading, and negative impact on [its] ability to license the patents-in-suit." *Ingenico Action*, Dkt. No. 109, at 18 (quoting *Intellectual Ventures I LLC v. Toshiba Corp.*, No. Civ. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) (internal quotations omitted)).

IOENGINE's assertion that a stay will deprive it of its chosen forum is entitled to little weight. Because the IPR process has been invoked, IOENGINE will be required to defend its patent rights before the PTAB without regard to whether this Court grants a stay. Moreover, given that the trials in these cases are a year away—even assuming no slippage in the current schedule— it is unlikely that final judgments will have been rendered in the district court actions before the PTAB decides the IPR. If the challenged patent survives the IPR, IOENGINE will retain its chosen forum. If not, IOENGINE's '047 patent will be canceled and the enforcement efforts in the district court with regard to that patent will be rendered nugatory. *See Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). All that would be affected by granting a stay is the sequencing of the proceedings and the possible avoidance of duplication of effort by the PTAB and the district court.

IOENGINE's assertion that witness memories are apt to fade with the passage of time resulting from a stay is also unconvincing. Unspecific assertions of possible loss of memory are not persuasive, especially in patent cases in which witnesses' recollection of historical facts

ordinarily play little or no role.  IOENGINE has not identified any particular witnesses whose memory of historical facts is likely to fade and has not otherwise made any showing that evidence will be lost by staying the district court actions pending the disposition of the IPR.  *See NFC Tech.,* 2015 WL 1069111, at *3 ("A blanket statement that evidence may become stale or be lost does not amount to a compelling showing of prejudice.").

Similarly, there is little force to IOENGINE's argument that even though it does not compete with Ingenico or PayPal, a stay will interfere with its ability to license its patents.  To the extent that the uncertainty caused by the pendency of the IPR proceeding is an impediment to licensing, that uncertainty would be present whether the stay is granted or not.

Further undermining IOENGINE's call for timely enforcement of its patent rights is the fact that IOENGINE recently filed a motion for leave to supplement its complaint and its answer and counterclaims.  *See Ingenico Action*, Dkt. No. 118.  In that motion, IOENGINE seeks leave to assert an independent claim and five dependent claims from a newly allowed continuation patent in the same family as the existing patents in suit.  IOENGINE argues that it "has already provided infringement contentions of its asserted claims, and the addition of [the new patent] is unlikely to require any additional claim construction, changes to the schedule, or additional discovery." *PayPal Action*, Dkt. No. 107, at 16.

Although IOENGINE insists that the introduction of a new patent into the case will not disrupt the schedule for these two cases, the Court is skeptical.  The new patent contains more than 200 claims.  The Court will have to decide whether to allow the new patent to be added to the case, and Ingenico and PayPal will have to be allowed an opportunity to answer or move for relief from the new patent and to serve invalidity contentions with respect to the newly added claims.  In addition, the new patent could require further claim construction proceedings and additional

discovery. Thus, IOENGINE's introduction of new claims has the potential to add further delay to the progress of the district court actions. It also suggests that expeditious disposition of the district court proceedings is not of primary concern to IOENGINE. As the Federal Circuit has stated, delays caused by the plaintiff render arguments of timely enforcement unpersuasive. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (undue prejudice not found where plaintiff waited nearly a year after the patent issued before bringing suit); *Lund Motion Prods.*, 2019 WL 116784, at *2 ("Plaintiff's own delay in bringing the instant action renders its arguments of undue prejudice unpersuasive.").

In sum, the Court finds that granting a stay of the Ingenico action will not unduly prejudice IOENGINE.

### b. The PayPal Action

Apart from the above arguments, which apply to the PayPal action as well as to the Ingenico action, IOENGINE argues that PayPal failed to diligently move for the requested stay, but rather "waited until late at night the day before IOENGINE's opposition to Ingenico's motion to stay was due before filing its motion to stay, more than two weeks after it had informed IOENGINE of its intentions." *PayPal Action*, Dkt. No. 107, at 12. Again, the Court is unconvinced by IOENGINE's claim of gamesmanship on the part of opposing counsel. Regardless of the reason for the delay in filing the stay motion, IOENGINE admits that it was informed of PayPal's intentions to seek a stay before IOENGINE filed its opposition to Ingenico's stay motion. Moreover, IOENGINE was entitled to—and did—file a separate response to PayPal's stay motion. Accordingly, the Court discerns no impairment of IOENGINE's ability to frame its arguments regarding the stay as a result of PayPal's delay in filing its motion. As for the two-

week period between when the IPR was granted and when PayPal filed its motion to stay the action against it, the Court considers the filing of PayPal's motion to have been relatively prompt.

IOENGINE also makes a claim of prejudice based on the delay between the filing of the complaint against PayPal and the filing of PayPal's first petition for IPR. That issue, however, does not provide a sufficient basis for denying a stay. The Court's principal concern is about the period of delay between the filing of the complaint and the filing of Ingenico's IPR petitions, when the issue of the co-pendency of the district court actions and the IPR became ripe. As discussed above, that period was not unreasonable, so the delay factor does not weigh against the granting of a stay.

The Court therefore finds that the prejudice factor does not favor denying a stay of the PayPal litigation.

### III. Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial. As this Court explained in *NFC Technology*,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

*NFC Tech.*, 2015 WL 1069111, at *4; *see In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When the patent is concurrently involved in litigation [one function of reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

IOENGINE posits a number of reasons that the issues will not be simplified by postponing further action in the district court proceedings until after the IPR has been concluded. First,

IOENGINE argues that the currently instituted IPR addresses only one of the three patents-in-suit and implicates only five of the 20 claims asserted in the district court proceedings. Thus, IOENGINE argues, "[e]ven in the unlikely event that the PTAB were to cancel every asserted claim of the '047 Patent, which is a speculative outcome . . . similar infringement, enforceability, claim construction, and other issues would require resolution by this Court." *Ingenico Action*, Dkt. No. 109, at 9. Additionally, IOENGINE argues that this case involves issues that the IPR process cannot resolve, including Ingenico's invalidity arguments under 35 U.S.C. §§ 101 and 112, Ingenico's defense of inequitable conduct for all claims of the patents in suit, and Ingenico's declaratory judgment action on certain claims not affirmatively asserted by IOENGINE. *See id.* at 11–12.

Contrary to IOENGINE's argument, the Court believes it is highly likely that the IPR will result in simplification of the district court proceedings. The '047, '969, and '703 patents share a common specification, and they share claim terms relevant to claim construction, including two terms the PTAB construed in its institution decision: "interactive user interface" and "through the terminal network interface." *See Ingenico Action*, Dkt. No. 104, at 10 ("The claim term 'interactive user interface' is common to every single asserted claim in this litigation, and the PTAB's construction of 'through the terminal network interface' affects at least assert[ed] claims 1 and 24 of the '047 patent, claim 1 of the '969 [patent], and claims 55, 93, and 104 of the '703 patent."). As noted by Ingenico, "[t]he relatedness of the '047, '969 and '703 Patents is so strong that during prosecution for both the '969 and '703 Patents, the examiner issued non-statutory double patenting rejections in light of the '047 Patent," and the patentee "only overcame these rejections by filing terminal disclaimers." *Id.* at 12. Therefore, although the claims of the '969 and the '703 patents are not directly at issue in IPR2019-00416, the PTAB's judgment with respect to the proper

construction of the claims of the '047 patent and its assessment of the art will likely be instructive in the district court litigation. *See Contour IP Holding, LLC v. GoPro, Inc.*, 2016 WL 4474340, at *3; *ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357–58 (D. Mass. 2015) (stay granted even though only two of 11 patents-in-suit and only 3 of the 22 claims were challenged in IPRs, but there was "significant overlap among the patents-in-suit."); *SMT Sols., Inc. v. ExpoEvent Supply LLC*, No. 11-6225, 2012 WL 3526830, at *4 (D.N.J. Aug. 15, 2012) (case would be simplified, even though "not all of the patents-in-suit are under reexamination," because "the patents-in-suit all share nearly identical disclosures"); *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, No. C 08-0930, 2008 WL 3833576, at *1 (N.D. Cal. Aug. 15, 2008) (staying case because a "closely related" and "sufficiently similar" patent was undergoing reexamination); *Alloc, Inc. v. Unilin Decor N.V.*, No. 03-cv-253, 2003 WL 21640372 (D. Del. July 11, 2003) (stay issued where "there is a sufficient correlation among all of the patents," even though the asserted patent was not undergoing review).

More generally, district courts have frequently issued stays in cases in which IPR proceedings have been instituted on fewer than all the claims asserted in the related litigation. *See, e.g.*, *Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, 2018 WL 6242280, at *5; *Clinicomp Int'l, Inc. v. Cerner Corp.*, Case No. 17-cv-2479, 2018 WL 5617694, at *4–5 (S.D. Cal. Oct. 30, 2018); *Canfield*, 2018 WL 2973404, at *2; *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-cv-586, 2017 WL 9885167, at *2 (E.D. Tex. Dec. 12, 2017); *Image Processing Techs.*, 2017 WL 7051628, at *1; *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case Nos. 2:16-cv-642 et al., 2017 WL 9885168, at *1 (E.D. Tex. June 13, 2017); *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, Civil Action Nos. 6:16-cv-86 et al., 2017 WL 3712916, at *3 (E.D. Tex. Feb. 3, 2017); *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, Case Nos. 6:15-cv-59 et al., 2016 WL 4394485, at *3

(E.D. Tex. May 12, 2016); *e.Digital Corp. v. Arcsoft, Inc.*, Case No. 15-cv-56, 2016 WL 452152, at *1–2 (S.D. Cal. Feb. 3, 2016); *Personal Audio LLC v. Google, Inc.*, Civil Action No. 1:15-cv-350, 2015 WL 12915558, at *3 (E.D. Tex. Nov. 3, 2015); *NFC Tech.*, 2015 WL 1069111, at *7; *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1027–28 (N.D. Cal. 2014) (citing cases). As those cases make clear, even when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable, particularly when the claims that are before the PTAB in an IPR are similar to those that are not. That is true in this case, for several reasons.

First, if the PTAB invalidates all of the claims before it, the case will unquestionably become simpler. One patent will be removed from the case altogether, and the task of dealing with the remaining 15 related claims from the other patents—for the parties, the jury, and the Court—will become significantly easier than it would have been with the 20 claims from three different patents. In a case involving technology as complex as the technology in this case, which is sure to challenge the ability of the jury to absorb and rationally decide issues of infringement and invalidity, there is a particularly high premium on simplification.

Second, even if the PTAB does not cancel all (or even any) of the asserted claims of the '047 patent, any conclusion that the PTAB reaches will have a likely effect on the litigation by limiting the arguments Ingenico and PayPal can make regarding validity. Ingenico acknowledges that the statutory estoppel provision, 35 U.S.C. § 315(e)(2), will bar it from seeking to invalidate the claims that were included in the IPR on any ground that was raised in the IPR petitions or could have been raised in those petitions. *See Ingenico Action*, Dkt. No. 104, at 8. For its part, PayPal has agreed to a limited estoppel, acknowledging that it will not challenge the '047 patent claims based on any argument made by Ingenico in its IPR proceeding and relied upon in a final written

decision of the PTAB that becomes the subject of a final non-appealable judgment. *See PayPal Action*, Dkt. No. 104, at 17.

Third, and relatedly, even if the PTAB does not invalidate any of the claims in the pending IPR proceedings, the Court will benefit from the PTAB's guidance on the construction of certain claim terms, which are also relevant to the '969 and '703 patents. More generally, the expertise of the PTAB judges in this complex field of art is likely to be of considerable assistance to the Court. *See PersonalWeb Techs., LLC v. Facebook, Inc.*, Case Nos. 5:13-cv-1356 et al., 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR provides a path to receive expert guidance from the PTO"); *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-4201, 2014 WL 93954, at *2–3 (N.D. Cal. Jan. 9, 2014); *E-Watch, Inc. v. Lorex Can., Inc.*, Civil Action No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013) ("At a minimum, even assuming that all the patents-in-suit survive the reexamination intact, the USPTO's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court."); *TimeBase Pty Ltd. v. Thomson Corp.*, Civil No. 07-1687, 2008 WL 1959061, at *2 (D. Minn. May 6, 2008); *see generally Ethicon, Inc.*, 849 F.2d at 1428 (even if reexamination does not lead to claim amendment or cancellation, "it could still provide valuable analysis to the district court"); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."

Fourth, the IPR proceeding may produce additional prosecution history that could assist the Court in addressing the issues of claim construction and validity. *See Ethicon LLC*, 2019 WL 1276029, at *2 ("There will be additional prosecution history relating to all of the claims in this case. Some claims may be cancelled. There may be amendments.");

Fifth, as alluded to earlier, allowing the PTO to adjudicate the validity of the claims before it in the IPR proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this Court. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 WL 93954, at *3 (a stay "will minimize the risk of inconsistent results and conserve resources"; there is "little benefit to be gained from having two forums review the validity of the same claims at the same time"); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-3587, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013); *Microsoft Corp. v. Tivo Inc.*, No. 10-cv-240, 2011 WL 1748428, at *5 (N.D. Cal. May 6, 2011).

Finally, there is no force to IOENGINE's argument that the IPR proceedings will not address several of the issues in the district court proceedings, such as patent ineligibility, inequitable conduct, and patent invalidity under section 112. When a court is deciding whether to grant a stay, "there is no requirement that issues in the IPR be identical to those in the litigation." *Bonutti Skeletal Innovations*, 2014 WL 1369721, at *5; *see 454 Life Scis. Corp.*, 2016 WL 6594083, at *3 ("Plaintiff correctly points out that the IPR proceedings will not address a number of the defenses that Defendants have raised in this litigation . . . . Nevertheless, on the whole, the IPR is very likely to substantially simplify the issues to be litigated in this case, resulting in the first factor weighing heavily in favor of . . . granting a stay."); *Neste Oil OYJ v. Dynamics Fuels, LLC*, No. 12-cv-1744, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) ("[W]hile the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter partes* review, it notes that the 'issue simplification' factor does not require complete overlap."). Because an IPR is restricted to determining patentability under sections 102 and 103 of the Patent Act on the basis of prior art consisting of patents or printed publications, 35 U.S.C. §311(b), issues of patent eligibility, inequitable conduct, and validity under section 112 of the

Patent Act will never be subject to review in an IPR. But that does not mean that the IPR will not significantly simplify the litigation both with respect to the invalidity issues that are addressed in the IPR and with respect to collateral matters such as claim construction and characterization of the state of the art on which the PTAB's expertise may be helpful in the district court proceeding.

In opposing PayPal's motion for a stay, IOENGINE argues that even though Ingenico "will be barred from seeking to invalidate the claims that were included in the '047 IPR on any ground that Ingenico raised in the '047 IPR Petition or reasonably could have been raised in that petition," *Ingenico Action*, Dkt. No. 109, at 12; see 35 U.S.C. § 315(e)(2), PayPal refuses to be so limited. PayPal has agreed "to be estopped in this litigation from challenging the validity of such claim as being anticipated under 35 U.S.C. § 102 or obvious under § 103 on the basis of the specific prior art and combinations raised by Ingenico in its '047 IPR if such prior art is relied upon in a final written decision of the PTAB that becomes the subject of a final non-appealable judgment as to any surviving claim." *PayPal Action*, Dkt. No. 94, at 17. IOENGINE argues that under that stipulation, PayPal "would be able to re-litigate validity of the '047 Patent in the PayPal Action, including by using arguments that could have been raised in Ingenico's IPR, thereby undermining any purported simplification." *Ingenico Action*, Dkt. No. 109, at 13–14.

As noted by Chief Judge Gilstrap of the United States District Court for the Eastern District of Texas, district courts have taken three different approaches to conditioning a stay on an estoppel of a party other than the IPR petitioner: not requiring any estoppel; requiring estoppel limited to the arguments made by the IPR petitioner; or requiring full estoppel, barring any arguments that were actually made by the IPR petitioner or could have been made by the IPR petitioner. *See Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-CV-0081, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016). In the *Kemper* case, Judge Gilstrap adopted the third approach, explaining

that "[t]he absence of a full statutory estoppel not only increases the ability of litigants to 'game the system' and devise an unfair second bite at the apple, it also has the potential to increase rather than reduce the complexity of the validity issues that may come before the Court." *Id.* Other courts, including courts in this district, have granted stays based on a party's stipulation to a limited estoppel of the sort agreed to by PayPal. *See, e.g.*, *e.Digital Corp.*, 2016 WL 452152, at *2; *Parallel Networks, LLC v. KOG Games, Inc.*, No. 13-178, Hr. Tr. At 29:4-30:4, 62:18-63:17 (D. Del. Feb. 4, 2014); *AIP Acquisition LLC v. Level 3 Commc'ns, LLC*, No. 12-617, D.I. 63, at 6–7 (D. Del. Jan. 9, 2014) ("Issues in the Cable Cases will also be simplified at trial because the Cable defendants have stipulated to a limited estoppel based upon invalidity arguments considered in the IPR proceeding that lead to a final, non-appealable judgment."); *In re Bear Creek Techs. Inc.*, No. 11-cv-721, 2013 WL 3789471, at *3 n.8 (D. Del. July 17, 2013) ("[T]he court finds the defendants' [agreed-upon limited] estoppel sufficient to guard against prejudice.").

Under the circumstances of this case, the Court finds that the concerns raised by Judge Gilstrap and echoed by IOENGINE, are somewhat tempered. Here, PayPal has filed its own IPRs addressed to the '047 patent, which are due to be acted upon in October and November of this year. If PayPal's IPRs are instituted, PayPal will be estopped from re-litigating arguments that it could have raised in its own IPRs, which include any argument that could have been raised in Ingenico's IPR. On the other hand, if PayPal were required to agree to a full estoppel and PayPal's IPRs were denied, the consequence would be that PayPal would be deprived of its opportunity to litigate the validity of the '047 patent in any forum. In the circumstances of this case, the Court believes that PayPal's stipulation to a limited estoppel is not fatal to its argument for a stay.

Whatever the outcome of the pending IPR petitions, the picture regarding the relationship between the PTAB proceedings and the proceedings before this Court will become clearer after

the PTAB acts on those petitions over the next four months. At that point, if the actions of the PTAB result in a significant change in the weight of the competing factors bearing on the propriety of a stay, IOENGINE can request that the Court reconsider its order granting a stay of the two actions and allow the district court actions to resume.

IOENGINE makes the related contention that "PayPal's and Ingenico's interests are closely aligned" such that "PayPal and Ingenico should be treated as real parties in interest or privies for purposes of § 315(e)." *Ingenico Action*, Dkt. No. 109, at 13 n.5. For that reason, IOENGINE argues, the Court should hold that PayPal should be legally barred from agreeing to only a "limited estoppel" of the sort PayPal has stipulated to. Instead, IOENGINE argues that that PayPal should be subject to the full degree of estoppel that falls on Ingenico.

The Court declines to address the "real party in interest" issue. That issue is more appropriately left to be addressed by the PTAB in the first instance, not by this Court. *See* 35 U.S.C. §315(b). The relationship between PayPal and Ingenico is therefore not a ground on which this Court is prepared to base the denial of a stay pending the IPR proceedings, at least prior to any ruling by the PTAB regarding that issue.

A further consideration bearing on the question whether to grant a stay is the pendency of a total of seven petitions for *inter partes* review, filed by Ingenico and PayPal, that are addressed to the '969 patent and the '703 patent. Those petitions are scheduled to be acted upon between October 10 and December 6, 2019. If those petitions are granted, the case for staying the district court actions will become substantially stronger. However, postponing a decision on whether to grant a stay until that time would impose significant additional costs on the parties for the work required to be done in the intervening period. In the Court's view, the preferable course is to enter

a stay now, subject to possible reconsideration if circumstances change in the coming months and a request is made to vacate the stay.

For the foregoing reasons, the Court concludes that the likelihood that the IPR proceeding will simplify this litigation and reduce the burden on the parties and on the Court is sufficiently high that the Court regards the "simplification/burden" factor as cutting strongly in favor of granting a stay.

* * * * *

As a final point, IOENGINE argues that if the Court were to grant a stay in the Ingenico Action, but deny a stay in the PayPal action, complications would arise. According to IOENGINE, if the PayPal Action continues, "the parties will still require the involvement of Ingenico" because "[a] significant portion of the source code and other documents and materials relevant to PayPal's accused products are in the possession of PayPal's supplier—Ingenico." *Ingenico Action*, Dkt. No. 109, at 15.

The Court is fully persuaded that granting a stay in one of the two cases before it and denying a stay in the other would be imprudent. IOENGINE's argument, however, does not persuade the Court that the proper course is to deny a stay in both cases, but only that the cases should be treated similarly. Because the Court is otherwise persuaded that a stay is appropriate, it concludes that a stay should be granted in both cases.

## CONCLUSION

After weighing all the factors that bear on whether to grant a stay pending *inter partes* review, the Court concludes that all three factors favor Ingenico and PayPal, and that a stay of both actions is warranted. Accordingly, the Court grants Ingenico and PayPal's motions to stay all

proceedings in Civil Action No. 18-452 and Civil Action No. 18-826 pending the completion of the '047 *inter partes* review proceeding before the PTAB.

In light of this order, the claim construction hearing scheduled for August 29, 2019, is canceled, and the request by Ingenico and PayPal for a teleconference regarding the postponement of the August 29 hearing is denied as moot.

IT IS SO ORDERED.

SIGNED this 21st day of August, 2019.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE