# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IOENGINE, LLC, <br><br>  *Plaintiff*, <br><br> v. <br><br>PAYPAL HOLDINGS, INC., <br><br>  *Defendant*. | § § § § § § § § § § § § § § | Civil Action No. 18-452-WCB |
| INGENICO INC., <br><br>  *Plaintiff*, <br><br> v. <br><br>IOENGINE, LLC, <br><br>  *Defendant*. <br><br>IOENGINE, LLC, <br><br>  *Counterclaim Plaintiff*, <br><br> v. <br><br>INGENICO INC., <br>INGENICO CORP., and <br>INGENICO GROUP, S.A., <br><br>  *Counterclaim Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 18-826-WCB |

# MEMORANDUM OPINION AND ORDER

These two cases have been stayed since August 21, 2019, pending the decisions of the Patent Trial and Appeal Board ("PTAB" or "Board") in *inter partes* review ("IPR") proceedings regarding the validity of claims asserted by IOENGINE, LLC ("IOENGINE") in each case. There has been activity before the PTAB since the stay was entered, and in light of that activity, IOENGINE now moves to vacate the stays granted in both cases. The motion is DENIED.

## BACKGROUND

IOENGINE filed suit against PayPal Holdings, Inc. ("PayPal") on March 23, 2018 (Case No. 18-452). IOENGINE alleged that PayPal had infringed U.S. Patent Nos. 8,539,047 ("the '047 patent"); 9,059,969 ("the '969 patent"); and 9,774,703 ("the '703 patent"). PayPal then sought indemnification from its supplier, Ingenico, Inc. On June 1, 2018, Ingenico filed an action against IOENGINE seeking a declaratory judgment of non-infringement of the asserted patents (Case No. 18-826). On August 17, 2018, IOENGINE filed a counterclaim against Ingenico and two of its corporate affiliates, Ingenico Corp. and Ingenico Group S.A., in Case No. 18-826, alleging infringement of most of the same claims that IOENGINE had asserted against PayPal.[1]

Following the initiation of the action in Case No. 18-826, Ingenico filed four petitions seeking *inter partes* review of the three patents IOENGINE had asserted against PayPal. PayPal filed eight of its own petitions for *inter partes* review. In July and August 2019, the PTAB acted on Ingenico's first two petitions. The Board instituted review in IPR2019-00416, which was directed to the '047 patent, and it denied review in IPR2019-00584, which was directed to the '703 patent.

---

[1] The three Ingenico entities will be referred to collectively as "Ingenico."

PayPal and Ingenico then moved to stay the litigation pending resolution of the IPR proceedings. After weighing the competing factors favoring and disfavoring a stay, I granted the motion and stayed both cases. *IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452 and 18-826, 2019 WL 3943058 (D. Del. Aug. 21, 2019). In the order granting the motion to stay, I noted that proceedings before the PTAB were ongoing, and in particular that 10 of the 12 IPR petitions still awaited institution decisions—two of the petitions filed by Ingenico and all eight filed by PayPal. I added that if the Board's actions on those petitions should "result in a significant change in the weight of the competing factors bearing on the propriety of a stay, IOENGINE can request that the Court reconsider its order granting a stay of the two actions and allow the district court actions to resume." *Id.* at *11. I noted, however, that if the IPR petitions relating to the '969 and '703 patents should be granted, "the case for staying the district court actions will become substantially stronger." *Id.* at *12.

The PTAB subsequently ruled on all the pending IPR petitions. On September 26, 2019, the Board granted both of Ingenico's two remaining petitions, in IPR2019-00879 and IPR2019-00929, which were directed to the '969 and '703 patents, respectively. On October 3, 2019, the Board denied four of PayPal's petitions (in IPR2019-00884, IPR2019-00885, IPR2019-00886, and IPR2019-00887), and on October 29, 2019, the Board denied the other four petitions filed by PayPal (in IPR2019-00906, IPR2019-00907, IPR2019-00930, and IPR2019-00931).

In the three instituted IPR proceedings, the PTAB ruled that Ingenico had demonstrated a reasonable likelihood that 17 of the 21 claims that were asserted in the district court litigation would be found invalid. The Board ruled that Ingenico had not carried its burden of showing that the remaining four asserted claims were likely to be found invalid. Nonetheless, pursuant to the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1359–60 (2018), the

3

Board instituted review of all the claims at issue in the three instituted IPR petitions. As a result, all 21 of the claims asserted by IOENGINE in the two cases at bar will be addressed in the PTAB's final written decisions in the instituted IPR proceedings. The PTAB is scheduled to make final determinations of patentability as to all 21 claims at issue in these cases by September of this year.

## DISCUSSION

IOENGINE argues that the developments in the IPR cases since August 2019 justify vacating the stay of the two district court cases. IOENGINE focuses on the fact that all of PayPal's IPR petitions were denied and that the PTAB has determined that 13 claims from the three patents in suit, including four of the claims asserted in these cases, are unlikely to be found unpatentable.

PayPal and Ingenico oppose vacating the stay. They point out that all of the claims asserted in the district court litigation are subject to review in the three pending IPR proceedings, and that those proceedings could result in most, or even all, of the asserted claims being canceled. At a minimum, PayPal and Ingenico argue, the IPR proceedings are likely to simplify and clarify the issues that are presented in the district court cases. The recent developments in the IPR proceedings, according to PayPal and Ingenico, have not undercut the justifications for a stay, as IOENGINE argues, but have strengthened them.

I agree with PayPal and Ingenico. As explained in the August 21, 2019, order entering a stay in these cases, *IOENGINE*, 2019 WL 3943058, courts typically consider three factors in determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, in particular whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or would allow the movant to gain a clear tactical advantage. *See, e.g.*, *CG Tech. Dev., LLC v. William Hill U.S. Coldco, Inc.*, No. 18-

cv-533, 2019 WL 4098002, at *1 (D. Del. Aug. 29, 2019); *Huvepharma Eood and Huvepharma, Inc. v. Associated British Foods, PLC*, Civil Action No. 18-129, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019); *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12-1461 et al., 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).  The same factors apply to motions to vacate a stay after one has been entered, and the question before the court in such cases is whether the circumstances have materially changed since the stay was issued.  *See DermaFocus LLC v. Ulthera, Inc.*, C.A. No. 1:15-cv-654, 2018 WL 2733363, at *1–2 (D. Del. June 7, 2018); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, Civil Action No. 14-1430 et al., 2018 WL 1061370, at *1 (D. Del. Feb. 26, 2018).

The second and third factors have not changed since the stay was instituted.  The status of the district court litigation is, of course, unchanged since that time—discovery is not complete, expert reports have not been served and expert discovery has not been conducted, dispositive motions have not been filed, and trial dates have not been set.  The facts bearing on the possible prejudice to IOENGINE or tactical advantage to PayPal or Ingenico also have not materially changed.  As to the remaining factor, IOENGINE argues that in light of the PTAB's recent institution decisions, the IPR proceedings are not likely to simplify the issues for trial or reduce the burdens on the parties and the court in the district court litigation.

I disagree.  It is even more likely now than it was in August 2019 that the PTAB proceedings will simplify the district court litigation, regardless of precisely how the IPR proceedings turn out.  To begin with, in light of the fact that all 21 of the asserted claims are now before the Board in the IPR proceedings, the outcome of those proceedings could be the cancellation of all the asserted claims.  If that occurs, it would obviate the need for further proceedings in these cases.  Because of the Board's decision that four of the asserted claims are

not likely to be found unpatentable, it may be likely that those four claims will survive the IPR proceedings (and of course it is possible that some or all of the other 17 asserted claims will ultimately be found patentable as well). Even if some claims survive the IPR proceedings, however, a reduction in the number of claims in dispute will render the district court litigation less complex. And even if all of the asserted claims survive the IPR proceedings, it is highly likely that those proceedings will result in simplifying the matters that remain to be decided in the district court proceedings, either by operation of the estoppel provision of the IPR statute, 35 U.S.C. § 315(e)(2), or by providing analysis of the claims that will serve as useful guidance for the court and the parties in the district court litigation. Accordingly, I am persuaded that the events of the last several months have strengthened, not weakened, the case for a stay, and that awaiting the PTAB's decision on the patentability of the asserted claims is the wiser course. What follows below is a more detailed analysis of the parties' arguments on this issue.

1. IOENGINE emphasizes that the PTAB has denied eight of the 10 IPR petitions that were pending at the time of the August 2019 order staying the district court proceedings, including all of PayPal's petitions. In addition, IOENGINE notes that the Board found that Ingenico failed to show a reasonable likelihood that 13 of the claims among the three patents that Ingenico challenged in its petitions for *inter partes* review would be found invalid.[2] Those observations are largely irrelevant, however, as they have nothing to do with the potential effect of the Board's ultimate decisions in the IPR proceedings on the claims that have been asserted in the district court litigation. What matters for the two cases before me is not how many petitions have been denied or how many unasserted claims have been determined unlikely to be found invalid. Because only

---

[2] Those 13 claims are claims 56, 65, 74, 75, 89, 90, 100, 101, 105, 114, 123, and 124 of the '703 patent, and claim 10 of the '969 patent.

21 of the claims from the three patents are at issue in the district court cases, what matters most is how the Board has ruled on those 21 claims in its institution decisions and how it may rule on those 21 claims in its final written decisions. As to that issue, the Board has instituted review of all 21 claims and has found a reasonable likelihood that Ingenico would prevail in showing that 17 of those claims are invalid.[3] Even with regard to the four asserted claims as to which the PTAB found that Ingenico had not demonstrated that that they would likely be found invalid, those claims are still at issue in the IPR proceeding and could be canceled if Ingenico is able to persuade the Board, after a full trial, that the claims are invalid.

The PTAB's finding that Ingenico has established a reasonable likelihood that 17 of the 21 claims at issue in these cases will be invalidated is an important factor in assessing whether the stay should be vacated. At the time I granted the stay in August 2019, the PTAB had instituted review of only six of the asserted claims, all from the '047 patent. Since that time, the Board has instituted review of all the asserted claims from the '969 and '703 patents. That fact alone establishes that the interests served by the stay are even stronger now than when the stay was instituted. The fact that the Board has expressed doubt whether the four remaining asserted claims will be found invalid is not a sufficiently strong countervailing factor to shift the balance of interests in IOENGINE's favor. Even if none of those four claims are held invalid, the judicial economy factor would be served by maintaining the stay in effect.

Importantly, if the remaining 17 asserted claims are canceled, the number of claims to be adjudicated in the district court proceedings would be reduced from 21 to 4, resulting in a

---

[3] The claims asserted in the district court litigation against PayPal are claims 1, 4, 12, 24, and 25 of the '047 patent; claims 2, 3, 4, and 7 of the '969 patent; and claims 55, 56, 57, 61, 100, 104, 105, 106, 110, 111, and 123 of the '703 patent. The same claims are asserted against Ingenico, except that claim 2 of the '047 patent is asserted against Ingenico but not against PayPal, and claim 24 of the '047 patent is asserted against PayPal but not against Ingenico.

significant reduction in the complexity of the two cases.[4] In addition, as noted in the original stay order, the PTAB's analysis of the claims before it will almost certainly simplify and clarify the issues in the district court litigation, regardless of how many of the pending claims are canceled. *See Contour IP Holding, LC v. GoPro, Inc.*, Civil Action No. 15-1108, 2016 WL 4474340, at *3 (D. Del. July 14, 2016) ("With regard to simplification, a very high percentage of the asserted patents' claims are at issue in the IPR proceedings . . . . In light of this, and in light of the fact that estoppel will apply to GoPro (as to claims it raised or reasonably could have raised in the PTAB) for non-cancelled claims on which trial is instituted, 35 U.S.C. § 315(e)(2), the Court agrees with GoPro that a stay will significantly help further the simplification of issues in this case."); *Princeton*, 2014 WL 3819458, at *2 ("[S]hould even some of the asserted claims be found invalid, that finding would reduce the number of issues left to be litigated."); *Softview LLC v. Apple Inc.*, Civil Action No. 12-989 et al., 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013) (same). Beyond that, the Board's final written decisions can be expected to address issues of claim construction and invalidity. The proceedings before the Board may well result in the parties taking positions pertinent to the issues presented to the court. And if the Board finds that particular claims are not invalid, the estoppel provisions of the IPR statute will likely simplify the validity questions presented in the district court litigation.[5]

---

[4] I attach little significance to the fact that the Board denied institution of all of PayPal's petitions. The Board stated that it had denied four of those petitions (IPR2019-0084, IPR2019-00885, IPR2019-00886, and IPR2019-00887) on discretionary grounds, including that the challenged claims were largely overlapping and that it was not evident that PayPal would suffer any prejudice if review of those petitions was denied. Moreover, all of the challenged claims that are asserted against PayPal and Ingenico are at issue in the Ingenico petitions that have been instituted, and both PayPal and Ingenico will benefit from any decision canceling any of those claims.

[5] In addition to those factors, there are a number of other ways that the IPR proceeding may simplify the district court litigation, as Judge Sleet noted in *Neste Oil OYJ v. Dynamic Fuels, LLC*, Civil Action No. 12-1744, 2013 WL 3353984, at *4 (D. Del. July 2, 2013), quoting from

IOENGINE argues that any benefit from the guidance provided by the PTAB has already been obtained based on the Board's initial decision on institution of the IPRs. But the Board's institution decisions are not the Board's final word on the claims at issue. The Board's final written decisions will be the products of the plenary presentation of evidence, briefing, and argument, as opposed to the preliminary views reflected in the institution decisions. Moreover, as Ingenico and PayPal point out, it is somewhat inconsistent for IOENGINE to argue here that the Board has already provided guidance for purposes of the district court litigation, while at the same time arguing to the Board that it should reverse the preliminary positions it has taken on various issues in the IPR proceeding, including the likely invalidity of most of the asserted claims.

2. IOENGINE next argues that "the related [Covered Business Method] review procedures of the [America Invents Act] strongly counsel *against a continued* stay of these cases now that the Court (and the parties) have received the PTAB's institution decisions." 18-452 Dkt. No. 123, at 8; 18-826 Dkt. No. 136, at 8 (emphasis in original). IOENGINE points to the legislative history of the statutory review procedure for Covered Business Methods ["CBM review"], *see* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 329 (2011). That statute expressly authorizes district courts to grant stays pending CBM review. *Id.* § 18(b), 125 Stat. at 331. IOENGINE argues that the absence of a parallel provision for stays in the portions of the statute governing IPRs indicates that "Congress did *not* intend the same stay standard of CBM review to be applied to IPRs." 18-452 Dkt. No. 123, at 9 & n.10 (emphasis in original); 18-826 Dkt. No. 136, at 9 & n.10 (emphasis in original).

---

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001).

The legislative history of the America Invents Act that IOENGINE quotes makes clear that Congress envisioned that in cases involving CBM review, stays of district court litigation would be granted absent some exceptional circumstance. *See* 18-452 Dkt. No. 123, at 9; 18-826 Dkt. No. 126, at 9. But the fact that Congress may have envisioned a nearly automatic stay procedure in CBM cases does not suggest that Congress meant to prohibit or discourage stays of district court litigation in IPR cases.

To the contrary, the Federal Circuit and numerous district courts have held that stays may be issued in IPR cases, and that the factors the courts should consider in deciding whether to grant such stays are similar to the factors set out in the CBM statute for issuing stays in CBM cases. In *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357 (Fed. Cir. 2016), the Federal Circuit approved the issuance of a stay of district court litigation pending an IPR proceeding, noting that "Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties was not limited to the CBM review context." *Id.* at 1362, (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 106911, at *5 (E.D. Tex. Mar. 11, 2015)). As explained in the original order granting a stay in this case, courts have consistently applied the factors discussed in that order to determine whether a stay should be granted. I considered those factors to favor issuance of a stay at the time Ingenico and PayPal moved for a stay, and for the reasons stated above, I regard those factors as favoring a continuation of the stay now that the PTAB has entered grants or denials of institution with regard to all of the outstanding IPR petitions.

3. IOENGINE contends that maintaining the stay of the district court litigation "is prejudicial and unfairly disadvantages IOENGINE." 18-452 Dkt. No. 123, at 10; 18-826 Dkt. No. 135, at 10. In essence, IOENGINE's argument is that further postponement of the district court litigation will deny IOENGINE its entitlement to prompt enforcement of its patent rights.

Aside from its general interest in the prompt enforcement of its patent rights, IOENGINE has not pointed to any specific hardship or inequity that it will suffer as a result of the stay, a factor that weighs against vacating the stay. *See Yodlee, Inc. v. Plaid Techs. Inc.*, Civil Action No. 14-1445, 2017 WL 401896, at *2 (D. Del. Jan. 27, 2017); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010). It is undisputed that IOENGINE does not compete with Ingenico or PayPal, and IOENGINE does not point to any competitive injury it is likely to suffer as a result of the continuation of the stay.

While it is true that the interest in prompt enforcement of patent rights is a factor that counsels against staying district court proceedings in some circumstances, it is not always the case that stays pending IPR proceedings result in delays in resolving patent disputes. By statute, IPR proceedings move fast, while district court proceedings often proceed more slowly. As IOENGINE acknowledges, the PTAB will complete the IPR proceedings in this case within eight months. And because IPR proceedings can often resolve the core disputed issues in a case, the outcome of an IPR proceeding will frequently facilitate the prompt resolution of the co-pending district court action, resulting in a final disposition of the dispute more quickly than would have been the case in the absence of the IPR proceeding.

At bottom, IOENGINE's argument is based on a misconception. At the outset of its motion, IOENGINE writes that "PayPal and Ingenico seek to maintain the stays in these cases in the hope that delaying these proceedings will ultimately deny IOENGINE its day in court." Dkt. No. 123, at 1. The problem with that statement is that IOENGINE is not entitled to a "day in court" with regard to claims that the Patent and Trademark Office cancels as invalid. The real question is whether the district court litigation should proceed while the PTAB is deciding whether any or all of the asserted claims should be canceled.

That question comes down to one of efficiency and timing. If the court were to go ahead with pretrial proceedings on all the asserted claims against the two defendants while the IPR proceedings were ongoing, there is a substantial risk that the parties and the court would have to litigate issues involving numerous claims, even if some or all of those claims were ultimately canceled by the PTAB following a significant amount of work done by the parties and the court in the district court litigation.[6] The course proposed by IOENGINE—to go forward with the litigation on all the asserted claims—would impose the expense of the litigation on the parties and a burden on the court and the jury, when it now seems likely that the district court cases, if they survive at all, will be substantially simplified by the Board's rulings. In my judgment, the interests of efficiency and economy clearly favor keeping the stay in place and allowing the district court proceeding to reap the benefits of the PTAB's work in the IPR proceedings.

4. IOENGINE next argues that the district court litigation can be "quickly and efficiently restarted and brought to a conclusion." 18-452 Dkt. No. 123, at 12; 18-826 Dkt. No. 136, at 12. IOENGINE argues that allowing these cases to go forward while the IPR proceedings are in train "is the far *more* efficient route" because it would "allow the parties and their witnesses to consider overlapping issues at the same time, rather than piecemeal, would allow the parties to more quickly reach potentially case-dispositive summary judgment, and would allow the speedy adjudication of issues that cannot be addressed by the PTAB, and that will have to be addressed by the Court, like

---

[6] In arguing that the IPR proceedings are likely to be concluded before the trials in the district court litigation, IOENGINE ignores that if the stay were vacated, the parties and the court would be subject to the substantial expense and effort entailed by claim construction, the competition of fact discovery, the preparation and service of expert reports, expert discovery, dispositive motions, and decisions on those motions, all of which would likely be due for completion before the Board's final written decisions in the IPR proceedings.

12

infringement." 18-452 Dkt. No. 123, at 13 (emphasis in original); 18-826 Dkt. No. 136, at 13 (emphasis in original).

IOENGINE recognizes that much work remains to be done in the district court litigation, including claim construction, the completion of fact discovery, expert discovery, dispositive motions, and two trials. Nonetheless, IOENGINE treats those tasks as if they entail little by way of burden, either on the parties or on the court. In fact, as noted in my order granting the stay, *IOENGINE*, 2019 WL 3943058, at *5, those parts of the district court proceeding are the most burdensome and expensive parts of the process, for the parties, for the court and, potentially, for the juries selected to try these two cases.

It is also unclear to me why it would be far more efficient, as IOENGINE contends, for the parties and witnesses "to consider overlapping issues at the same time." It would appear to be more orderly for the cases to proceed seriatim, particularly in light of the possibility that the posture of the district court litigation will be altered by the outcome of the IPR proceeding.

In its reply brief, IOENGINE argues that Ingenico "should not be permitted to prejudice IOENGINE by arguing that maintaining its *own*, earlier filed declaratory judgment action in 'parallel' with its later IPRs is inefficient, when it is Ingenico itself that created those parallel proceedings." 18-452 Dkt. No. 127, at 8; 18-826 Dkt. No. 140, at 8. IOENGINE cites no authority for the proposition that a declaratory judgment plaintiff may not seek a stay pending IPR proceedings. Moreover, Ingenico's litigation strategy seems particularly justified in a case such as this, where Ingenico's status as a potential indemnitor for PayPal gave Ingenico a strong incentive to file a declaratory judgment action in order to ensure that it could participate fully in the adjudication of rights regarding products it had provided to PayPal. Under these circumstances, there is no reason Ingenico should be barred from obtaining the benefits of *inter*

13

*partes* review and seeking to have the district court litigation stayed pending the disposition of the IPR proceedings. Although Ingenico is technically a plaintiff in Case No. 18-826 with respect to the issue of infringement, it is a putative defendant (and an actual counterclaim-defendant) on the issues of infringement and invalidity. *See* 18-826 Dkt. No. 68, at 112–13 (raising affirmative defenses of non-infringement and invalidity with respect to the '047, '969, and '703 patents).[7] Ingenico's position is thus not materially different from that of an accused infringer that is a defendant in an infringement action and that petitions for IPR to test the validity of the patents asserted against it.

5. Finally, IOENGINE argues that it is "no longer necessarily true, as it was when the stays were entered," that a PTAB decision as to the validity of the patents in suit would likely come at the time of trial or post-trial proceedings in the district court litigation. 18-452 Dkt. No. 123, at 13; 18-826 Dkt. No. 136, at 13. Final decisions in the IPRs are now expected by September 28, 2019, which IOENGINE asserts is likely before any trial would be held if the stay were lifted.

What IOENGINE appears to be saying is that because the filing of final written decisions from the PTAB will likely be complete within eight months from today, the stay should be vacated because the trials will likely be conducted at a time after the PTAB's work is done. As noted above, that argument ignores the substantial work that remains in the district court litigation before the trials are conducted. What is more, the argument implicitly recognizes that the delay that is likely to result from continuing the stay at this juncture is not exceptionally long. The prejudicial effect of the stay on IOENGINE is thus outweighed by its benefits.

---

[7] Ingenico did not raise validity issues in its declaratory judgment complaint. If it had done so, it would have been barred from seeking *inter partes* review of the patents in suit. *See* 35 U.S.C. § 315(a)(1). Instead, Ingenico raised invalidity as a defense to IOENGINE's infringement counterclaims in the declaratory judgment action.

For the foregoing reasons, and for the reasons set forth in my August 21, 2019, order staying these cases pending the IPR proceedings, I conclude that the balance of competing interests strongly favors maintaining the stay in effect. The motion to vacate the stay is therefore denied.

IT IS SO ORDERED.

SIGNED this 27th day of January, 2020.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE