# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IOENGINE, LLC,<br>    *Plaintiff,*<br><br>v.<br><br>PAYPAL HOLDINGS, INC.,<br>    *Defendant.* | C.A. No. 18-452-WCB<br><br>JURY TRIAL DEMANDED<br><br>**Original Version September 21, 2021**<br><br>**Public Version September 28, 2021** |
| INGENICO INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>IOENGINE, LLC,<br><br>    *Defendant.* | C.A. No. 18-826-WCB |
| IOENGINE, LLC,<br><br>    *Counterclaim Plaintiff,*<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>    *Counterclaim Defendants.* | |

## IOENGINE'S OPENING DISCOVERY LETTER REGARDING ZETTLE AND 30(B)(1) DISCOVERY

Dear Judge Bryson:

IOENGINE respectfully submits this discovery dispute letter requesting that PayPal be ordered to 1) produce documents and provide a 30(b)(6) witness relating to PayPal's acquisition and valuation of iZettle and information regarding the Zettle products and services back to September 2018; 2) provide a 30(b)(6) witness on the full scope of IOENGINE's 30(b)(6) topics 6, 16, and 18, along with fully responding to corresponding requests for production; and 3) produce nine 30(b)(1) witnesses in accordance with the parties' prior agreement, which is also justified in light of the recently added Zettle products and services.

I. *Discovery Regarding Zettle Outside the U.S. is Relevant to IOENGINE's Claims*

Less than three months ago, based on a PayPal press release, IOENGINE discovered that PayPal was launching Zettle in the U.S. to replace its infringing PayPal Here ("PPH") mobile payment devices and services. Pursuant to the Court's Order, the Zettle products and services were added to this case as accused products. *See*, D.I. 249, at 8-9.

Since August 20, 2021 PayPal has slowly made rolling productions of certain Zettle documents, including as recently as today. PayPal has not disputed the relevance of Zettle discovery. However, less than two weeks ago, nearly four months after IOENGINE served its 30(b)(6) notice on PayPal and with depositions looming, PayPal stated as a general objection to IOENGINE's 30(b)(6) notice that it "objects to providing testimony regarding Zettle on any Topic, except as it relates to the launch of Zettle in the United States." *See*, Ex. A (PayPal's Obj. to IOENGINE's 30(b)(6) Notice), at 8, ¶¶14-15. PayPal made similar objections in response to IOENGINE's RFPs and is refusing to produce corresponding documents on this basis. *See, e.g.*, Ex. B (PayPal's Resp. and Obj. to IOENGINE's Third RFPs), at 9 ("PayPal will limit its response to the time period in which Zettle was released in the United States.").

This case presents an unusual set of facts where products with an established international track record are now being sold and offered for sale in the U.S. as a direct replacement for previously accused U.S. products. PayPal, a U.S. company, completed its acquisition of iZettle (rebranded Zettle) in September 2018 and has been offering Zettle products overseas for approximately three years. *See* https://newsroom.au.paypal-corp.com/2018-09-20-PayPal-Completes-Acquisition-of-iZettle. PayPal argues, and IOENGINE does not dispute, that revenue generated by the Zettle products solely outside of the U.S. does not form part of the damages base in this case. However, certain aspects of Zettle's development and sales history since 2018, even though occurring outside the U.S., are relevant to IOENGINE's allegations of infringement and willfulness and to the establishment of a reasonable royalty: Information regarding technical development of Zettle products and services outside the U.S. bears on the development of the underlying technology now being sold and offered for sale in the U.S. It also relates to PayPal's decision to introduce Zettle in the U.S., which bears on willfulness. And PayPal's sales and profitability of the Zettle products, customer use of and demand for the Zettle products, their commercial success, and PayPal's reasons for introducing Zettle in the U.S. to replace PPH (including valuations of iZettle, projections for growth, profitability, and adoption in the U.S., and comparisons with PPH), are all relevant to the calculation of a reasonable royalty, even if those

2

analyses were conducted and documents were created outside the U.S. and prior to Zettle's launch in the U.S. Where products previously offered overseas are introduced in the U.S., it is improper to withhold otherwise relevant discovery regarding those products simply because it relates to activities outside the U.S. *See, e.g.*, *Minnesota Min. & Mfg. Co. v. Smith & Nephew, PLC*, No. 91-cv-274, 1992 WL 464352, at *1-2 (D. Minn. July 27, 1992) (requiring production of foreign sales and marketing information); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2018 WL 6175982, at *2 (N.D. Cal. Nov. 26, 2018). *See also Alloc, Inc. v. Unilin Beheer B.V.*, 03-cv-1266, 2006 WL 757871, at * 4 (E.D. Wis. Mar. 24, 2006) ("The Court does not see why an international venue diminishes relevance[,]…[w]here [marketing] materials were distributed is not relevant.").

PayPal seeks to avoid discovery of relevant development and financial information, claiming that it does not "relate[] to the launch of Zettle in the United States," and refuses to provide a 30(b)(6) witness or produce documents on these topics. PayPal claims the information is neither relevant nor proportional to the needs of the case, in part because PayPal has "produced substantial amounts of similar information for [PPH] in the [U.S.]." But PPH and Zettle are not identical, and unless PayPal will stipulate that discovery of PPH applies equally to Zettle, PayPal cannot avoid discovery of Zettle on the basis of having provided information for PPH. PayPal made a decision to replace the established PPH business in the U.S. with the new Zettle products and services. The financial history for Zettle prior to its introduction in the U.S., including profitability metrics, is directly relevant to PayPal's reasoning and decision-making for substituting products in the U.S. Further, the discovery sought by IOENGINE directly impacts the reasonable royalty analysis under the *Georgia Pacific* factors. *See, e.g.*, *3Com Corp. v. D-Link Sys., Inc.*, No. C 03-2177 VRW, 2007 WL 949596, at *4 (N.D. Cal. Mar. 27, 2007) ("[W]orldwide profits and sales are relevant to a reasonable royalty calculation."); *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, No. 2:19-CV-00057-JRG, 2020 WL 6365514, at *2 (E.D. Tex. Apr. 9, 2020). For example, factor 8 calls for consideration of the established profitability of the product made under the patent; its commercial success; and its current popularity. Here, the accused Zettle products and services are not "new"; they have a track record that is properly considered in a hypothetical negotiation. Further, factor 12 calls for consideration of the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. The Zettle products and services, even prior to their U.S. introduction, constitute at minimum a comparable business, if not the particular business in question. And factor 13 requires analysis of the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements. Having established financial data on profitability of the Zettle products and services in multiple markets will directly aid in apportioning profits to the invention, and having the data over a multi-year period will aid in accounting for potential seasonality in the revenue.

Similarly, agreements and/or licenses relating to Zettle activities—even those outside the U.S.—are relevant to the reasonable royalty analysis and must be produced. Indeed, any license agreements for the Zettle products and services that relate to the patents-in-suit would be relevant under at least *Georgia-Pacific* factor number 2 (rates paid by the licensee for the use of other patents comparable to the patent in suit). PayPal's expert is free to opine as to the *weight* of those licenses under the *Georgia-Pacific* factors, but PayPal cannot simply refuse to produce them or

provide testimony on them. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 704525, at *2 (N.D. Ill. Mar. 1, 2007). Finally, worldwide sales and profits are relevant to objective indicia of nonobviousness because "the greater commercial success worldwide, the more likely the patent is not obvious." *See, e.g.*, *3Com*, 2007 WL 949596, at *4; *EVS Codex*, 2020 WL 6365514, at *2.

As such, IOENGINE seeks documents and 30(b)(6) testimony relating to PayPal's acquisition and valuation of iZettle and the Zettle service, development of the Zettle products and services, and financial history (including profitability metrics) for the Zettle products and services, including those Zettle activities that may have taken place outside the U.S.

**II.      *PayPal's Refusal to Provide 30(b)(6) Testimony on Individual Topics is Improper***

In addition to stating a general objection, PayPal objected to a number of IOENGINE's individual 30(b)(6) topics, improperly carving out areas where it refuses to provide any testimony.

**A. *Topics 6 and 18:*** Topics 6 and 18 seek testimony regarding royalty, license, settlement, sales, distribution, or marketing agreements with third-parties relating to the accused products and functionalities. *See*, Ex. A, at 15-16, 29-30. PayPal has agreed to produce a witness to testify *only* as to agreements "it has produced in this Action." But PayPal concedes that it has excluded from production agreements that it believes are not "relate[d] to the launch of Zettle in the United States." Limiting the topic as PayPal has done improperly excludes testimony regarding agreements covering relevant Zettle activities outside the U.S., as addressed above and which PayPal has refused to produce. IOENGINE is entitled to 30(b)(6) testimony about additional agreements that may exist, whether or not intentionally excluded from PayPal's document production, and PayPal's witness on these topics should be prepared to respond to those questions.

**B. *Topic 16:*** Topic 16 relates to any agreement under which an indemnification obligation relating to this action exists, along with related communications such as requests for indemnification to or from PayPal. IOENGINE's Request for Production No. 24 also seeks these agreements and communications. When PayPal initially responded to RFP No. 24 in 2018, it committed to producing responsive documents, *see*, Ex. C (PayPal's Resp. and Obj. to IOENGINE's First RFPs), at 25, but PayPal now seeks to exclude the vast majority of testimony on this topic, contending that any indemnification obligations are not relevant. *See*, Ex. A, at 27-28. PayPal is incorrect. The existence of and communications concerning indemnification obligations relating to the technology at issue is relevant at least to induced infringement (as any promise by PayPal to indemnify a third-party encourages use of the infringing technology), willfulness (as PayPal's interest in being indemnified reflects a known risk of infringement and the specific contours of any indemnification obligations may reveal that PayPal desired indemnification in connection with specific infringing functionalities), and a reasonable royalty determination (as it is indicative of the value of the technology to the parties). *See, e.g.*, *C & C Jewelry Mfg., Inc. v. West*, No. C09-01303 JF HRL, 2011 WL 2433817, at *1 (N.D. Cal. June 13, 2011) (collecting cases). None of this information would be revealed by the mere existence of an indemnification clause alone. Instead, it requires discovery of the negotiations surrounding those clauses, and specific requests, offers, and demands for indemnification.

### III.    *PayPal Must Provide Separate 30(b)(1) Availability for Noticed Depositions and Provide Additional Deposition Availability for Zettle Witnesses*

The parties agreed at the outset of discovery that, pursuant to Rule 30, each side would be entitled to 10 depositions of a party, with a maximum of "75 hours of total deposition time under Rule 30 … 21 hours of which may be 30(b)(6) testimony." *See* D.I. 41, at 9.  PayPal now contends that IOENGINE is entitled only to *seven* depositions under Rule 30(b)(1).  PayPal's purported justification is that the 21 hours of testimony in response to IOENGINE's 30(b)(6) notice should count as three depositions.  In meet and confer PayPal has refused to budge from this position despite it being directly contrary to the Federal Rules.  The 1993 Advisory Committee Notes to Rule 30 address subdivision (a)(2)(A), which is "a limit [of 10] on the number of depositions the parties may take" and clearly states that "[a] deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition ***even though more than one person may be designated to testify***."  Fed. R. Civ P. 30(a)(2)(a) Advisory Committee Notes (1993) (emphasis added); *see also Sabre v. First Dominion Cap., LLC*, 01-cv-2145 (HBP), 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("[F]or purposes of calculating the number of a depositions in a case, a 30(b)(6) deposition [of a party] is separately counted as a single deposition, regardless of the number of witnesses designated.").  PayPal's argument to the contrary has been considered and rejected by courts under similar circumstances.  *See, e.g.*, *I/P Engine, Inc. v. AOL, Inc.*, 283 F.R.D. 322, 323 (E.D. Va. 2012) (rejecting defendants' argument that "depositions of each separate Rule 30(b)(6) designee" would count towards a 10-deposition limit) ("The Rule 30(b)(6) depositions of the five corporate defendants count, at most, as one deposition each for this purpose, no matter how many separate depositions of the 30(b)(6) designees are actually conducted.").[1]  PayPal's interpretation is also inconsistent with the parties' agreed deposition limit of 21 hours of 30(b)(6) depositions and 75 hours total.  *See*, D.I. 41, at 9.  If 21 hours of 30(b)(6) time counts as three separate depositions, IOENGINE would get only a maximum of 70 hours of total deposition time (21 hours of 30(b)(6) deposition time plus seven 30(b)(1) depositions of maximum seven hours each), erasing IOENGINE's 5 final hours of deposition time.  Accordingly, under both the Federal Rules and the parties' agreement, IOENGINE is entitled to nine 30(b)(1) depositions.[2]

---

[1] In support of its position to the contrary, PayPal cites to a summary "case schedule" table in *Meds. Co. v. Teva Parenteral Meds., Inc.*, No. 09-750-ER, 2010 U.S. Dist. LEXIS 140356, at *4 (D. Del. Dec. 23, 2010).  But the summary table in that provides no analysis as to the default rule, instead it merely reflects discovery limits agreed to by the parties in that case.  *Id.* at *4, table 3 (providing "all parties are in agreement" as the only "[r]eason" for the limitation).

[2] IOENGINE of course will endeavor to be efficient and not use all 75 hours of deposition time, if possible.  But PayPal identified 16 people with relevant knowledge, more than the number of depositions agreed to by the parties.  *See*, Ex. D (PayPal's First Suppl. Initial Rule 26(a)(1) Disclosures) (Sept. 14, 2021)), at 5-8.  IOENGINE needs the ability, consistent with the parties' agreement, to depose at least the number witnesses previously agreed to.  Moreover, to the extent PayPal elects to present testimony at trial from a witness that IOENGINE has not deposed, IOENGINE should be able to conduct a trial deposition.

In addition, the scope of this case was recently expanded to include PayPal's accused Zettle products and services. In doing so, the Court acknowledged that "adding the Zettle product to the PayPal case may justify some adjustment in the agreed-upon deposition arrangements." D.I. 273 at 3. IOENGINE has requested nine total 30(b)(1) depositions (consistent with the parties' original agreement) to account for Zettle, while committing to stay within the initially agreed-upon limit of 75 total hours of deposition time. PayPal has refused, even though there would be no increase in the total number or hours of depositions previously agreed to by PayPal.

Not only is PayPal refusing to make any accommodation for additional Zettle deponents, it is attempting to leverage the Zettle witnesses to IOENGINE's prejudice. On August 25, 2021, PayPal identified four witnesses with relevant knowledge of the Zettle products, including two witnesses who are not 30(b)(6) designees. *See*, Ex. E (Aug. 25, 2021 letter, Jensen to Chuebon), at 1-2 (disclosing, for the first time, Messrs. Von Corswant and Sanchez De la Rosa). That August 25th letter did not disclose the locations of the Zettle witnesses, and PayPal did not disclose until September 1, 2021 its position that, since some of those new witnesses "reside in various [unspecified] European countries," "different procedures *may* apply for seeking a personal deposition." Ex. F (Sept. 1, 2021 email, Jensen to Chuebon), at 1 (emphasis added). PayPal did not disclose the specific locations of the Zettle witnesses, Sweden and the United Kingdom, until just *last week*. *See*, Ex. D, at 6-7. Even then, and although the Zettle witnesses are PayPal's employees and listed as to be contacted *only* through PayPal's counsel, PayPal refuses to accept service on them. *Id.* at 6 n.1.

On September 17, 2021, PayPal offered a "compromise," that it would not insist on "different [Hague Convention] procedures" for its European employees—only if IOENGINE would waive its right, pursuant to the parties' prior agreement, to nine 30(b)(1) depositions. Thus, PayPal is threatening to make the process of deposing its employees more difficult unless IOENGINE forfeits a number of other depositions to which it is entitled. PayPal cloaks this threat as an offer of "compromise," But PayPal's gamesmanship should not be rewarded. IOENGINE should be permitted nine total 30(b)(1) depositions, consistent with the parties' original agreement and also to account for Zettle discovery. Further, now that PayPal has identified the relevant individuals with pertinent knowledge of Zettle, PayPal should be required to facilitate those depositions, wherever the witnesses reside, and without resort to the Hague Convention.

**IV.   *Conclusion***

In sum, IOENGINE requests that PayPal be ordered to 1) produce documents and provide a 30(b)(6) witness relating to PayPal's acquisition and valuation of iZettle and the Zettle service, development of Zettle products and services, and financial history (including profitability metrics) for Zettle products and services, back to September 2018 and including for Zettle activities that may have taken place outside the U.S.; 2) provide a 30(b)(6) witness on the full scope of IOENGINE's 30(b)(6) topics 6, 16, and 18, along with fully responding to corresponding requests for production; and 3) produce nine 30(b)(1) witnesses in accordance with the parties' prior agreement, which is also justified in light of the recently added Zettle products and services.

DATED: September 21, 2021                                        Respectfully submitted,

*/s/ Eve H. Ormerod*
Eve H. Ormerod (#5369)

Enclosures

cc: Clerk of Court (*via CM/ECF*)
All Counsel of Record (*via email*)