**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IOENGINE, LLC, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | C.A. No. 18-452-WCB |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| PAYPAL HOLDINGS, INC., | § | **Original Version: December 21, 2021** |
| | § | **Public Version: December 28, 2021** |
| Defendant/Counterclaim Plaintiff. | § | |
| | § | |
| | § | |

## IOENGINE, LLC'S ANSWERING BRIEF IN OPPOSITION TO PAYPAL'S MOTION FOR SPOLIATION SANCTIONS

OF COUNSEL:
Noah M. Leibowitz
Gregory T. Chuebon
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
noah.leibowitz@dechert.com
greg.chuebon@dechert.com

Dated: December 21, 2021

SMITH, KATZENSTEIN & JENKINS LLP
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Counsel for IOENGINE, LLC*

## Table of Contents

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 1

    A.     IOENGINE Took Reasonable Steps to Preserve the MediKey ............................. 1

    B.     A Fallen Pine Tree Fell and Damaged Electrical Utility Equipment..................... 2

    C.     Unresolved Utility Issues Led to an Unforeseeable Fire on August 15, 2021................................................................................................................ 2

        1.     Rowayton FD Removed Items from Mr. McNulty's Workspace.............. 3

        2.     Eversource Responded, Assuring That There Were No Utility Issues............................................................................................................. 4

    D.     Unresolved Utility Issues Led to Another Fire on September 23, 2021 ............... 4

    E.     IOENGINE Discovered the MediKey Is Missing ................................................ 5

III.   LEGAL STANDARDS ........................................................................................ 6

IV.    ARGUMENT ...................................................................................................... 8

    A.     IOENGINE Took Reasonable Steps to Preserve the MediKey ............................. 8

    B.     Events Outside of IOENGINE's Control Explain Loss of the MediKey ........... 10

    C.     PayPal Cannot Prove Bad Faith, Intentional Destruction of Evidence............... 10

    D.     PayPal Cannot Prove Prejudice ....................................................................... 14

        1.     The operation of the MediKey and the medikey.exe software were fully documented and preserved by two expert inspections ................... 15

        2.     "Copying" the medikey.exe software is a red herring ............................. 17

    E.     PayPal's Reliance on the MediKey's Relevance is Speculative........................... 17

        1.     PayPal's inequitable conduct narrative is mistaken................................. 17

        2.     MediKey functionality is not relied on for diligence .............................. 18

    F.     PayPal is Not Entitled to An Adverse Inference................................................ 19

    G.     PayPal's Proposed 37(e)(1) Remedies Are Inappropriate ................................. 20

V.     CONCLUSION.................................................................................................. 20

## Table of Authorities

**Page(s)**

**Cases**

*Accurso v. Infra-Red Servs., Inc.*,
  13-cv-7509, 2016 WL 930686 (E.D. Pa. Mar. 11, 2016) ........................................................7

*Air Prod. & Chems., Inc. v. Wiesemann*,
  14-cv-1425-SLR, 2017 WL 758417 (D. Del. Feb. 27, 2017) .................................................7

*Alexsam, Inc. v. Gap, Inc.*,
  621 F. App'x 983 (Fed. Cir. 2015) .........................................................................................5

*Bistrian v. Levi*,
  448 F. Supp. 3d 454 (E.D. Pa. 2020) ....................................................................................14

*Bozic v. City of Washington, Pa.*,
  912 F. Supp. 2d 257 (W.D. Pa. 2012) ...............................................................................8, 10

*Brewer v. Quaker State Oil Ref. Corp.*,
  72 F.3d 326 (3d Cir. 1995).....................................................................................................12

*Bull v. United Parcel Serv., Inc.*,
  665 F.3d 68 (3d Cir. 2012)..............................................................................................6, 7, 8

*Charcalla v. Goodyear Tire & Rubber Co.*,
  13-cv-204, 2017 WL 2720278 (W.D. Pa. Jun. 23, 2017) ...........................................10, 11, 19

*Charles v. City of New York*,
  12-cv-6180 (SLT) (SMG), 2017 WL 530460 (E.D.N.Y. Feb. 7, 2017) .................................7

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ............................................................................................20

*CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*,
  17-cv-320 (MN), 2019 WL 1118099 (D. Del. Mar. 11, 2019)...........................................7, 16

*Citrix Sys., Inc. v. Workspot, Inc.*,
  18-cv-588-LPS, 2020 WL 5884970 (D. Del. Sept. 25, 2020) ...........................................14, 15

*Cognex Corp. v. Microscan Sys., Inc.*,
  990 F. Supp. 2d 408 (S.D.N.Y. 2013).....................................................................................9

*DVComm, LLC v. Hotwire Commc'ns, LLC*,
   14-cv-5543, 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016)........................................19

*Eisenband v. Pine Belt Auto., Inc.*,
   17-cv-8549 (FLW) (LHG), 2020 U.S. Dist. LEXIS 53369 (D.N.J. Mar. 27, 2020) ..............16

*First Sr. Fin. Grp. LLC v. Watchdog*,
   12-cv-1247, 2014 WL 1327584 (E.D. Pa. Apr. 3, 2014) ........................................11

*Folino v. Hines*,
   17-cv-1584, 2018 WL 5982448 (W.D. Pa. Nov. 14, 2018)........................................11

*Fuhs v. McLachlan Drilling Co.*,
   16-cv-376, 2018 WL 5312760 (W.D. Pa. Oct. 26, 2018)........................................20

*GN Netcom, Inc. v. Plantronics, Inc.*,
   12-cv-1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016)....................................11

*Goldrich v. City of Jersey City*,
   15-cv-885 (SDW)/(LDW), 2018 WL 4492931 (D.N.J. Jul. 25, 2018)...............................19

*Intell. Ventures I LLC v. Check Point Software Techs. Ltd.*,
   215 F. Supp. 3d 314 (D. Del. 2014) ....................................................13, 14

*IOENGINE LLC v. Imation Corp.*,
   14-cv-1572-GMS (D. Del.)..........................................................12, 17, 18

*Mahaffey v. Marriott Int'l, Inc.*,
   898 F. Supp. 2d 54 (D.D.C. 2012)........................................................14

*Manning v. Safelite Fulfillment, Inc.*,
   17-cv-2824 (RMB/MJS), 2021 WL 3557582 (D.N.J. Apr. 29, 2021)..............................9, 11

*Martineza v. Towne Ests. Condo. Owners Ass'n, Inc.*,
   12-cv-779-RGA, 2014 WL 2293689 (D. Del. May 27, 2014) ...................................16

*McAdams v. U.S.*,
   297 F. App'x 183 (3d Cir. 2008) .........................................................19

*Micron Tech., Inc. v. Rambus Inc.*,
   255 F.R.D. 135 (D. Del. 2009) ...........................................................11

*Micron Tech., Inc. v. Rambus Inc.*,
   645 F.3d 1311 (Fed. Cir. 2011)..........................................................11

*Miller v. Thompson-Walk*,
   15-cv-1605, 2019 WL 2150660 (W.D. Pa. May 17, 2019) ...............................11, 19

*O'Berry v. Turner*,
    15-cv-64-HL, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) ..................................................19

*Orologio of Short Hills Inc v. The Swatch Grp. (U.S.) Inc.*,
    653 F. App'x 134 (3d Cir. 2016) .........................................................................................7, 8

*Plouffe v. Cevallos*,
    777 F. App'x 594 (3d Cir. 2019) ..............................................................................................8

*Robinson v. Beckles*,
    10-cv-362-SRF, 2019 WL 2453776 (D. Del. June 12, 2019)..................................................19

*St. Clair Intell. Prop. Consultants, Inc. v. Toshiba Corp.*,
    09-cv-354-LPS, 2014 WL 4253259 (D. Del. Aug. 27, 2014) .........................................8, 9, 10

*State Farm Fire & Cas. Co. v. Cohen*,
    19-cv-1947, 2020 WL 5369626 (E.D. Pa. Sept. 08, 2020) ...................................................6, 7

*Taylor v. Nepolean*,
    20-cv-01450-PLD, 2021 WL 4171423 (W.D. Pa. Sept. 14, 2021).............................10, 11, 19

**Other Authorities**

Fed. R. Civ. P. 37............................................................................................7, 8, 10, 11, 12, 19, 20

Fed. R. Civ. P. 37, 2015 Committee Notes................................................................9, 10, 11, 12

## I.      INTRODUCTION

PayPal spins a spoliation motion out of inference, supposition and unproven allegations of inequitable conduct.  But IOENGINE took reasonable steps to preserve the MediKey, which went missing after an unforeseeable series of occurrences involving a fallen 100-year old tree that damaged electrical equipment and resulted in two small fires, rather than any intentional misconduct.  Moreover, PayPal can neither prove "bad faith" nor prejudice:  IOENGINE preserved and produced voluminous data regarding the MediKey and there is nothing useful that could be gleaned from a copy of medikey.exe on its own.  PayPal's Motion must be denied.

## II.     STATEMENT OF FACTS

### A.      IOENGINE Took Reasonable Steps to Preserve the MediKey

Mr. McNulty kept his prototypes in his private home workspace without issue for more than a decade, from the time they were developed until 2015.  *See* McNulty Decl. ¶¶ 2–3. During the course of two previous patent cases by IOENGINE, Mr. McNulty transferred the prototypes, including the now-unavailable MediKey device, to IOENGINE's counsel.  *See, e.g.*, Ex. 12, at 9.[1] In Summer 2018, IOENGINE's lead counsel changed law firms and offices.  *See* Ex. A; Chuebon Decl., ¶2.  When Mr. McNulty learned of counsel's impending move, he retrieved the prototypes so they would not be lost during counsel's move.  *See* Ex. B (IOENGINE 30(b)(6) Tr.), 121:17-122:11. At that time, he inventoried the prototypes, including the MediKey and two other devices that are now missing.  *See id.*, 122:19-125:15. He then placed the box from counsel containing the devices on a shelf in the same home workspace where the devices had previously been kept, which is generally locked and not accessed by others, and contains air filtration and humidity controls. *See id.*, 128:2-129:2; McNulty Decl. ¶ 2.  Mr. McNulty could not have foreseen the subsequent

---

[1] Exhibit *number* citation are to the Blumenfeld Decl., D.I. 368. Exhibit *letter* citations are to the Chuebon Decl. filed herewith.  "McNulty Decl." refers to the McNulty Declaration filed herewith.

events that led to two small fires in his home, after which he determined that three prototypes, including the MediKey, were missing.

### B.     A Fallen Pine Tree Fell and Damaged Electrical Utility Equipment

Early on August 7, 2018, a large pine tree on the McNultys' property fell, as seen in dramatic Ring Doorbell footage.  *See* Ex. C; *see also*, Ex. D (L. McNulty Tr.), 49:10-24; Ex. E (S. McNulty Tr.), 280:16-24 ("[T]his giant 100-year-old beautiful pine tree on our property fell at 3 o'clock in the morning.").  The falling tree damaged equipment on the utility pole and knocked down electrical lines.  *See id.*; *see also* Ex. D, 54:3-7; Ex. F (photographs).

Later that day, both Eversource (the electric utility) and the Norwalk Fire Department[2] responded, removing the fallen tree and checking the McNulty home, which was experiencing power fluctuations.  *See, e.g.*, Ex. G (downed tree and Eversource truck, 8:06 am); Ex. H (Norwalk Fire Dept., 10:53 am); *see also* Ex. I, 801 ("A large pine tree just fell on our property and knocked down the wires.  Power seems to be going off and on.").  After completing their work, Eversource and the Norwalk Fire Department assured the McNultys that the situation had been resolved. *See, e.g.*, Ex. D, 50:6-21, 51:8-13; Ex. E, 281:12-18.

### C.     Unresolved Utility Issues Led to an Unforeseeable Fire on August 15, 2021

On August 15th the McNultys began to experience a "dimming" of the lights in their home. Ex. E, 281:19-24. Two neighbors also reported problems on August 15th.  *See, e.g.*, Ex. J at 1 (Eversource claim by 16 Ensign Rd. referencing Aug. 15th "power surge on the street"), 3 ("The problem was … at several neighbors['] [houses] as well."); Ex. K (Carlson Ex. 7) (Rowayton FD records) ("Neighbor [at] 17 Ensign had surge also."); Ex. L (Carlson Tr.), 42:25-43:6.  Mrs. McNulty was in the shower when the electrical disturbance started a fire in the basement.  *See* Ex.

---

[2] PayPal failed to pursue discovery from the Norwalk Fire Dept., despite sending them a letter asking for records. Instead, PayPal pursued discovery only from the Rowayton Fire Dept.

D (L. McNulty Tr.), 57:4-12 (the "[l]ights started flashing and continued to flash rapidly, then went out with, like, a snapping noise.  There was a burning smell.")*.*  She smelled smoke and called the Rowayton Fire Department.  *See id.*, 57:20-23.

### 1.    Rowayton FD Removed Items from Mr. McNulty's Workspace

There is no question that there was a fire in the McNulty home on August 15, 2018, and that the Rowayton Fire Department ("Rowayton FD") responded.  *See, e.g.*, Ex. D (L. McNulty Tr.), 60:14-22; 61:2-9; 65:6-22; Ex. K (Rowayton FD records). Rowayton FD responded with two vehicles and three personnel.  *See* Ex. K ("Engine 2" and "Car 3"; "personnel responding[:] 3"); Ex. M (Rowayton FD records), G1 (two "Apparatus"; three "Personnel").

There is also no question that the Rowayton FD removed items from Mr. McNulty's workspace that day—Mr. Carlson, Rowayton FD Chief, admitted as much:  "[T]wo power strips that had melted due to a power surge from the utility on the street, so we disconnected the power strips and removed them."  Ex. L, 28:13-18; *see also* Ex. D, 61:12-21 ("I remember [the firefighter] wanted to take items with him that had burnt … I said, Yes.").  PayPal proffers that Mr. Carlson testified to removing only two power strips.  *See* Ex. L, 28:11-17.  But Mr. Carlson also testified that any removed items would have been documented, *see id.*, 35:3-13, and *no* documentation was completed—not even for the power strips he personally removed. *See id.*, 43:15-44:1, 49:23-50:6. Moreover, there were two other firefighters on scene, *see* Ex. K ("personnel responding[:] 3"); Ex. M, G1 (three personnel), but Mr. Carlson did not ask the third firefighter if he had removed anything.  *See* Ex. L, 50:22-51:2.[3]  Further, removal of items may have been inadvertent—a small USB device could easily have been inside a damaged box or knocked into a disposal bag without

---

[3] In fact, Mr. Carlson wasn't sure who the third firefighter was.  *See* Ex. L, 42:6-14.  On cross examination Mr. Carlson guessed the third firefighter may been "somebody that showed up at the firehouse" after the fire.  *See id.*  But that contradicts the handwritten incident report, which shows three personnel "responding" to 22 Ensign Road that day.  *Id.*, 25:21-25; Ex. K., 61:25-62:6.

the firemen realizing it. Thus, other items may well have been removed (intentionally or inadvertently) by the Rowayton FD that day.

## 2. Eversource Responded, Assuring That There Were No Utility Issues

Eversource also responded on August 15th, which is evidenced by correspondence between Mr. McNulty and his electrician. Ex. I, 806. Mr. McNulty's electrician assured him that his home wiring had no issues. *See id.*, 807. The electrician also recalled that he or one of his assistants may have moved boxes from the workspace in the area of the fire. *See* Ex. 30, at 12. His HVAC technician also responded. *See* Ex. I, at 4. Having been assured by Eversource and his electrician, Mr. McNulty expected no further issues.

## D. Unresolved Utility Issues Led to Another Fire on September 23, 2021

The McNultys again began to experience "dimming" of their lights on September 23, 2021, which was captured on video. *See* Ex. O; Ex. P. Again, the issues affected neighbors and were not confined to the McNulty home. *See* Ex. J (Eversource claim by 16 Ensign Rd. referencing "a power surge on the street" that "occurred again on 9/23/18 with damage to [appliances]").[4] The electrical disturbance of September 23rd led to a power surge and second fire, evidenced by photographs of additional burned surge protectors on September 23, 2021 (distinct from those removed by Rowayton FD on August 15th). *See* Ex. Q. On September 23rd Eversource finally located and addressed the root of the problems—a hot wire rubbing against a casing. Ex. E (S. McNulty Tr.), 283:16-284:5; *see also* Ex. R (picture of damaged utility line, 9/23/18 at 8:27pm).

---

[4] Eversource eventually accepted responsibility for these power disturbances. In response to a claim by one neighbor at 16 Ensign Road, after stating that Eversource "will pay damage claims only when there is clear evidence that there was negligence on our part," Eversource paid nearly $3,000 in damages. *See* Ex. J, 2, 4.

### E.     IOENGINE Discovered the MediKey Is Missing

On August 20, 2018 (five days *after* the first fire), PayPal served its First Set of Requests for Production ("First RFPs"), which were extremely broad, demanding "[a]ll documents and things" related to each of *89* separate requests. *See* Ex. S. IOENGINE timely responded, offering to produce documents in response to many requests, and to meet and confer on others. *See* Ex. T. On Requests 41 and 42, IOENGINE offered an inspection of IOENGINE's prototypes, including the MediKey, subject to an appropriate inspection protocol. *See id.*, 4-5, 49. IOENGINE then engaged with PayPal on its various Requests, of which Requests 41 and 42 were mentioned by PayPal only in passing and primarily with regard to *documents*. *See, e.g.*, Ex. 21, 1; Ex. 25, 4. PayPal did not follow up on an inspection protocol for a MediKey inspection until July 2019. Importantly, no inequitable conduct or invalidity allegations were pleaded at the time of PayPal's First RFPs. PayPal did not even answer the complaint until February 8, *2019*, *see* D.I. 52, which is the first time PayPal alleged inequitable conduct. *See id.* at 32-38. IOENGINE moved to dismiss PayPal's counterclaims, *see* D.I. 59, and that motion was not resolved until May 15, 2019. *See* D.I. 70. Similarly, PayPal did not serve invalidity contentions until April 5, 2019. *See* D.I. 63. *See, e.g.*, *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983, 991–92 (Fed. Cir. 2015) (only "[w]hen a defendant has established a prior invention" does "the burden of production shift[] to the patentee to come forward with evidence and argument to the contrary"). PayPal's attempt to dismiss this as a mere "technicality," Mot. at 6, misquotes the Court, which was urging the parties to begin "flick of a switch type discovery." Ex. 26, 94:3-19. As for the fact that PayPal had not yet pleaded invalidity or unenforceability at the time of its First RFPs, the Court recognized that "technicalities matter in the law." *Id.*, 94:4-5. And so until at least March, 2019, IOENGINE was focused on producing documents relevant to pleaded allegations.

IOENGINE made several productions before PayPal answered, producing over 9,000 pages of documents.  Mr. McNulty and IOENGINE worked to gather additional information requested by PayPal, and it was Mr. McNulty's efforts to gather his prototypes for inspection that led him to retrieve them from his workspace on March 6, 2019.  *See* Ex. B, at 130:15-131:10.  At that time, Mr. McNulty noticed that the box containing the devices was not the same. Rather than the clean, white box he had received from counsel, it was an older, worn box, like one of the "empty legal boxes stacked up in [his] basement."  Ex. B, 175:21-176:15, 167:23-168:3; Ex. E, 263:9-266:19. It was only then that, based on their distinctive physical appearance, Mr. McNulty noticed the MediKey and another device were missing. *See id.*, 271:19-272:9. Mr. McNulty immediately began searching for the missing devices. *See* Ex. 30, at 11-13; Ex. E, 267:25-268:5, 271:19-272:9. The prototypes were inventoried and it was discovered that a third device, which closely resembled several other devices, was also missing. *See id.* 268:6-269:8, 271:1-272:9. Mr. McNulty continued to search for the MediKey into May, including thoroughly searching his workspace and home, speaking with family members, the Chief of Rowayton FD, electricians, HVAC professionals, neighbors, and Eversource representatives, and visiting two recycling centers (at Rowayton FD's suggestion) but was unable to locate it.  *See* Ex. 30, at 11-13.

## III.    LEGAL STANDARDS

As the party alleging spoliation, PayPal bears the burden of proving "(1) the evidence was within the alleged spoliator's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable." *State Farm Fire & Cas. Co. v. Cohen*, 19-1947, 2020 WL 5369626, at *6 (E.D. Pa. Sept. 08, 2020) (citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68 (3d Cir. 2012)). As a threshold matter, Rule 37(e) does not govern this motion.  PayPal frames its Motion as relating to destruction of "ESI,"—the medikey.exe software—but PayPal's complaint is predicated on the

loss of the physical MediKey device, not ESI.  Rule 37(e) does not apply to loss of tangible, physical items like the MediKey. "Sanctions for spoliation are determined under two different rubrics depending on the type of evidence. ESI is governed by the recently amended Fed. R. Civ. P. 37(e). Sanctions for all other types of evidence continue to be governed by the court's inherent authority 'to control litigation and assure the fairness of proceedings before it.'" *Air Prod. & Chems., Inc. v. Wiesemann*, 14-1425-SLR, 2017 WL 758417, at *1 (D. Del. Feb. 27, 2017); *CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, 17-320 (MN), 2019 WL 1118099, at *2 n.3 (D. Del. Mar. 11, 2019) ("By its terms, Rule 37(e) applies only to electronically stored information. When other forms of information are at issue (*e.g.*, physical evidence, paper documents, etc.), the spoliation analysis follows the framework set forth in *Bull*."); *see Charles v. City of New York*, 12-6180 (SLT) (SMG), 2017 WL 530460, at *25-26 (E.D.N.Y. Feb. 7, 2017) (applying traditional analysis, not Rule 37(e) to missing cell phone containing video).

Under either rubric, however, PayPal must ultimately prove that IOENGINE acted with "intentionality and bad faith" to support adverse inference sanctions.  *State Farm*, 2020 WL 5369626, at *6 ("To satisfy the 'actual suppression or withholding' element, the movant must demonstrate that the alleged spoliation was intentional—not accidental, inadvertent, or properly explainable.") (citing *Bull*, 665 F.3d at 78-79 ("[A] finding of bad faith is pivotal to a spoliation determination."); *Accurso v. Infra-Red Servs., Inc.*, 2016 WL 930686, at *3 n.6 (E.D. Pa. Mar. 11, 2016) (amendment of Rule 37(e) "does not appear to have substantively altered the moving party's burden, in this Circuit, of showing that ESI was destroyed in 'bad faith' when requesting an adverse inference."); *Orologio of Short Hills Inc v. The Swatch Grp. (U.S.) Inc.*, 653 F. App'x 134, 144–45 (3d Cir. 2016) ("Spoliation of evidence requires 'bad faith,' not mere negligence."); *Plouffe v. Cevallos*, 777 F. App'x 594, 602 (3d Cir. 2019) ("[S]poliation is only an issue if the 'destruction

[of evidence] was intentional.'"); *St. Clair Intell. Prop. Consultants, Inc. v. Toshiba Corp.*, 09-354-LPS, 2014 WL 4253259, at *3–5 (D. Del. Aug. 27, 2014) (no spoliation where no proof that "destruction of the boxes of information was due to anything worse than 'inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living."); *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 268–70 (W.D. Pa. 2012) ("Almost all of the district court cases applying *Bull* of which this Court is aware have declined to find spoliation where the party's conduct was no worse than negligent, or where the evidence was lost in the normal course of daily business or other similar activity.").

## IV.   ARGUMENT

### A.   IOENGINE Took Reasonable Steps to Preserve the MediKey

The MediKey device is a tangible, physical item, not ESI.  Regardless, to meet its burden, PayPal must show that evidence was "lost because a party failed to take reasonable steps to preserve it."  FRCP 37(e).  PayPal has not done so.

Far from being "inexplicabl[e]" as PayPal contends, Mot. at 1, Mr. McNulty retrieved the prototypes because counsel was in the process of changing firms and offices. At that time, he accounted for the devices, including the MediKey.  *See* Ex. B, 122:19-125:15.  He then returned the devices to his private, home workspace, *see id.*, 128:2-129:2, which is locked, not routinely accessed by others, and is where the Medikey and other prototypes had been kept for more than a decade without incident. *See supra* § II.A. Mr. McNulty's preservation efforts were reasonable, particularly in light of his status as an independent inventor and IOENGINE's status as a one-person company.  *See, e.g., Bozic*, 912 F. Supp. 2d at 268–70 ("[D]eclin[ing] to find spoliation where the party's conduct was no worse than negligent, or where the evidence was lost in the normal course of daily business or other similar activity."); *St. Clair*, 2014 WL 4253259, at *3–5; Fed. R. Civ. P. 37, 2015 Committee Notes ("'[R]easonable steps' to preserve suffice; it does not

call for perfection. The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts").

PayPal repeatedly faults IOENGINE for not "backing up" the medikey.exe software.  But all of PayPal's cited cases involve ESI that is trivial to copy, with no risk of damage to a fragile, prototype device.  *See Manning v. Safelite Fulfillment, Inc.*, 17-2824 (RMB/MJS), 2021 WL 3557582, at *7 (D.N.J. Apr. 29, 2021) (addressing emails and Facebook messages); *Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 420 (S.D.N.Y. 2013) (copying a CD).  Backing up the medikey.exe software was not reasonable under the circumstances here, because, unlike downloading an email or Facebook message, plugging in the MediKey carries an inherent risk of damaging or destroying the device—a risk PayPal has acknowledged.[5] If IOENGINE had attempted a backup outside of PayPal's purview, and the MediKey had been damaged or destroyed, PayPal would have then accused IOENGINE of spoliation for attempting the backup. Instead, IOENGINE offered to make the MediKey and its other prototypes available for inspection under the supervision of representatives of both parties. Ex. T, 4-5. This is exactly the practice followed in prior litigations, *see, e.g.*, Ex 6, and none of the parties or experts in those cases— including PayPal's retained expert here, Dr. Madisetti (*see* Ex. U)—thought it necessary or reasonable to "back up" or copy the medikey.exe software. Instead, as discussed in more detail below, the parties preserved videos and screenshots of the MediKey and captured communications into and out of the device, which documents *all* of the functions of the MediKey and medikey.exe software.  *See, e.g.*, Exs. 4 and V-X (videos of tests); Ex. Y, 79-112, 120-202, 208-246; IOENGINE009245; -246; -404; -406; and -408  (217 MB of captured USB communications).

---

[5] *See, e.g.*, D.I. 321, at 2-3 (PayPal acknowledging that devices circa 2004 are "particularly fragile, and subject to irreparable physical and electrical damage.").

### B.  Events Outside of IOENGINE's Control Explain Loss of the MediKey

Events that IOENGINE could not possibly have predicted or controlled explain loss of the MediKey. The critical facts are evidenced by contemporaneous photographs and correspondence. On August 7, 2018, a large pine tree fell, severing power lines to the McNulty home and damaging utility equipment. *Supra* § II.B. Latent issues with the utility equipment caused a fire in Mr. McNulty's workspace on August 15, 2018. Firefighters, Eversource, electricians, and HVAC technicians were on site, and the Rowayton FD removed items from Mr. McNulty's workspace. *See supra* §§ II.C.1, II.E. Electrical issues caused a second fire on September 23, 2018, again affecting neighbors as well. Electricians and Eversource again accessed McNulty's workspace. One electrician recalled that he or his assistant may have moved boxes. *See supra* § II.C.2.

The situation here is analogous to those described in the Rule 37(e) 2015 Committee Notes as "inapplicable" to spoliation: "[I]nformation the party has preserved may be destroyed by events outside the party's control—the computer room may be flooded, a 'cloud' service may fail, a malign software attack may disrupt a storage system, and so on." Fed. R. Civ. P. 37, 2015 Committee Notes; *see also Bozic*, 912 F. Supp. 2d at 270; *St. Clair*, 2014 WL 4253259, at *3–5.

### C.  PayPal Cannot Prove Bad Faith, Intentional Destruction of Evidence

On the above record, PayPal cannot prove the "bad faith" culpable intent necessary to support spoliation. "[D]istrict courts within the Third Circuit have routinely distinguished between situations where 'the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth,' and those where 'the document or article in question has been lost or accidentally destroyed….'" *Taylor v. Nepolean*, 20-01450-PLD, 2021 WL 4171423, at *4 (W.D. Pa. Sept. 14, 2021) (quoting *Charcalla v. Goodyear Tire & Rubber Co.*, 13-204, 2017 WL 2720278, at *3 (W.D. Pa. Jun. 23, 2017)).

PayPal cannot present a shred of evidence that Mr. McNulty or IOENGINE destroyed the MediKey. That alone separates this case from all the cases PayPal cites, where there is no question that the party accused of spoliation *actually destroyed evidence*. *See, e.g.*, *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS, 2016 WL 3792833, at *7–8 (D. Del. July 12, 2016) ("instructing others to delete … email chains"); *Folino v. Hines*, 17-1584, 2018 WL 5982448, at *3–4 (W.D. Pa. Nov. 14, 2018) ("destruction of data was intentionally performed"); *First Sr. Fin. Grp. LLC v. Watchdog*, 12-1247, 2014 WL 1327584, at *8–*9 (E.D. Pa. Apr. 3, 2014) ("wiping clean" a computer); *Micron Tech., Inc. v. Rambus Inc.*, 255 F.R.D. 135, 150 (D. Del. 2009), *aff'd in part, vacated in part*, 645 F.3d 1311, 1317 (Fed. Cir. 2011) (destroying thousands of backup tapes and documents while "instruct[ing] employees to look for helpful documents to keep"); *Miller v. Thompson-Walk*, 15-1605, 2019 WL 2150660, at *5, *13 (W.D. Pa. May 17, 2019) (allowing emails to be deleted and computers disposed, and fabricating meeting minutes); *Manning*, 2021 WL 3557582, at *7 ("delet[ing] the emails and messages."). Instead, PayPal asks the Court to circumstantially infer not only bad faith, but intentional destruction of evidence, from a series of speculative suppositions, none of which support or even permit such an inference.

*First*, PayPal's contention that IOENGINE had a "motive" to destroy the MediKey assumes that the MediKey would have been unfavorable to IOENGINE. This assumption is both unsupported and impermissible. An inference that evidence would have been unfavorable is *not* permitted *unless* bad faith has been proven. *See* FRCP 37(e)(2) ("*only* upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may [the court]: (A) presume that the lost information was unfavorable to the party"); *see also* Fed. R. Civ. P. 37, 2015 Committee Notes ("Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may

11

tip the balance at trial in ways the lost information never would have."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").

PayPal's assumption flips the spoliation analysis on its head and is contrary to Rule 37(e) and the law of this Circuit. It is also contrary to the available evidence from the MediKey tests in the *Imation* case, which, when properly run, established that the MediKey functioned as described in the April 2010 Declaration. *See* Ex. Y ¶21 ("Dr. Madisetti accuses Mr. McNulty of misleading the U.S. Patent and Trademark Office about the capabilities of the MediKey Prototype . . . I find this conclusion by Dr. Madisetti to be baseless.").

As for "opportunity," PayPal accuses Mr. McNulty of "speculat[ing]" that a firefighter or Eversource representative may have taken the MediKey, without "evidence." Mot. at 14. But as discussed above, there is no question that firefighters, Eversource personnel, and electricians were in Mr. McNulty's workspace, that firefighters removed at least some items, and that an electrician recalled moving boxes. *See supra* § II.C. It is PayPal that speculates with absolutely *no* evidence that after having preserved the MediKey for years, including having it inspected and tested in the *Imation* case, Mr. McNulty "disposed of" the MediKey, simply because he could have.

*Second*, PayPal's assertion that the timing of the loss of the MediKey "is indicative of bad faith," Mot. at 14, is baseless. Unlike the cases PayPal cites, there is no evidence that Mr. McNulty took any affirmative action (or inaction) around the time of PayPal's RFPs. No bad faith can be inferred from an act of God causing a tree to fall on August 7th, or from a resultant fire on August 15th, simply because they are days before PayPal's RFPs were served on August 20th. Further,

PayPal did not even plead inequitable conduct or serve its invalidity contentions implicating conception/reduction to practice until many months later, in February and April 2019.

*Third*, PayPal alleges "selective" spoliation.  Mot. at 15.  But the MediKey was *not* the only device to go missing. [6]  More importantly, PayPal's selective spoliation theory assumes, again, that the MediKey would have been unfavorable to IOENGINE, which inference is contrary to the available evidence and only permitted once bad faith is established.

*Fourth*, PayPal's complaint of delay and a "cover-up" ignores both that it had not even put inequitable conduct or conception/reduction to practice at issue until February/March 2019, and that a search was ongoing.  *See supra* § II.E. Upon realizing that he could not locate the MediKey, Mr. McNulty searched his workspace and home, spoke with family members, the Chief of Rowayton FD, electricians, HVAC professionals, neighbors, and representatives of Eversource, and visited two recycling centers (at Rowayton FD's suggestion).  *See* Ex. 30, at 11-13.  By May 2019 Mr. McNulty believed that he had exhausted his search and the MediKey device was unlikely to be found.  *See* McNulty Decl. IOENGINE then began compiling all available data from prior inspections and promptly informed PayPal's counsel. PayPal's 'motion to compel the MediKey' is a figment; no such motion to compel the MediKey device exists on the docket (rather PayPal, through a discovery dispute, sought production of documents). Rather, Mr. McNulty's extensive efforts to locate the missing MediKey rebut any inference of bad faith.[7]  *See, e.g.*, *Intell. Ventures*

---

[6] PayPal is incredulous that three devices in an unburned box would have gone missing.  *See* Motion, 8-9.  But PayPal ignores that the box in which the devices were found in March 2019 was *not* the same box that the devices were in prior to the August 15, 2018 fire.  *See id.*

[7] PayPal makes much of its supposition that counsel 'knew' the MediKey was missing in February, although its loss was not discovered until March. Mot. at 8. But counsel's actual statement was "February…or around that time, and that's when we started trying to collect those devices back from our client," Ex. 31, 101:24-102:6, which was later identified more precisely as March 6th. There is nothing nefarious about referring to an approximate date that turns out to be a week early.

*I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314, 342–43 (D. Del. 2014) ("IV's conduct in attempting to locate the CD is inconsistent with a suggestion of bad faith misconduct and intentional destruction of evidence.").

*Fifth*, PayPal attempts to spin "bad faith," out of a mistake: Mr. McNulty admittedly confused the two fires in his home, identifying the August 15, 2018 fire as having taken place on September 23, 2018, and *vice versa*. *See* McNulty Decl., ¶¶ 7.a–f. But there is no doubt that three incidents occurred at the McNulty residence in August-September 2018, a downed tree and two fires, two of which resulted in firefighters responding. *See supra* §§ II.B–D. PayPal fails to recognize that there were *two* fire departments involved, and seeks to exploit a mistake about the order of two power surges, two resulting fires, both in the same location, both caused by electrical issues, both causing damage to surge protectors, both resulting in a response by Eversource, and both taking place within weeks of the tree falling on August 7th. Mr. McNulty's imperfect recollection of the precise dates of these events is not indicative of "bad faith." Further, the correct dates are well documented. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 496 (E.D. Pa. 2020) (declining to infer bad faith for an "incorrect statement").

*Last*, as discussed *supra* in Section II.A., IOENGINE took reasonable steps to preserve the MediKey. Subsequent events out of its control do not alter that. *See, e.g.*, *Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 61–62 (D.D.C. 2012) ("[A]lthough it is regrettable that important, relevant evidence may have been destroyed in the flood, there is no indication that this was anything other than an unfortunate accident and, as such, Marriott did not act with the requisite culpable state of mind to merit sanctions.").

### D.    PayPal Cannot Prove Prejudice

"[A] finding of prejudice requires the non-spoliating party to 'come forward with plausible, concrete suggestions as to what the lost evidence might have been' and a showing that

the loss of this evidence 'materially affect[ed] the substantial rights of the adverse party and is prejudicial to the presentation of the case.'" *Citrix Sys., Inc. v. Workspot, Inc.*, 18-588-LPS, 2020 WL 5884970, at *7 (D. Del. Sept. 25, 2020).  This PayPal has not done.

### 1. The operation of the MediKey and the medikey.exe software were fully documented and preserved by two expert inspections

PayPal admits that in 2016 the now-unavailable MediKey device was thoroughly inspected by expert witnesses for Imation Corp. and IOENGINE, including by Dr. Vijay Madisetti, who PayPal has retained as an expert in this case.  Indeed, Dr. Madisetti designed the procedure used to test the MediKey for the very same purpose that PayPal asserts it would want to test the MediKey here—to demonstrate whether it performs as described in Mr. McNulty's April 2010 declaration. *See* Ex. 14, 2-3.  That testing included plugging in the MediKey, running the medikey.exe software and clicking every available button and option, generating hours of videos over 200 photographs, including of every operation and button click, and hundreds of megabytes of test data documenting all communications between the MediKey and the connected computer, captured using a LineEye USB traffic analyzer (the test device selected by Dr. Madisetti, *see* Ex. 14 at 5, and which PayPal agrees is appropriate for these purposes, *see* D.I. 321, at 5).  Ex. Z, filed herewith, shows that every operation and button of the MediKey and medikey.exe were tested.  These extensive data were produced to PayPal more than two years ago.  *See* D.I. 368, Ex. 27.

PayPal asserts that IOENGINE has criticized Dr. Madisetti's testing as flawed, and therefore cannot rely on it. Mot. at 4-5. But PayPal ignores that the flaw in Dr. Madisetti's testing was not in its *design*, but in one aspect of its *execution*. Dr. Madisetti's assistant failed to follow the written inspection procedure precisely, which resulted in crucial communications between the devices being missed. *See* Ex. Y, ¶¶ 22–23.  But that error was corrected by Dr. Kevin Butler, who followed Dr. Madisetti's procedure, and also carried out additional tests to assess Dr. Madisetti's

15

hypotheses. Dr. Butler concluded that the MediKey functioned as described in the April 2010 Declaration. *See id.*, ¶¶ 21, 72–74.  PayPal has retained Dr. Madisetti in this case, and could have submitted a declaration in support of its Motion with a description of what tests he was unable to carry out previously, or what he would do differently in testing the MediKey today, if it were available. PayPal failed to do so. PayPal's Motion points to no specifics as to any tests that it would carry out, any change to Dr. Madisetti's procedure, or anything it would do differently now, from what was previously done by Drs. Madisetti and Butler, of which extensive videos, data captures and results are available. Any attempt to do so in Reply would be untimely and improper.

Just as in *Martineza v. Towne Ests. Condo. Owners Ass'n, Inc.*, the fact that PayPal's retained expert had an opportunity to examine the MediKey and document its functionality refutes any prejudice. 12-779-RGA, 2014 WL 2293689, *1–2 (D. Del. May 27, 2014) ("Plaintiff's experts had ample time to examine the railing and in fact did examine the railing.  Furthermore, the Plaintiff's experts took pictures of the railing, which may be used in court as a substitute for presenting the railing itself."). Dr. Madisetti examined the MediKey, developed the procedure to test it and selected the test equipment, in an attempt to demonstrate exactly what PayPal alleges it would use the MediKey for if it were still available.  PayPal has not shown beyond mere speculation why the data already produced are not a reasonable substitute for the MediKey.  *See Eisenband v. Pine Belt Auto., Inc.*, 17-8549 (FLW) (LHG), 2020 U.S. Dist. LEXIS 53369, *24 (D.N.J. Mar. 27, 2020) (*no* prejudice where defendant "produced a reasonable substitute in the form of printed screenshots" and "[p]laintiff's arguments amount[ed] to mere speculation"); *CIGNEX*, 2019 WL 1118099, *13-14 ("suggestion as to the potential contents of the lost email" was "speculation" and "insufficient evidence of prejudice").

### 2.    "Copying" the medikey.exe software is a red herring

PayPal claims that that the failure to "copy" the medikey.exe software, is prejudicial.  But PayPal ignores that copying medikey.exe would not have preserved the MediKey device's functionality, which depends on firmware running on the MediKey processor, and so would not evidence anything about the April 2010 Declaration or inequitable conduct. *See, e.g.*, D.I. 368, Ex. 5, ¶10 ("[firmware] program running on the [MediKey] processor), ¶11 (firmware "executed by the [MediKey] processor"), ¶¶11.a-11.c, ¶12.b (executing firmware "to issue an instruction"). PayPal does not even argue that extracting the MediKey's firmware would have been a reasonable thing to do. ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

### E.    PayPal's Reliance on the MediKey's Relevance is Speculative

### 1.    PayPal's inequitable conduct narrative is mistaken

Although PayPal bears the burden of proof on inequitable conduct, PayPal did not submit an expert report addressing inequitable conduct in this case.  *See* D.I. 254, 3 (Nov. 19, 2021 deadline for opening expert reports). Instead, relying entirely on unproven allegations by Imation in *IOENGINE LLC v. Imation Corp.*, 14-1572-GMS (D. Del.), PayPal asserts that Mr. McNulty's April 2010 Declaration regarding a MediKey device overcame a final rejection, leading to the issuance of U.S. Patent 7,861,006 (the '006 Patent"). This is wrong. The Declaration did not overcome any rejection or lead to the allowance of claims. To the contrary, after receiving the Declaration and even after Mr. McNulty demonstrated the MediKey, the Examiner continued rejecting the presented claims, and only allowed claims after two rounds of further substantive

amendments. Ex. CC, at 2–4. The Examiner's Amendment specifies the bases for allowance, but neither it nor the Allowance mention the Declaration or MediKey—not as a basis for allowance, nor to exclude any of the "prior art of record" (including post-December 2002 art). [8]

Imation's motion was premised on the fallacy that after receiving the Declaration, the Examiner no longer issued rejections over post-December 2002 art.  IOENGINE debunked this, completely gutting Imation's motion. Ex. CC at 4.[9]  PayPal insinuates that IOENGINE settled the *Imation* case to avoid a ruling on Imation's motion.  The opposite is true: Having received an adverse jury verdict awarding millions of dollars, and in the face of evidence showing that its inequitable conduct motion would fail, Imation settled with IOENGINE before its post-trial motions were decided. *See IOENGINE LLC v. Imation Corp.*, 14-01572, at D.I. 268 (dismissal).

### 2.    MediKey functionality is not relied on for diligence

PayPal contends that ██████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████. *See id.* at 14-16. While IOENGINE relies on Mr. McNulty's efforts to develop all of his prototypes, including the MediKeys, to show diligence, it does not rely on any specific MediKey with any particular functionality.  *See id*., 14-17 (████████████████████████████

---

[8] Moreover, the '006 Patent is not at issue here and was not at issue in the *Imation* case.  And neither PayPal nor Imation substantiated any claim of "infectious" unenforceability.

[9] It is not even clear that the MediKey Imation relied on for inequitable conduct and that PayPal accuses IOENGINE of spoliating was the subject of the April 2010 Declaration: In April 2010 Mr. McNulty had two MediKeys, *see* Ex. B, 80:8-10, one of which was provided to U.S. National Nuclear Security Agency ("NNSA") and Ukrainian experts to attempt to extract the firmware for use in an NNSA project.  Ex. B, 73:2-12; *see also id.*, 72:13-74:17, 77:15-78:12; *See* Ex. AA (IOENGINE013924) (NNSA press release).

███████████████ ). In addition, IOENGINE's diligence is supported by efforts to develop approximately 60-80 other—non-MediKey—prototypes (many of which were imaged by PayPal in discovery). *See id.* at 14-18. The collective efforts to create these prototypes, corroborated by contemporaneous documents, show Mr. McNulty's diligence. Whatever PayPal could have learned about the functionality of the particular MediKey that is the subject of its Motion—beyond what is shown in the extensive record of its prior testing—is irrelevant to diligence, particularly since IOENGINE does not rely on the MediKey as an actual reduction to practice.

## F. PayPal is Not Entitled to An Adverse Inference

PayPal requests sanctions under Rule 37(e)(2) (adverse inference, adverse instruction), which are severe sanctions "only" available on proof of the specific "intent to deprive" set out in the Rule. *McAdams v. U.S.*, 297 F. App'x 183, 187 (3d Cir. 2008) ("An adverse negative inference is an extreme remedy."); *Robinson v. Beckles*, 10-362-SRF, 2019 WL 2453776, at *2 (D. Del. June 12, 2019) (same). As discussed above, PayPal has not proven that IOENGINE intentionally destroyed evidence or acted with bad faith, much less with the specific intent to deprive PayPal of the MediKey. *See supra* § IV.C. The cases that PayPal relies on are inapposite.[10] No case supports adverse inference sanctions where, as here, evidence is lost due to inadvertence or accident. *Taylor*, 2021 WL 4171423, at *4; *Charcalla*, 2017 WL 2720278, at *3.

---

[10] *See Miller*, 2019 WL 2150660, at *12–13 (intent to deprive where defendant allowed destruction of emails and computers and "fabricated and back-dated meeting minutes and attempted to pass them off as authentic"); *DVComm, LLC v. Hotwire Commc'ns, LLC*, No. 14- 5543, 2016 WL 6246824, at *4-5, *7 (E.D. Pa. Feb. 3, 2016); (intent to deprive where plaintiff "'double deleted' and permanently destroyed" emails); *Goldrich v. City of Jersey City*, No. 15-885 (SDW)/(LDW), 2018 WL 4492931, at *9 (D.N.J. Jul. 25, 2018) (no intent to deprive, even though plaintiff defied Court order and misrepresented produced laptop); *O'Berry v. Turner*, 15-64-HL, 2016 WL 1700403, at *2–3 (M.D. Ga. Apr. 27, 2016) (sophisticated party (Archer Daniels Midland) with no document retention policy, printed a single paper copy of ESI, allowed ESI to be deleted, allowed unfettered access to the copy, and did not contact the custodian for 2.5 years).

### G. PayPal's Proposed 37(e)(1) Remedies Are Inappropriate

Assuming that Rule 37(e)(1) applies and PayPal could prove prejudice, which it has not, the Court "may order measures *no greater than necessary* to cure the prejudice." FRCP 37(e)(1). PayPal's request for a blanket order precluding any mention of the MediKey goes far beyond any possible prejudice, as even the cases PayPal relies on show. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 69 (S.D.N.Y. 2020) (denying request for "overly harsh" preclusion of "testimony and other evidence wholly unaffected by the spoliation"); *see also*, *Fuhs v. McLachlan Drilling Co.*, No. 16-376, 2018 WL 5312760 *14 (W.D. Pa. Oct. 26, 2018) (denying Rule 37(e)(1) sanctions). PayPal acts as if no evidence about the MediKey exists. In reality, IOENGINE produced all of the data from MediKey testing designed by Dr. Madisetti. And PayPal has not explained what additional or different testing it would do. IOENGINE is not relying on the MediKey as an actual reduction to practice. But there is no reason to preclude *all* testimony about the fact of its development and information apparent from Drs. Madisetti's and Butler's testing.

PayPal requests its fees and costs to remedy the prejudice of "pursuing discovery" of the MediKey. Mot. at 20. But PayPal has not demonstrated any such pursuit, nor how such relief would cure any prejudice. Monetary sanctions may be appropriate in a case where a party incurs costs, *e.g.*, in obtaining discovery from another source. But here, IOENGINE proactively produced all of the data from the prior MediKey inspections at no cost to PayPal, saving PayPal the cost of pursuing that discovery. The only appropriate remedy here would be to instruct IOENGINE—had it not already done so—to produce the videos, images, data, and reports documenting the prior testing of the MediKey, and to allow the parties to use those materials in this case. IOENGINE already proactively produced that evidence years ago avoiding any possible prejudice to PayPal.

## V. CONCLUSION

IOENGINE respectfully requests that PayPal's Motion for Spoliation Sanctions be denied.

Dated: December 21, 2021

OF COUNSEL:

Noah M. Leibowitz
Gregory T. Chuebon
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
noah.leibowitz@dechert.com
greg.chuebon@dechert.com

SMITH, KATZENSTEIN & JENKINS, LLP

*/s/ Eve H. Ormerod*
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Counsel for IOENGINE, LLC*

21