IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IOENGINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-452 (WCB) |
| | ) | |
| PAYPAL HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PAYPAL'S STATUS REPORT AND CASE MANAGEMENT PROPOSAL**

OF COUNSEL:

Jared Bobrow
Travis Jensen
Robert L. Uriarte
Jacob M. Heath
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
(650) 614-7400

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Tyler Miller
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

June 6, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
clark@morrisnichols.com

*Attorneys for Defendant*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     CASE BACKGROUND ...................................................................................... 3

III.    THE COURT SHOULD NOT ALLOW IOENGINE TO ASSERT NEW CLAIMS ............................................................................................................. 7

IV.     WORK THAT REMAINS TO BE DONE ........................................................ 8

V.      VALIDITY STATUS AND ISSUES ............................................................... 11

VI.     INFRINGEMENT STATUS AND ISSUES .................................................... 15

        A.      Current Status .................................................................................... 16

        B.      Preclusion and Related Issues ........................................................... 16

VII.    DAMAGES STATUS AND ISSUES ............................................................... 18

VIII.   PAYPAL'S CASE MANAGEMENT PROPOSAL ....................................... 19

IX.     CONCLUSION ................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    637 F. Supp. 3d 141 (D. Del. 2022)..................................................................18

*Atlas Glob. Techs., LLC v. Oneplus Tech. (Shenzhen) Co.*,
    661 F. Supp. 3d 643 (W.D. Tex. 2023)..............................................................16

*Biogen Int'l GmbH v. Amneal Pharms. LLC*,
    487 F. Supp. 3d 254 (D. Del. 2020)..................................................................14

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014)........................................................................18

*Chrimar Sys., Inc. v. Foundry Networks, Inc.*,
    2011 WL 13161438 (E.D. Mich. May 2, 2011)..............................................13, 14

*Chrimar Sys., Inc. v. Foundry Networks, Inc.*,
    2012 WL 3133897 (E.D. Mich. Aug. 1, 2012),
    *aff'd*, 501 F. App'x 977 (Fed. Cir. 2013)......................................................13, 14

*Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*,
    No. 06-438 GMS, 2007 WL 9811205 (D. Del. Dec. 6, 2007)................................8

*Foster v. Hallco Mfg. Co.*,
    947 F.2d 469 (Fed. Cir. 1991)..........................................................................17

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)........................................................................14

*Ingenico Inc. v. IOENGINE, LLC*,
    Case No. 18-826-WCB (D. Del., June 1, 2018) ....................................................4

*Ingenico Inc. v. IOENGINE, LLC*,
    No. 2023-1367, 2025 WL 1318188 (Fed. Cir. May 7, 2025).........................*passim*

*IOENGINE, LLC v. Ingenico Inc.*,
    100 F.4th 1395 (Fed. Cir. 2024) .......................................................................4

*Kessler v. Eldred*,
    206 U.S. 285 (1907)..............................................................................3, 17, 18

*LG Elecs., Inc. v. Conversant Wireless Licensing S.A.R.L.*,
    759 F. App'x 917 (Fed. Cir. 2019) ...............................................................14, 15

*N.J. Inst. of Tech. v. Medjet, Inc.*,
     47 F. App'x 921 (Fed. Cir. 2002) ........................................................18

*Nystrom v. Trex Co., Inc.*,
     580 F.3d 1281 (Fed. Cir. 2009)...........................................................17

*Ohio Willow Wood Co. v. ALPS S., LLC*,
     No. 2:04-CV-1223, 2012 WL 3283437 (S.D. Ohio Aug. 10, 2012),
     *aff'd in relevant part*, 735 F.3d 1333 (Fed. Cir. 2013) ...........................14

*Omega Pats., LLC v. CalAmp Corp.*,
     13 F.4th 1361 (Fed. Cir. 2021) ...........................................................19

*PACT XPP Schweiz AG v. Intel Corp.*,
     No. 1:19-cv-01006-JDW..........................................................................20

*In re PersonalWeb Techs. LLC*,
     961 F.3d 1365 (Fed. Cir. 2020)...........................................................17

*Prolitec Inc. v. ScentAir Techs., LLC*,
     No. CV 20-984-WCB, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ......................19

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
     778 F.3d 1311 (Fed. Cir. 2015)................................................2, 12, 13

*SpeedTrack, Inc. v. Office Depot, Inc.*,
     791 F.3d 1317 (Fed. Cir. 2015)...........................................................18

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
     617 F.3d 1296 (Fed. Cir. 2010)...........................................................17

*Young v. Pleasant Valley School Dist.*,
     601 F. App'x 132 (3d Cir. 2015) .........................................................20

**Statutes**

35 U.S.C. §315(e)(2).................................................................................10

Pursuant to the Court's oral order at the status conference on May 16, 2025, PayPal respectfully submits this status report and case management proposal.

## I.    INTRODUCTION

After seven years of litigation, including multiple IPRs and a jury trial against PayPal's primary supplier, IOENGINE's case hangs by a thread.  Only two asserted claims remain from the 96 claims originally asserted against PayPal.  D.I., 46, 1.  Both are dependent claims—whose validity was not decided because the *Ingenico* jury found them non-infringed—that add nothing more than the routine step that a "communication" sent to a "network" "facilitates synchronizing" portable device content with a network node (*e.g.*, a network server).  '969 patent, cl. 10; *see also* '703 patent, cl. 114 (similar).  With its case diminished through IPR proceedings and trial, IOENGINE now seeks to expand the litigation to assert '969 patent claim 4 (a dependent claim directed to sending an "encrypted communication[]") and/or '703 patent claims 61-62, 110-111, and '969 patent claim 7 (all dependent claims directed to "download[ing] program code" from the network node) (collectively the "New Claims").[1]  Even putting aside IOENGINE's representations (made in asking the Court to lift the stay) that it would not assert more claims, none of the New Claims was the subject of expert discovery.  Allowing them into the case now would require reopening fact discovery (*e.g.*, for prior art purposes), supplementing infringement and invalidity reports, expert depositions, etc.  As a matter of fairness, sound case management, and to avoid prejudice to PayPal, the Court should deny IOENGINE's request.

The Federal Circuit recently affirmed the *Ingenico* jury verdict that the DiskOnKey prior art system (with its "Firmware Upgrade" software) invalidated the underlying base claims

---

[1] The parties met and conferred on May 30, 2025, during which IOENGINE was non-committal about which claims it intended to seek leave to add.  Accordingly, PayPal addresses them all.

(including for the New Claims IOENGINE seeks to add).[2]  *Ingenico Inc. v. IOENGINE, LLC*, No. 2023-1367, 2025 WL 1318188, at *8 (Fed. Cir. May 7, 2025).  Given that "the differences between the unadjudicated [] and adjudicated patent claims do not materially alter the question of invalidity," collateral estoppel applies and the case should be over.  *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319-20 (Fed. Cir. 2015); *id.*, ("The invalidity of the asserted claims … is established by issue preclusion").

At a minimum, the Federal Circuit affirmance estops IOENGINE from disputing that DiskOnKey satisfies all elements of the underlying base claims.  Thus, all PayPal needs to establish for summary judgment of invalidity for the remaining claims is that no genuine dispute exists regarding whether the DiskOnKey facilitates "synchronization" (for '969 patent claim 10 and '703 patent claim 114), "encryption" (for '969 patent claim 4), or "download[ing] program code" (for the remaining New Claims).  That is easily accomplished.  The whole purpose of the DiskOnKey Firmware Upgrade software was to update (*i.e.*, synchronize) the DiskOnKey firmware by downloading the current version from the network server.  The Firmware Upgrade user manual (discussed at length at the *Ingenico* trial) states: "The application connects to a remote server and checks if a newer version exists for the current DiskOnKey" and "[gets the] new version." *Ingenico* case, DX-331, 2; DX-336, 4.  Prevailing on this straightforward issue would be case dispositive, eliminating the need for updated fact discovery, supplemental damages reports and expert depositions, *Daubert* motions, an IPR privity bench trial, a jury trial, and an inequitable conduct bench trial, among other things.

Relatedly, the *Ingenico* jury found no direct infringement of '969 patent claim 10 (and no

---

[2] On June 2, 2025, the Federal Circuit granted IOENGINE's 30-day extension request (until July 7, 2025) to seek rehearing *en banc*.

indirect infringement of '969 claim 10 and '703 claim 114) and IOENGINE did not appeal those findings, giving rise to collateral estoppel, res judicata, and the *Kessler* Doctrine for noninfringement regarding the same (or substantially the same) card readers that Ingenico supplies to PayPal. *Ingenico* case, D.I., 500. Given that IOENGINE's infringement theories for Ingenico readers are substantially the same as for readers supplied by Miura and Datecs (for Zettle readers), preclusion applies to those products as well. *Kessler v. Eldred*, 206 U.S. 285 (1907). Even if not case dispositive, noninfringement preclusion would significantly narrow the accused products and reduce any potential damages.

In the interest of fairness, judicial efficiency, and sound case management, the Court should enter a case schedule that allows for early summary judgment briefing on preclusion related issues, which should be case dispositive (or, at a minimum, substantially narrow the case before undertaking further expert discovery, *e.g.*, deposing IOENGINE's experts on their supplemental damages reports, preparing rebuttal reports, and filing *Daubert* motions). PayPal is prepared to file its summary judgment motion within one week of authorization. Notably, PayPal could not have brought its proposed summary judgment motion (on either invalidity or noninfringement) prior to the *Ingenico* verdict (and subsequent appellate affirmance), because the judgment of invalidity and noninfringement is what gives rise to the preclusion.

## II.    CASE BACKGROUND

This case began in March of 2018 when IOENGINE asserted three related patents[3] against PayPal's mobile point of sale offering called PayPal Here. D.I., 1. The service consisted primarily of a free downloadable mobile application that worked with various mobile card readers (primarily supplied by Ingenico), which allowed small merchants to accept card payments. In June of 2018,

---

[3] U.S. Pat. Nos. 8,539,047 ('047 patent); 9,059,969 ('969 patent); and 9,774,703 ('703 patent).

PayPal's primary supplier (Ingenico) filed a declaratory judgment action against IOENGINE for the same three patents asserted in the PayPal case. *Ingenico Inc. v. IOENGINE, LLC*, Case No. 18-826-WCB, D.I., 1 (D. Del., June 1, 2018). The Court consolidated the cases for pretrial purposes. D.I., 45.

Ingenico and PayPal separately prepared and filed IPR petitions challenging all three asserted patents. The PTAB instituted Ingenico's IPRs, which were filed before PayPal's. The district court stayed both cases in August of 2019 pending completion of the IPRs. D.I. 116. The PTAB issued IPR final written decisions in the fall of 2020. The PTAB found all challenged claims of the '047 patent unpatentable. IPR2019-00416, Paper 60. The PTAB also found all independent claims (and most dependent claims) asserted by IOENGINE in the '969 and '703 patents unpatentable. IPR2019-00879, Paper 69 ('969 patent); IPR2019-00929, Paper 053 ('703 patent). Only three dependent claims ('969 claim 3 and '703 claims 56 and 105) asserted by IOENGINE against PayPal in district court survived the IPRs.[4] D.I. 132, 3.

Notwithstanding its PTAB losses, IOENGINE moved to lift the district court stay rather than wait for its IPR appeal to play out.[5] D.I. 129. IOENGINE dropped the '047 patent and litigation resumed in October 2020. D.I. 132. Over PayPal's objection, the Court allowed IOENGINE to assert five additional claims, for a total of eight (*i.e.*, claims 3 and 10 of the '969 patent and claims 56, 90, 101, 105, 114, and 124 of the '703 patent). 2020/11/20 Hearing Tr., 41:17-20. All eight claims were dependent claims that added only a step of "device verification"

---

[4] The PTO issued IPR Certificates cancelling: '969 claims 1, 2, 5, 6, 8, 13-16, 19-21, 24, 25 and 27-29; and '703 claims 55, 57-60, 63, 67-72, 74, 77, 78, 81-87, 89, 92-98, 100, 103, 104, 106-09, 112, 116-21, 123 and 126-29. Ex. 3 (for the '969 patent) and Ex. 4 (for the '703 patent).

[5] The Federal Circuit ultimately affirmed the PTAB's unpatentability findings, except as to dependent claims 4 and 7 in the '969 patent and dependent claims 61-62 and 110-11 in the '703 patent. *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1400 (Fed. Cir. 2024).

or "synchronizing content" to the otherwise invalid base claims.  D.I. 132, 3.

PayPal launched Zettle in the U.S. in the summer of 2021 and began to sunset PayPal Here. Both parties agreed to add Zettle to the existing *PayPal* case, and a revised case schedule was entered.  D.I. 251.  Litigation proceeded in both the *Ingenico* and *PayPal* cases through fact and expert discovery, summary judgment and *Daubert* motions, and pre-trial proceedings.  The impacts of the Court's summary judgment rulings (D.I. 511) on the remaining proceedings are discussed *infra* §§V, VI, VII.  Notable here, the Court granted PayPal's *Daubert* motion to exclude substantially all opinions of Dr. Stec (IOENGINE's damages expert).  D.I. 511, 47 ("[Dr. Stec's] testimony regarding the iPIN license lacks the reliability required of expert evidence and will be excluded."), 51 ("I will exclude Dr. Stec's testimony to the extent that it relies on the *IMC* and *Imation* jury verdicts."), 55 ("Dr. Stec's testimony is therefore excluded to the extent that it relies on settlement agreements reached after verdicts in the *IMC* and *Imation* cases.").  The Court recognized that the order "le[ft] IOENGINE with essentially no damages case to present at trial." D.I. 528, 2.

In the *PayPal* case, the Court ultimately allowed IOENGINE to submit a 10-page "addendum" damages report, and a supporting technical expert report (D.I. 528, 6), but cautioned that "[i]f IOENGINE's addendum opinions are challenged in a *Daubert* motion and subsequently excluded, IOENGINE will not be granted another opportunity to supplement its damages opinions" (*id.*, 9).  IOENGINE's new expert reports (and new supporting documents) amounted to a wholesale change of IOENGINE's damages theory.  D.I., 542.

The Court recognized that the current trial schedule was "not [] tenable" in view IOENGINE's new expert opinions and cancelled the *PayPal* trial.  D.I. 528, 8-9.  In doing so, the Court recognized that "a verdict of invalidity in the *Ingenico* case could obviate the need for a trial

in the PayPal case as well." *Id*., 8.  When the Court subsequently stayed the *PayPal* case (D.I. 552 and D.I. 556), PayPal had not deposed IOENGINE's experts on their new opinions or submitted rebuttal expert reports.  That work remains to be done.

Ingenico, as the main supplier of accused products in the *PayPal* case, was scheduled for trial first.  D.I. 528, 9.  After excluding IOENGINE's damages opinions, the Court bifurcated the *Ingenico* trial and held a liability-only jury trial in July of 2022.  *Id*., 9.  The parties tried validity (based on the DiskOnKey prior art system) and infringement (on numerous Ingenico products, including the models supplied to PayPal) of the same eight claims asserted in the *PayPal* case.  The trial concluded with a jury verdict of no liability, through a combination of invalidity and noninfringement findings.  *Ingenico* case, D.I. 500.  The jury found '969 patent claim 3 and '703 patent claims 56, 90, 101, 105, and 124 invalid.  *Id*., 8.  The jury did not reach validity for '969 patent claim 10 or '703 patent claim 114 (the "synchronization" claims) only because the jury found those claims not infringed.  *Id*., 3-8.  The jury found that Ingenico did not directly or indirectly infringe '969 claim 10, or indirectly infringe '703 claim 114.  *Id*., 3-7.  IOENGINE's indirect infringement theory at trial included presentation that PayPal (and its customers) were the underlying direct infringers.  *Ingenico* Trial Tr., 114:4-17 ("And Ingenico infringes by intentionally supplying its customers [*e.g.*, PayPal] with these mobile card readers and instructing them and merchants how to use the readers in an infringing way").

Following the *Ingenico* verdict, the Court stayed the *PayPal* case pending completion of post-trial motions and IOENGINE's appeal to the Federal Circuit.  D.I. 552 and 556.  The Court denied IOENGINE's post-trial motions and entered judgment.  *Ingenico* case, D.I. 531.  The Federal Circuit subsequently affirmed.  *Ingenico*, 2025 WL 1318188, at *8.  The '969 and '703 patents both expired on March 23, 2024.

## III.    THE COURT SHOULD NOT ALLOW IOENGINE TO ASSERT NEW CLAIMS

The asserted claims in this case have been a revolving door.  After starting with nearly 100 claims (D.I. 46, 1), the case was whittled down to three claims following the IPRs (D.I. 132, 3). When IOENGINE sought to lift the IPR stay, PayPal expressed concern that IOENGINE may attempt to later assert claims if the Federal Circuit reversed.  D.I. 130, 3.  In response, IOENGINE unequivocally stated that "if the stays are lifted, IOENGINE proposes to proceed in these cases only with claims found not-unpatentable in the Final Written Decisions, so there is no possibility of this outcome." D.I., 131, 1.  On this basis, the Court lifted the IPR stay.  D.I., 132, 7 ("[PayPal argues] that if IOENGINE appeals from the portions of the PTAB's decisions that went against IOENGINE and is successful on appeal, IOENGINE 'may seek to re-litigate previously invalidated claims.' … IOENGINE, however, has taken that issue off the table, as it has represented it will proceed in these cases on only the claims found unpatentable in the PTAB's final written decisions."); *see also id.*, 4 ("IOENGINE states that it is prepared to proceed in these consolidated cases on only the three asserted claims that were not held unpatentable by the PTAB, so 'there is no possibility of this outcome.'").

Notwithstanding its representations, IOENGINE then sought to add five claims it had previously *dropped* from the case.  D.I. 134, 2; D.I. 135, 1.  At the hearing, IOENGINE repeatedly stated that if the Court allowed IOENGINE to add the five claims, that would be the end of things. *E.g.*, 2020/11/20 Hearing Tr., 25:1-3, 27:11-15, 32:2-7 (MR. LEIBOWITZ: "[I]n this case, we said we would not proceed on any claims that the Patent Office found unpatentable to, of course, you know, not have an issue where if the Federal Circuit, you know, were to reverse in the midst of this case, we would then be seeking to add those claims to this case.  We're not.").  And on that basis the Court allowed the new claims into the case, bringing the total to eight asserted claims. *Id.*, 41:17-20 ("THE COURT: … And you have represented, Mr. Leibowitz, that this is it, that you

7

don't intend to come back with six more tomorrow or the day after.  And so we will proceed with the eight claims.").

Now that six of IOENGINE's eight asserted claims have been invalidated, IOENGINE seeks leave to add as many as six New Claims.  The Court should reject this late amendment. IOENGINE had a fair shake and should be held to its representations that resulted in the IPR stay being lifted.  While the Court subsequently took IOENGINE's blanket representation at the hearing "off the table" and said that res judicata was not "necessary to decide at this point," the Court nevertheless "view[ed] it as important to my decision" to lift the stay.  *Id*., 41:2-12.

Even if res judicata did not apply, the Court has discretion under normal case management principles to deny leave to assert more claims.  *E.g., Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*, No. 06-438 GMS, 2007 WL 9811205, at *2 (D. Del. Dec. 6, 2007) ("Because Elan asserted the New Claims for the first time after the close of fact discovery, Abraxis has not had the opportunity to obtain meaningful fact discovery on those claims.  In addition, Abraxis' experts did not have the opportunity to address the New Claims in their opening expert reports.  Accordingly, for the reasons stated herein, it is in the interest of fairness to preclude Elan from asserting the New Claims in this litigation.").  Allowing IOENGINE to assert any of the New Claims would be highly prejudicial to PayPal, as PayPal would be forced to conduct fact discovery and expert discovery anew at significant expense.

## IV.    WORK THAT REMAINS TO BE DONE

The work to be done depends largely on whether the Court allows IOENGINE to assert any New Claims, which would require additional fact discovery (*e.g.*, to allow PayPal to locate and put forward additional prior art directed to the New Claims) and new expert reports (and related depositions and *Daubert* motions) because the experts did not opine on the New Claims. If IOENGINE was serious about moving this case to trial, it would not be attempting to add more

claims. Whether any New Claims are added to the case or not, much work remains to be done. What follows is a summary of what needs doing regardless of what claims are asserted.

*Summary Judgment re Preclusion Issues*. The most urgent—and judicially efficient—task to be done is adjudicating (via summary judgment) the various preclusion issues (*viz.*, invalidity and noninfringement) resulting from the *Ingenico* jury verdict and Federal Circuit affirmance. PayPal submits that resolving these issues should be case dispositive (regardless of whether New Claims are added or not), or at least should substantially narrow the case by eliminating various accused products, infringement theories, and damages theories from the case. *See* §VIII (PayPal's case management proposal).

*Fact Discovery*. Notwithstanding that both parties may desire fact discovery on certain topics, re-opening fact discovery would be like opening Pandora's box. If the Court wishes to try this case on the timeline suggested at the May 16, 2025 status conference, the prudent approach is to maintain the asserted claims and fact record as-is and proceed with the remaining expert discovery (provided PayPal may produce evidence rebutting IOENGINE's new damages theories). IOENGINE requested updated financial information. PayPal proposes doing so within 30-days after the Court decides what products and claims (if any) remain.

*Expert Discovery*. The Court allowed IOENGINE to revamp its damages case after the Court's *Daubert* ruling, which "le[ft] IOENGINE with essentially no damages case." D.I. 528, 2. IOENGINE served its new damages report (and accompanying technical report) on July 1, 2022. D.I., 542. These reports presented entirely new damages theories and were accompanied by document productions and expert reports from the *Imation* and *IMC* cases (which IOENGINE had previously refused to produce). 2019/06/05 Hearing Tr., 63:5-22; 44:1-10. PayPal will need to depose IOENGINE's experts on their new reports and prepare rebuttal reports.

***Daubert Motions***.  PayPal successfully excluded Dr. Stec's damages opinions under *Daubert*.  D.I. 511 at 47, 51, 55.  The Court recognized that PayPal should be allowed to "file a *Daubert* motion challenging the addendum opinions."  D.I. 528, 6-7.  Accordingly, the case schedule should afford PayPal this opportunity.

***Pre-trial***.  Prior to the stay, the parties submitted a joint proposed pre-trial order, witness lists, exhibit lists, jury instructions, motions *in limine*, etc.  D.I. 491; D.I. 513.  Much of that work remains valid and neither party should be allowed a "do over."  However, several post-stay legal and practical developments affect the parties' submissions.  For example, effects flowing from the *Ingenico* trial (*e.g.*, preclusion regarding DiskOnKey) and the IPR affirmance (*e.g.*, IPR Certificates cancelling claims) require updated jury instructions.  And because most PayPal fact witness are no longer with the company, PayPal needs to update its trial witness lineup and deposition designations.  The Court also ruled on various issues (*e.g.*, Western Digital business record authentication, D.I. 524) that should be reflected in revised pre-trial papers.  With the asserted patents having expired, injunctive relief should be removed.  PayPal proposes that the parties update their pre-trial papers as necessitated by, and consistent with, intervening developments, but not otherwise change their pre-trial submissions.

***IPR Real-Party-in-Interest and Privity vis-à-vis IPR Estoppel***.  The Court denied IOENGINE's motion for summary judgment that PayPal was a real-party-in-interest or privy of Ingenico vis-à-vis the Ingenico IPR proceedings.  D.I., 511, 67.  The Court stated that it would "decide whether the IPR estoppel applicable to Ingenico also applies to PayPal … [before] the [*PayPal*] trial."  *Id*., 74.  At the Court's request, the parties further briefed this issue.  D.I. 533, D.I. 543.  PayPal believes the question of whether estoppel under 35 U.S.C. §315(e)(2) applies to PayPal needs to be determined through a bench trial or other procedure *before* any jury trial on

liability (*see* D.I. 491, ¶22; D.I. 476), as it impacts the prior art PayPal may present at trial.

***§101 Defense***.  The Court denied PayPal's summary judgment motion, "conclud[ing] that PayPal and Ingenico have not shown that the claims at issue in these cases are directed to an abstract idea."  D.I. 511, 20.  The Court reserved its final §101 determination for later.  2022/06/13 Hearing Tr., 45:14-46:15.  The Court invited the parties to submit additional factual evidence for the Court to consider.  *Id.*  PayPal did so.  *See* D.I. 531.  To the extent the Court believes fact issues remain, a bench trial should be conducted on those issues.

***Jury Trial***.  If trial is necessary, PayPal proposes holding trial in late March of 2025 with the same time limits, number of jurors, etc. as outlined in the joint pre-trial order (D.I. 491).

***Inequitable conduct***.  Should IOENGINE survive summary judgment and prevail on both validity and infringement at trial, an inequitable conduct bench trial will be needed.  PayPal alleged that (1) Mr. McNulty filed a false declaration concerning a so-called "MediKey" prototype during prosecution and (2) failed to disclose material prior art to the PTO (*viz.*, that the MediKey prototype was largely an off-the-shelf thumb drive).  D.I. 52, Fifth Defense.

## V.    VALIDITY STATUS AND ISSUES

IOENGINE's case has been greatly diminished through a series of IPR and trial losses.  Of the 96 claims IOENGINE originally asserted against PayPal (D.I., 46, 1), only two claims remain asserted, with most others having been invalidated.  The surviving claims are '969 patent claim 10 and '703 patent claim 114 (the "synchronization claims").  Both are dependent claims.  Claim 10 of the '969 patent depends from claim 2, which in turn depends from claim 1.  *See* Ex. 1 (claim listing).  Claim 114 of the '703 patent depends from independent claim 104.  *Id.*  Both claims add the same trivial requirement that the "communication" (recited in the underlying base claims) from the portable device to the network "facilitate[s] synchronizing content on the portable device with content on the communication[s] network node [database]."  The New Claims are likewise all

dependent claims whose base claims have been invalidated. *Id*.

The *Ingenico* jury did *not* conclude that the DiskOnKey prior art failed to teach "facilitat[ing] synchronizing content." Indeed, it plainly does—the whole purpose of the Firmware Upgrade software was to synchronize the firmware of the DiskOnKey thumb drive with the current version on the server. Rather, the jury simply did not reach the question of invalidity because it found noninfringement of the synchronization claims. *Ingenico* case, D.I. 500, 7 ("Continue to Question 6 only for claims you have found were infringed"). Importantly, the *Ingenico* jury invalidated the base claims on which the synchronization claims depend:

| Claim | | Invalid (for Ingenico) | Not Invalid (for IOENGINE) |
|---|---|---|---|
| '969 Patent | Claim 3 | ✓ | |
| | Claim 10 | N/A | N/A |
| '703 Patent | Claim 56 | ✓ | |
| | Claim 90 | ✓ | |
| | Claim 101 | ✓ | |
| | Claim 105 | ✓ | |
| | Claim 114 | N/A | N/A |
| | Claim 124 | ✓ | |

*Id.*, 9. In particular, '969 patent claim 3 depends from claims 1 and 2. '969, cls. 2-3. Thus, the jury's invalidity finding of claim 3 necessarily meant the jury found claims 1 and 2 invalid. *Soverain*, 778 F.3d at 1315 ("Although claim 15 of the '492 patent, at issue here, was not explicitly invalidated in *Newegg*, we invalidated claim 41, which depends from claim 15. [] Therefore, the invalidity determination as to claim 41 extended to claim 15, as well."). Similarly, the jury invalidated '703 patent claim 105 which depends from claim 104. '703, cl. 105. Thus, the jury's invalidity determination extends to claim 104.

At the May 16, 2025 status conference, the Court encouraged the parties to discuss how the *Ingenico* verdict affects the *PayPal* case. It should end the *PayPal* case. The synchronization claims should be held invalid on summary judgment for two separate reasons. **First**, the synchronization claims (and New Claims) should be held invalid as a matter of issue preclusion because "the differences between the unadjudicated patent claims and adjudicated patent claims

12

do not materially alter the question of invalidity." *Soverain*, 778 F.3d at 1319-20.  In *Soverain*, as here, the underlying independent claim (15) had previously implicitly been held invalid. *Id*., 1315. Dependent claim 39 (asserted in the follow-on litigation) recited "[a] hypertext statement in accordance with claim 15, wherein the network is an Internet." *Id*., 1319-20. The district court found that dependent claim 39 was not invalid. *Id*., 1313. On appeal, the Federal Circuit concluded that "the routine incorporation of Internet technology in claim 39 does not change the invalidity analysis" and reversed the district court, holding that "[t]he invalidity of [dependent claim 39] is established by issue preclusion." *Id*., 1319-20.  The same result should obtain here.  The invalidated independent claims recite sending a "communication" from the portable device to a network server. *See* Ex. 1 (claim listing).  Merely requiring that the "communication" "facilitates synchronization ..." does not "materially alter" the invalidity analysis.[6] Bims Inv. Rpt., ¶¶120-39 (D.I. 406, Ex. 2) (discussing well-known file synchronization techniques and products).  As in *Soverain*, it is nothing more than "the routine incorporation of [known] technology" and does not "materially alter question of invalidity." *Soverain*, 778 F.3d at 1319-32.

**Second**, even if the synchronization claims (or New Claims) differed sufficiently from the invalid base claims to avoid issue preclusion under *Soverain*—they do not—IOENGINE is still collaterally estopped from disputing that the DiskOnKey prior art satisfies each limitation of the underlying base claims.[7] For example, in *Chrimar Sys., Inc. v. Foundry Networks, Inc.*, the court

---

[6]  The same is true of "facilitat[ing] the transmission of encrypted communications" ('969 claim 4) and "facilitat[ing] the download of program code" (for the remaining New Claims).

[7] The Court previously denied summary judgment that the IPR final written decisions (then on appeal) collaterally estopped IOENGINE from disputing that non-DiskOnKey prior art (*i.e.*, the Iida reference) satisfied the independent claim limitations.  D.I. 511, 26.  But the Court did so because the claims were different, the underlying decision was on appeal, and the invalidity finding was made in an IPR using the preponderance of the evidence standard.  *Id.*  Now, by contrast, the identical claims are at issue, invalidity was proven by clear and convincing evidence, and the Federal Circuit has affirmed.

considered the circumstance where independent claim 1 was adjudicated invalid.  2011 WL 13161438 (E.D. Mich. May 2, 2011), *report and recommendation adopted*, 2012 WL 3133897 (E.D. Mich. Aug. 1, 2012), *aff'd*, 501 F. App'x 977 (Fed. Cir. 2013).  To give effect to the invalidation, the court recognized that the defendant "need only demonstrate that the [prior art] references contain the elements of claims 14 and 17 that are not also present in claim 1," and then considered those elements in granting summary judgment that claim 14 was anticipated and claim 17 was obvious.  *Id.*, \*9.  The Federal Circuit affirmed.  *See* 501 F. App'x 977; *see also Ohio Willow Wood Co. v. ALPS S., LLC*, No. 2:04-CV-1223, 2012 WL 3283437 (S.D. Ohio Aug. 10, 2012), *aff'd in relevant part*, 735 F.3d 1333 (Fed. Cir. 2013) (using similar approach).[8]

Additionally, claim cancellation following IPR and Federal Circuit affirmance is binding on IOENGINE because "Congress has expressly delegated [review] authority to the PTO under a statute requiring the PTO to cancel rejected claims ...."  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013); *see also id.*, 1336 ("the cancellation of claims by the PTO is binding in pending district court infringement litigation."); *LG Elecs., Inc. v. Conversant Wireless Licensing S.A.R.L.*, 759 F. App'x 917, 926 n.5 (Fed. Cir. 2019) (applying *Fresenius* to decisions of the PTAB canceling claims following an IPR proceeding).  The PTO has formally cancelled the underlying base claims.  *See* Exs. 3 and 4 (IPR Certificates).  Thus, all PayPal needs to establish to prevail on summary judgment is that there is no genuine dispute that the DiskOnKey system "facilitate[s] synchronizing content on the portable device with content on the communication[s] network node [database]" ('969 claim 10 and '703 claim 114), "facilitates the

---

[8] The 3rd Circuit issue preclusion requirements of "identical issue" (*viz.*, same base claim elements), "actually litigated" (*viz.*, jury trial), "necessary to the decision" (*viz.*, invalidity verdict), and "fully represented" (*viz.*, same counsel) are met.  *See Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020) (discussing 3rd Circuit issue preclusion).

transmission of encrypted communications from the communication network node to the terminal" ('969 claim 4), or "facilitate[] the download of program code from the communications network node to the [terminal/portable device]" (for the remaining New Claims).

But that is precisely what the Firmware Upgrade software does—*viz.*, sends an encrypted communication to synchronize the DiskOnKey firmware by downloading the current version from the server. IOENGINE's expert agrees that the "synchronization" limitation is met by "synchronizing … firmware on the portable device with the latest version of such on a server." Rubin Inf. Rpt., ¶403 (D.I. 404, Ex. 4). As the DiskOnKey Firmware Upgrade manual from the Ingenico trial states: "The application connects to a remote server and checks if a newer version exists for the current DiskOnKey. The steps of this process are displayed on screen."



DDX-331, 2. Nor can it genuinely be disputed that firmware is "program code" that is downloaded. *Id.* ("[g]etting newer version"). And the upgrade process uses PKI, a well-known form of encryption. DX-336, 4 ("The upgrade server identifies the DiskOnKey using PKI"), *Ingenico* Tr., 736:4-737:19 (DiskOnKey Firmware Upgrade uses PKI, "a well-known [encryption and authentication] standard"). Because there is no genuine dispute on these points, summary judgment is appropriate.

## VI.    INFRINGEMENT STATUS AND ISSUES

IOENGINE fares no better on its infringement claims for two reasons. ***First***, the Court

already granted a motion to dismiss and summary judgment in favor of PayPal on various infringement issues. ***Second***, the remaining infringement issues are barred by the *Ingenico* jury verdict which found that the Ingenico readers supplied to PayPal do not infringe the only two claims left in the case. Under various preclusion doctrines, IOENGINE is barred from pursuing its remaining infringement claims against PayPal. *See* 2025/05/16 Hearing Tr., 41:8-42:10.

### A.    Current Status

***Joint Infringement***. The *Ingenico* jury invalidated all asserted method claims so joint infringement is out of the case. *Atlas Glob. Techs., LLC v. Oneplus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 649 (W.D. Tex. 2023) ("joint infringement does not apply to apparatus claims.").

***Direct Infringement***. The Court granted PayPal summary judgment of no direct infringement of '703 patent claim 114. D.I. 511, 34. That leaves only '969 patent claim 10 (an apparatus claims which the jury found Ingenico readers did not infringe, *Ingenico* case, D.I. 500, 3). While the Court denied PayPal's motion *in limine* to preclude evidence of direct infringement via testing, the Court agreed that "Dr. Stec's damages report does not discuss infringement via testing" and that "nominal damages … would likely be only a few cents, at most." D.I. 513, 17.

***Indirect Infringement***. The Court granted PayPal's motion to dismiss pre-suit indirect infringement (*i.e.*, for both inducement and contributory infringement). D.I. 48, 8. The Court also granted PayPal's motion to dismiss all allegations of contributory infringement. *Id.*, 14-15. Thus, the only indirect infringement theory remaining in the case is post-suit inducement.

***Willful Infringement***. The Court granted PayPal's motion to dismiss IOENGINE's allegations of pre-suit willful infringement. D.I. 48, 15.

### B.    Preclusion and Related Issues

The Ingenico noninfringement verdict creates various forms of preclusion. ***First***, collateral estoppel bars IOENGINE from relitigating the jury's noninfringement finding for the card readers

in the *Ingenico* case.  *E.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311-1312 (Fed. Cir. 2010).  And every Ingenico card reader model purchased by PayPal was found noninfringing in the *Ingenico* case.  *Compare* 2021/11/19 Rubin Inf. Report, ¶124 (D.I. 418-1; Ex. 2) (identifying accused readers as G3X, G4XD, G5X, Moby/3000, RP457c) *with Ingenico* case D.I. 500 (jury verdict), 3 (showing same models).  This should dispose of the Ingenico readers (comprising most accused products in the *PayPal* case) and eliminate the lion's share of IOENGINE's "transaction revenue" royalty base.

**Second**, res judicata bars alternative infringement theories (*viz.*, a "firmware update" theory) and claims that IOENGINE could have tried in the *Ingenico* case.  *See, e.g., Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1283-1285 (Fed. Cir. 2009).  This includes any allegedly infringing acts that post-date judgment in the first case.  *Id.*, 1284-86.  More generally, under established Federal Circuit law, res judicata bars any subsequent assertion of a patent when the devices in the second suit are "essentially the same" as those in the first suit.  *Id.*, *see also Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991).  Thus, IOENGINE's claims against the Zettle and Miura card readers are barred.

**Third**, the *Kessler* Doctrine "fills the gap[s] left by claim and issue preclusion."  *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) (internal cite omitted).  The *Kessler* Doctrine—which is related to, but separate from, issue and claim preclusion—bars claims against a customer defendant when a court has previously found noninfringement involving the same (or "essentially the same") accused products in a suit against the manufacturer.  *Kessler v. Eldred*, 206 U.S. 285 (1907).  As the Federal Circuit has explained:

> [T]he *Kessler* doctrine is a necessary supplement to issue and claim preclusion: without it, a patent owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the manufacturer's customers under ... any [patent] claim or theory not

17

> actually litigated against the manufacturer as long as it challenged
> only those acts of infringement that post-dated the [first] judgment ….
> That result would authorize the type of harassment the Supreme Court
> sought to prevent in *Kessler* when it recognized that follow-on suits
> against customers could destroy the manufacturer's judgment right.

*SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015). That is precisely the situation here. Moreover, the rights conferred by the *Kessler* Doctrine are not limited to the specific theories (*e.g.*, direct versus indirect infringement), patent claims, or arguments that IOENGINE presented in the *Ingenico* case—the rights protect Ingenico (and its customer PayPal) against all claims of infringement (past or future) involving the same patents and "essentially the same" devices.[9] *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058-59 (Fed. Cir. 2014). Given the substantial similarity/identicality of the accused products and infringement theories as between the Ingenico and Miura/Zettle readers, the *Kessler* Doctrine should preclude further litigation on the Miura/Zettle devices as well, ending the case.

Whether a claim is barred by preclusion—including res judicata, collateral estoppel, or the *Kessler* Doctrine—is a question of law and appropriately decided on summary judgment. *E.g.*, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 637 F. Supp. 3d 141, 145 (D. Del. 2022); *N.J. Inst. of Tech. v. Medjet, Inc.*, 47 F. App'x 921, 922 (Fed. Cir. 2002).

## VII.  DAMAGES STATUS AND ISSUES

Even without any New Claims, much damages work remains to be done, including PayPal's expert rebuttal to IOENGINE's new damages report (and its accompanying technical report), expert depositions, and *Daubert* motions. Because IOENGINE is entitled to, at most, a reasonable royalty that corresponds to "inventive aspects of the asserted claims," *Omega Pats.,*

---

[9] The Federal Circuit described *Kessler* as granting a "trade right to continue producing, using, and selling [products at issue in] the first suit and to do so without fear [infringement allegations by the plaintiff]—even when … third-parties [] allegedly engaged in those acts." *Id.*, 1056.

*LLC v. CalAmp Corp.*, 13 F.4th 1361, 1378 (Fed. Cir. 2021), the damages analysis cannot extend to aspects of those claims which are undisputedly not inventive. But IOENGINE's new damages report plainly violates this (and other) fundamental apportionment principles. *Prolitec Inc. v. ScentAir Techs., LLC*, No. CV 20-984-WCB, 2023 WL 8697973, at *17 (D. Del. Dec. 13, 2023). The Court has recognized that PayPal should be allowed to mount a new *Daubert* challenge. D.I. 528, 6-7.

Regardless, PayPal's rebuttal damages report will be greatly affected by what claims and products (Ingenico/Miura/Zettle (Datecs) readers) remain in the case, what time periods remain at issue (pre-suit versus post-suit), and what infringement theories remain viable (direct versus indirect infringement and firmware update versus card transaction).

For example, IOENGINE's new damages report does not contain a damages theory corresponding to the value of performing firmware updates.[10] Nor can all of the accused products even perform firmware updates (*viz.*, the G3X, G4XD, and G5X readers cannot). And with respect to direct infringement, the Court already acknowledged that IOENGINE would be entitled, at most, to nominal damages of less than one dollar for any testing-based infringement. D.I. 513, 17, fn.5 ("If an appropriate royalty rate were applied to that base, the amount of damages would likely be only a few cents, at most."). It would be wasteful of party and judicial resources to plow ahead on damages now.

## VIII.   PAYPAL'S CASE MANAGEMENT PROPOSAL

In the interests of fairness and judicial efficiency, PayPal proposes a schedule that allows for an early summary judgment motion which should dispose of the entire case on invalidity and/or noninfringement grounds. At a minimum, early summary judgment would simplify the issues for

---

[10] IOENGINE's new reports also raise equitable issues by relying on expert damages opinions and reports from prior cases that IOENGINE previously refused to produce in discovery.

trial by removing most accused products from the case. At the May 16, 2025 status conference, the Court asked whether any of PayPal's proposed summary judgment motions could have been brought before the *Ingenico* trial. The answer is "no." As discussed, both the invalidity and noninfringement preclusion issues (summarized in §§V and VI, respectively) could not have been brought previously as they both flow directly from, and are premised on, the *Ingenico* judgment. It would be manifestly unfair and judicially inefficient to deprive PayPal of the opportunity to move for summary judgment on these previously unavailable grounds. *See Young v. Pleasant Valley School Dist.*, 601 F. App'x 132, 135-36 (3d Cir. 2015) ("fuller record established at trial" is "an oft-recognized reason for" further summary judgment proceedings); *PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-01006-JDW, D.I., 585, 3 (D. Del., Mar. 5, 2024) (allowing supplemental summary judgment proceedings based on subsequent PTO proceedings). Indeed, the primary purpose of trying the *Ingenico* case first was to avoid/simplify a second trial against Ingenico's customer, PayPal.

In terms of timing, PayPal is prepared to file its summary judgment motion within one week of authorization. PayPal's proposed schedule (*see* Ex. 2) assumes no additional claims are added to the case. If IOENGINE is allowed to any New Claims, a more protracted schedule will be required to account for additional fact discovery, supplemental expert reports (and expert depositions), and summary judgment. PayPal's schedule extends through a jury trial (but does not include deadlines for post-trial briefing). Depending on the outcome of any jury trial, further proceedings (*e.g.*, a bench trial on inequitable conduct) may be required.

## IX.    CONCLUSION

PayPal respectfully requests that the Court enter PayPal's proposed schedule.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

OF COUNSEL:

Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
clark@morrisnichols.com

Jared Bobrow
Travis Jensen
Robert L. Uriarte
Jacob M. Heath
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
(650) 614-7400

*Attorneys for Defendant*

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Tyler Miller
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

June 6, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 6, 2025, upon the following in the manner indicated:

Neal C. Belgam, Esquire                               *VIA ELECTRONIC MAIL*
Daniel A. Taylor, Esquire
SMITH, KATZENSTEIN & JENKINS, LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
*Attorneys for Plaintiff*

Noah M. Leibowitz, Esquire                            *VIA ELECTRONIC MAIL*
Gregory T. Chuebon, Esquire
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
*Attorneys for Plaintiff*

Luke M. Reilly, Esquire                               *VIA ELECTRONIC MAIL*
Michael A. Fisher, Esquire
Judah Bellin, Esquire
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
*Attorneys for Plaintiff*

Michael H. Joshi, Esquire                             *VIA ELECTRONIC MAIL*
DECHERT LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA  94306
*Attorneys for Plaintiff*

/s/ *Brian P. Egan*

_____
Brian P. Egan (#6227)