**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IOENGINE, LLC, | |
| *Plaintiff/Counterclaim Defendant*, | |
| v. | C.A. No. 18-452-WCB |
| PAYPAL HOLDINGS, INC., | **JURY TRIAL DEMANDED** |
| *Defendant/Counterclaim Plaintiff*. | |

**IOENGINE, LLC'S SUBMISSION REGARDING**
**REMAINING PRETRIAL PROCEEDINGS**

OF COUNSEL:

Noah M. Leibowitz
Gregory T. Chuebon
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
noah.leibowitz@dechert.com
greg.chuebon@dechert.com

SMITH, KATZENSTEIN & JENKINS LLP

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Counsel for IOENGINE, LLC*

Dated: June 6, 2025

## **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF ARGUMENT ........................................................................................ 1

III.   ARGUMENT ................................................................................................................... 2

    A.    This Case Is Nearly Trial Ready, Requiring Only Limited Supplementation ........ 2

        1.    The Damages Case is Nearly Trial Ready ................................................. 2

        2.    The Parties Have Already Proffered Facts and Evidence in Support of Their Positions on Privity and IPR Estoppel ......................................... 3

        3.    IOENGINE's Proposed Schedule Is Reasonable and Reaches Trial In December 2025 ......................................................................................... 4

    B.    Collateral Estoppel Does Not Apply to Claim 10 of the '969 Patent or Claim 114 of the '703 Patent ................................................................................. 4

        1.    There Is No Collateral Estoppel with Respect to Invalidity ..................... 6

        2.    There Is No Collateral Estoppel with Respect to Non-Infringement ........ 13

    C.    PayPal Should Not Be Allowed to File a New Summary Judgment Motion Seeking an Obviousness Determination .............................................................. 16

    D.    IOENGINE Should Be Permitted to Include a Single Claim That Was Found Not Invalid on Appeal from the IPR Proceedings ..................................... 17

    E.    The Parties Should Be Permitted Brief Supplemental Expert Reports to Address the Federal Circuit's Decision on the Appeal of Ingenico's IPRs .......... 19

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Allergan, Inc. v. Sandoz, Inc.*,
  681 F. App'x 955 (Fed. Cir. 2017) ............................................................................. 4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ................................................................................. 9

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
  713 F.3d 1377 (Fed. Cir. 2013) ................................................................................. 4

*Greenway Ctr., Inc. v. Essex Ins. Co.*,
  475 F.3d 139 (3d Cir. 2007) ...................................................................................... 5

*Hartness Int'l Inc. v. Simplimatic Eng'g Co.*,
  819 F.2d 1100 (Fed. Cir. 1987) ................................................................................. 9

*IOENGINE, LLC v. Ingenico Inc.*,
  100 F.4th 1395 (Fed. Cir. 2024) ................................................................................ 2

*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3d Cir. 2006) ...................................................................................... 4

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
  127 F.4th 1376 (Fed. Cir. 2025) ................................................................................ 6

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
  357 F.3d 1319 (Fed. Cir. 2004) ................................................................................. 9

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) ................................................................................. 5

*ParkerVision, Inc. v. Qualcomm Inc.*,
  116 F.4th 1345 (Fed. Cir. 2024) ....................................................................... 5, 9, 13

*Peloro v. U.S.*,
  488 F.3d 163 (3d Cir. 2007) ...................................................................................... 5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed Cir. 2005) .................................................................................. 5

*Stragent, LLC v. BMW of N. Am., LLC*, No. 20-510-LPS,
  2021 WL 1147468 (D. Del. Mar. 25, 2021) .............................................................. 5

*Suppan v. Dadonna*,
  203 F.3d 228 (3d Cir. 2000) ...................................................................................... 5

*TQ Delta, LLC v. 2Wire, Inc.*,
  2021 WL 2671296 (D. Del. June 29, 2021) .......................................................... 5, 11

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  52 F.4th 1340 (Fed. Cir. 2022) .................................................................................. 5

Statutes

35 U.S.C. § 282 ............................................................................................................. 9
35 U.S.C.A. § 282(a) ..................................................................................................... 9

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to the Court's oral order at the May 16, 2025 telephonic conference in this case, IOENGINE, LLC ("IOENGINE") hereby respectfully provides its submission regarding issues that remain for resolution before trial in this case on U.S. Patent Nos. 9,059,969 (the "'969 Patent") and 9,774,703 (the "'703 Patent") (collectively the "Patents in Suit").

## II.    SUMMARY OF ARGUMENT

As discussed more fully below:

1)    This case is nearly ready for trial, with only limited supplemental expert proceedings and a small number of issues requiring the Court's attention before trial.  The damages case requires updated financial disclosures from PayPal Holdings, Inc. ("PayPal"), and short supplements to expert reports, which should not impede a prompt trial date.  Additionally, at the time this case was adjourned, the parties had proffered evidence in support of their positions as to whether PayPal is Ingenico's privy, such that the IPR estoppel applicable to Ingenico also applies to PayPal.  This issue remains ready for hearing and decision.

2)    No collateral estoppel lies for either invalidity or non-infringement of the remaining claims in this case ('969 Patent claim 10 and '703 Patent claim 114).  The jury in *Ingenico Inc. v. IOENGINE, LLC*, No. 18-cv-826 (D. Del.) (the "Ingenico Action") did not address validity of these claims, which have a different scope from the claims found invalid there, and the question of PayPal's infringement turns on PayPal documents, witness testimony, code, and infrastructure that was not considered by the jury in the Ingenico Action.  These are different issues, not subject to collateral estoppel.

3)    Judicial efficiency is best served by allowing IOENGINE to include in this case one claim ('969 Patent claim 4), for which the Federal Circuit reversed the Patent Trial and Appeal Board's ("PTAB") finding of unpatentability. This claim was originally part of this case, and the

parties have already served contentions and taken discovery on it. Although IOENGINE could bring '969 Patent claim 4 in a separate suit, that would result in a wasteful and time-consuming repeat of discovery.  Including this single claim for trial here would require minimal expert discovery and would not significantly impact the schedule.

4)    PayPal should not be permitted to file any additional dispositive motions.  PayPal had an opportunity to brief its summary judgment issues, subject to the Court's word limits.  PayPal prioritized other motions and should not be allowed any extra motions.

5)    Finally, the Federal Circuit's decision on the appeal of Ingenico's IPR proceedings (*IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395 (Fed. Cir. 2024) (the "IPR Appeal") addressed and clarified the scope and effect of certain terms at issue in the claims remaining in this case. The parties should be permitted to provide short supplemental expert reports to address the Federal Circuit's intervening opinion.

IOENGINE wishes to resolve this case expeditiously.  To that end, IOENGINE proposes a jury trial in December 2025 according to the proposed schedule attached as **Appendix A**.

## III.    ARGUMENT

### A.    This Case Is Nearly Trial Ready, Requiring Only Limited Supplementation

There are relatively few additional items that need to be completed to have this case ready for trial.  IOENGINE believes that the parties can complete these items promptly so that the case can be ready for trial in December 2025.

#### 1.    The Damages Case is Nearly Trial Ready

When trial in this case was adjourned, IOENGINE had recently submitted the June 30, 2022 Supplemental Expert Report of Jeffery A. Stec, Ph.D. and the accompanying supplemental June 29, 2022 Expert Report of Dr. Avi Rubin.  However, because three years have passed since these reports were submitted, the financial data on which the Supplemental Stec Report is based,

which at the time had only been updated through April 30, 2022, is incomplete.  IOENGINE has asked PayPal to provide a supplemental production of financial data through March 23, 2024, the date the Asserted Patents expired. IOENGINE can then provide a short amended supplemental report from Dr. Stec covering the entire damages period.

The supplemental damages reports would be limited.  IOENGINE's supplemental report would update the damages numbers for trial based on intervening sales and other financial data. PayPal has indicated that it intends to provide a responsive supplemental expert report from its damages expert, Ms. Stamm.  IOENGINE's position is that any supplement from Ms. Stamm should be limited to 10 pages (equal to Dr. Stec's supplemental report). IOENGINE proposes that depositions on these supplemental reports be limited to 3 hours each.

The parties met and conferred regarding their positions on May 30th, and PayPal insisted that supplementation of financial information should take place only after the Court's decision with respect to the collateral estoppel and any potential summary judgment issues that PayPal intends to raise. IOENGINE's position is that there is no reason to delay supplemental financial disclosures, and that doing so will unnecessarily delay the remaining supplemental expert reports and case schedule. To the extent that new PayPal employees need to be engaged to provide this financial disclosure (as PayPal has suggested), that is only the more reason to begin this process now, rather than wait.

### 2. The Parties Have Already Proffered Facts and Evidence in Support of Their Positions on Privity and IPR Estoppel

In its summary judgment opinion, the Court held that IPR estoppel barred Ingenico from raising certain prior art at trial, and that it would "decide whether the IPR estoppel applicable to

Ingenico also applies to PayPal." D.I. 511 (Ex. 1[1]) at 74. Following the pretrial conference in this case, both parties proffered evidence in support of their positions on whether there is privity between PayPal and Ingenico and its effect on IPR estoppel. *See* D.I. 533, 543. The Court has not decided this issue. IOENGINE submits that the Court should hold an evidentiary hearing on this issue sufficiently in advance of trial so that the parties can prepare the revised pretrial order and efficiently prepare for trial understanding what prior art PayPal is permitted to raise. Alternatively, PayPal can stipulate that it will not raise any prior art that Ingenico was estopped from raising in the Ingenico Action (*e.g.*, Iida, and all other grounds that were or could have bene raised in IPR).

### 3.    IOENGINE's Proposed Schedule Is Reasonable and Reaches Trial In December 2025

Given the discovery done to date, the fact that the Court has already addressed summary judgment, and the need for minimal additional expert discovery, IOENGINE believes that this case can be ready for trial in December 2025. IOENGINE's proposed schedule, attached as Appendix A, ensures that all discovery is promptly completed and that the parties prepare this case for trial as quickly as possible. IOENGINE has confirmed that its experts and other likely trial witnesses do not currently have conflicts for the week of December 8, 2025.

### B.    Collateral Estoppel Does Not Apply to Claim 10 of the '969 Patent or Claim 114 of the '703 Patent

Collateral estoppel applies only when: "(1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previously determination was necessary to the decision, and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).[2]

---

[1] All Exhibits are to the Chuebon Declaration, filed concurrently herewith.

[2] Regional circuit law governs issues of collateral estoppel. *See Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 959 (Fed. Cir. 2017). However, Federal Circuit law applies to aspects of a collateral

"For defensive collateral estoppel ... to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action.'" *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1347 (Fed. Cir. 2022) (quoting *Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007)).  Further, identity of issues "is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).  "The party asserting issue preclusion bears the burden of proving its applicability." *Stragent, LLC v. BMW of N. Am., LLC*, No. CV 20-510-LPS, 2021 WL 1147468, at *3 (D. Del. Mar. 25, 2021) (citing *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007)).

For purposes of invalidity, collateral estoppel will apply only if the differences between claims "do not materially alter the question of invalidity." *TQ Delta, LLC v. 2Wire, Inc.*, No. 13-cv-01835, 2021 WL 2671296 at *5 (D. Del. June 29, 2021) (citing *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)).  Here, it is PayPal's burden to prove that the differences between the claims are immaterial.  *See id.*; *see also Stragent*, 2021 WL 1147468 at *7 (no preclusion where "Defendants have not satisfied their burden to prove that the claims…are patentably indistinct").  This analysis requires "a comparison of the scope of the claims at issue" and "[t]he proper approach…is to look first to the intrinsic evidence of record…." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1357 (Fed. Cir. 2024) (district court erred by failing to assess claim scope in accordance with *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed Cir. 2005) (*en banc*)).

---

estoppel determination that implicate substantive issues of patent law.  *See Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

Here, the collateral estoppel analysis concerns two sets of claims: (i) '969 Patent Claim 3 and '703 Patent Claims 156, 90, 101, 105, and 124 (the "Adjudicated Claims") and (ii) '969 Patent Claim 10 and '703 Patent Claim 114 (the "Synchronization Claims"). *See* Ingenico Action, at D.I. 500 (Ex. 2) (jury verdict). These sets of claims have significant differences, which substantially alter what must be proven on questions of both invalidity and infringement. At least because of these substantial differences, described in more detail below, IOENGINE cannot be collaterally estopped from contesting invalidity of the Synchronization Claims where the jury in the Ingenico Action found only the materially different Adjudicated Claims invalid. Likewise, because the Accused PayPal Products contain program code unique to PayPal, and because IOENGINE's proof of infringement by PayPal relies on significant additional evidence that was unavailable in the Ingenico Action, IOENGINE cannot be collaterally estopped from asserting infringement by PayPal of the Synchronization Claims, regardless of the jury verdict in the Ingenico Action.[3]

### 1.    There Is No Collateral Estoppel with Respect to Invalidity

a.    <u>The Intrinsic Evidence Reflects Materially Different Claim Scope</u>

The Adjudicated Claims and the Synchronization Claims have materially different claim scope: They are directed to discrete program codes, operating in different ways to accomplish distinct tasks. Adjudicated Claims 3 of the '969 Patent and 56 and 105 of the '703 Patent are directed to user interactions and a series of interrelated program codes that facilitate ***verification*** of a portable device. Adjudicated Claims 90, 101, and 124 of the '703 Patent are directed to interrelated program codes that provide the terminal with portable device identifier information.

---

[3] To the extent PayPal argues that the PTAB's finding of unpatentability of any claim has collateral estoppel effect as to the Synchronization Claims, the Federal Circuit has now held that "a prior final written decision of the Board of unpatentability on separate patent claims reached under a preponderance of the evidence standard cannot collaterally estop a patentee from asserting other, unadjudicated patent claims in district court litigation." *Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1381 (Fed. Cir. 2025).

In contrast, the Synchronization Claims are directed to user interactions and a series of interrelated program codes to facilitate **synchronizing content** on the portable device with content on the communications network node. The claims themselves recite the different scope of these inventions through the use of different claim language:

| | Adjudicated Claim | Synchronization Claim |
|---|---|---|
| '969 Patent | **Claim 3:** The portable device according to claim 2, wherein the communication caused to be transmitted to the communication network node facilitates ==verification of the portable device==. | **Claim 10:** The portable device according to claim 2, wherein ==the communication network node comprises a database and== the communication caused to be transmitted to the communication network node facilitates ==synchronizing content on the portable device with content on the communication network node database==. |
| '703 Patent | **Claim 105:** The system according to claim 104, wherein the portable device is configured to execute the fourth program code to cause a communication to be transmitted to the communications network node to facilitate ==verification of the portable device==. | **Claim 114:** The system according to claim 104, wherein the portable device is configured to execute the fourth program code to cause a communication to be transmitted to the communications network node to facilitate ==synchronizing content on the portable device with content on the communications network node==. |

Each of these claims requires a specific "fourth program code" that performs a particular function, and that is interconnected to other elements supporting *that* function. For example, Claim 105 claims a specific fourth program code that is stored on the portable device memory and configured to be executed by the portable device "in response to a communication received by the portable device resulting from user interaction with the interactive user interface to cause a communication to be transmitted to a communications network node…to facilitate verification of the portable device." Claim 114 claims *different* fourth program code stored on the portable device's memory that is configured to execute "in response to a communication received by the portable device resulting from user interaction with the interactive user interface to cause a communication to be transmitted to a communications network node…to facilitate synchronizing

7

content on the portable device with content on the communications network node." In each instance, specific program code must execute and function, as claimed, to perform a particular result. It is not enough to point to generic 'fourth program code.' Nor is it enough to point to a generic 'user interaction with the interactive user interface' that ultimately causes a non-specific, general communication—or even a communication to *facilitate verification of the portable device*—as evidence of program code executed in response to user interaction that must ultimately cause a communication to *facilitate synchronizing content on the portable device with content on the communications network node.* The different claim language in dependent claims 10 and 114 modifies the scope and meaning of the claimed fourth program code, resulting in different claimed program codes that must be identified in prior art for purposes of invalidity.

The intrinsic evidence reflects that these are materially different operations with different purposes. Specifically, the Patents in Suit explain that verification refers to checking for authorization: "[V]erification may be achieved by sending a query to the servers to ***check*** its database for the authorization information…[and t]he servers would then respond providing an acknowledgement…." '969 Patent at 7:64-8:4. By contrast, synchronization refers to conforming content in one location to match that in another location: "synchronize the contents of the TCAP with storage facilities at the backend server." *Id.* at 8:25-26. Synchronization also requires a degree of automation. As Dr. Rubin has explained, a process of manually copying files from one location to another or deleting files is not "synchronization." Ex. 3 at ¶¶ 49, 410; *see also* '969 Patent at 12:29-31 ("[S]uch information may be constantly synchronized from the backend servers to the TCAPs."). These distinct operations render the scope of the claims materially different.

As a result, the validity of the Synchronization Claims was neither "previously adjudicated" nor "necessary to the decision" in the Ingenico Action. Indeed, the Ingenico Action

jury implicitly found that the scope of these claims is materially ***different*** when it found the Adjudicated Claims infringed and the Synchronization Claims ***not*** infringed—a conclusion it could only have reached if the claim scope is different. *See* Ex. 2 (jury verdict). Accordingly, this is not a situation where the prior jury verdict supports a finding that the claims are "patentably indistinct." Rather, any determination that the Synchronization Claims and Adjudicated Claims have coextensive claim scope would be contrary to the Ingenico Action's jury verdict.

Further, it is axiomatic that "[e]ach claim of a patent…shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C.A. § 282(a). As such, collateral estoppel must be assessed on a claim-by-claim basis, not element-by-element. *See, e.g.*, *ParkerVision*, 116 F.4th at 1357 (assessing whether ***claims*** are materially the same). PayPal should not be allowed an end-run around the requirements of 35 U.S.C. § 282 by attempting to improperly dissect the Adjudicated Claims into individual elements and then asserting collateral estoppel on an element-by-element basis. Dependent claims include all elements from the independent claims on which they depend and their own additional limitations. *See Hartness Int'l Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987). Here, as discussed above, the Synchronization Claims and Adjudicated Claims each require *different* "fourth program code" to perform a function specific to that claim and which is interconnected to other claim elements that support that function. Thus, "[any] validity analysis must be conducted on a claim-by-claim basis," *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1334 (Fed. Cir. 2004), and "grounds of invalidity must be evaluated against individual ***claims***, as required by the plain language of 35 U.S.C. § 282." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

Although the corresponding Adjudicated and Synchronization Claims depend from the same independent claims, the dependent limitations cannot be viewed alone because they each implicate and thereby delineate the scope of the specifically claimed fourth program code. Thus, even acknowledging that the jury in the Ingenico Action found fourth program code that functions to facilitate ***verification*** in the prior art, that does not suffice to prove fourth program code that functions to facilitate ***synchronizing content***. Again, a contrary determination would conflict with the jury's distinct treatment of these claims for purposes of infringement; if evidence of fourth program code that functions to facilitate verification were sufficient to prove fourth program code that functions to facilitate synchronizing content, the jury could not have returned its differing verdicts on infringement. Likewise, simply showing that synchronizing content exists somewhere in the art (which was ***not*** found by the jury in the Ingenico Action) would not establish invalidity because the claims require synchronizing content to occur under specific circumstances and as a function of specific program codes. For example, in the Synchronization Claims, the claimed fourth program code is "executed…in response to a communication received by the portable device resulting from user interaction with the interactive user interface" so as "to cause a communication to be transmitted to [the/a] communication[s] network node." '969 Patent Claims 1-2; '703 Patent Claim 104. There has been no prior determination that these limitations, and this specific fourth program code, exist in the prior art ***to facilitate synchronizing content***. Indeed, as discussed above, verification and synchronizing content are two different operations. That verification results from user interaction in the prior art does not prove the same for synchronizing content. All limitations in the claims from which the Synchronization Claims depend must still be shown to exist in the prior art with respect to facilitating synchronizing content.

Finally, '969 Patent Claim 10 adds the requirement that facilitating synchronizing content must occur in connection with a database. The jury in the Ingenico Action did not find any claim with a "database" element invalid and so it would be entirely improper for IOENGINE to be collaterally estopped from contesting invalidity of '969 Patent Claim 10 on that basis. Moreover, the intrinsic evidence provides extensive teaching on the specific meaning of the term "database" in the context of a communications network, further reflecting that this limitation materially changes the claim scope. *See, e.g.*, '969 Patent at 18:29-19:37.

Because the intrinsic record reflects that the Adjudicated Claims and Synchronization Claims have materially different scope, collateral estoppel is improper.

>    b.    Extrinsic Evidence Also Makes Collateral Estoppel Inappropriate

Courts in this district have found no substantial similarity between claims where extrinsic evidence establishes that differing limitations change the invalidity analysis. *See TQ Delta*, 2021 WL 2671296 at *5.[4] In *TQ Delta*, although the unadjudicated and adjudicated claims all addressed "determining," "computing," or otherwise identifying a "phase shift," expert testimony reflected that the difference in claim language "changes the operation of the claimed transceivers and the scope of the claims…." *Id.* As a result, the court denied a motion for summary judgment of collateral estoppel. *Id.* at *5-6.

Similarly, even though IOENGINE's expert, Dr. Rubin, was not asked to provide opinions as to collateral estoppel issues, his report reflects material differences between the Synchronization Claims and the Adjudicated Claims. From a basic standpoint, these claims are addressed

---

[4] In *TQ Delta*, these differences were addressed in expert reports. Here, the issue of collateral estoppel was not live at the time of expert reports. To the extent the Court believes that the intrinsic record is insufficient to show a difference in claim scope to avoid collateral estoppel, IOENGINE should be given the opportunity to submit expert testimony on this issue.

separately, and Dr. Rubin has different opinions as to why the "verification" and "synchronizing content" elements are not present in the DiskOnKey prior art. *Compare* Ex. 3 ¶¶ 437-440[5] *with* ¶¶ 447-455. Dr. Rubin's analysis for the "verification" element focused on the step of "authenticating the device," as well as deficiencies in Dr. Bims' analysis of public key certificates. *Id.* at ¶¶ 437-38. In contrast, his analysis of the "synchronizing content" element focused also on weaknesses in Dr. Bims' analysis of alleged comparisons of firmware versions and that Dr. Bims could not prove that synchronization over a network is possible with the DiskOnKey even when combined with the additional MyKey software that Dr. Bims relied upon in his report. *Id.* at ¶¶ 439, 450-55. Dr. Rubin's analysis highlighted that the MyKey documentation itself, which Dr. Bims relies upon, states that the synchronization folder must be "local" to the host—*i.e.*, ***not*** a remote communication network node as required by claims 10 and 114:

> 2. Select the folders you would like to synchronize. The first folder must be an existing local folder. The second folder must be an existing DiskOnKey folder.

*Id.* at ¶439 (quoting INGEN-0100391 at 12, reproduced above). As for Claim 10, Dr. Rubin explains how Dr. Bims entirely failed to address the "database" element. *See id.* ¶ 469.

Additionally, with respect to the DiskOnKey firmware updater, Dr. Rubin provided testimony at trial that there was no evidence that the new firmware data was "synchronized" between the DiskOnKey device and the network server, as opposed to being downloaded to the computer connected to the DiskOnKey. *See* D.I. 519-2 (Ex. 13), at 1071-72 (testifying that the "preferred way [the firmware update functionality] could have been implemented" is that new firmware is available, it "gets sent down [to the computer]" to avoid "waiting for it to download

---

[5] Dr. Rubin here analyzes Claim 56 of the '703 Patent. However, because Dr. Bims treated Claims 56 and 105 as substantially identical, Dr. Rubin did the same. *See* Exhibit 3 ¶ 446.

at the moment they want to upgrade," and that Mr. Geier had not presented "any code … showing that it didn't work that way"). Had the jury in the Ingenico Action found infringement of the Synchronization Claims, they may well have credited Dr. Rubin's testimony and concluded that, regardless of whether the firmware updater disclosed portable device verification, it did not provide clear and convincing evidence of "synchronizing content *on the portable device* with content on the communication network node database." This precludes collateral estoppel.

        c.      The IPR Appeal Provides Alternative Basis for Non-Invalidity

In addition, collateral estoppel is improper here because, as discussed below, the intervening IPR Appeal decision by the Federal Circuit addressed the effect of several claim terms relevant to the Synchronization Claims, including "content," "program code," and "encrypted communications," particularly as they relate to each other. *See infra* at § III.E; IPR Appeal at 1403-05. The IPR Appeal provides additional reasons why the firmware update functionality of the DiskOnKey is not "synchronizing **content**" and so does not invalidate the Synchronization Claims. Because the IPR Appeal decision post-dated trial in the Ingenico Action, these issues were not presented to the jury in that case.

        **2.**      **There Is No Collateral Estoppel with Respect to Non-Infringement**

The jury in the Ingenico Action found that the Synchronization Claims were not infringed *by Ingenico*. However, collateral estoppel as to non-infringement *by PayPal* is improper because the Accused PayPal Products[6]—which have been configured specifically by PayPal—do not "operate, in all material respects, in the same manner as the products accused of infringement in the [Ingenico Action]." *See ParkerVision*, 116 F.4th at 1356.

---

[6] These include the PayPal Here Service, the PayPal Here Chip Card Reader, the PayPal Here Mobile Card Reader, the PayPal Here Chip and Swipe Reader, the PayPal Here Chip and Tap Reader, the PayPal Here Mobile Application, the PayPal Here SDK, the Zettle Service, the Zettle Application, the Zettle Reader, and the Zettle SDK.

As an initial matter, certain Accused PayPal Products are entirely unrelated to Ingenico. This includes PayPal's Zettle Service, Application, Reader, and SDK and PayPal Chip Card Reader. *See* Ex. 4 at F-2 (explaining that only "the PayPal Mobile Card Reader, PayPal Chip and Swipe Reader, and PayPal Chip and Tap Reader are based on Ingenico mobile reader devices…").

Even where Ingenico supplied components for an Accused PayPal Product, collateral estoppel is still improper because the Accused PayPal Products are configured specifically by PayPal in ways that are material to the Synchronization Claims. IOENGINE's proof of PayPal's infringement relies on features and evidence specific to the Accused PayPal Products as configured by PayPal—none of which was before the jury in the Ingenico Action. More specifically, while the accused PayPal Here Service, Mobile Application, and SDK may interact with Ingenico supplied mobile reader devices, they were created and are controlled by PayPal, and alter the functionality of the Ingenico supplied devices. Crucially, IOENGINE was unable to present evidence from PayPal related to the operation of Accused PayPal Products in the Ingenico Action. IOENGINE sought to introduce deposition testimony from PayPal witnesses and related documents in the Ingenico Action, but Ingenico moved to exclude this evidence and the Court granted Ingenico's motion. *See* Ingenico Action, D.I. 487 (Ex. 5) at 23 (granting Ingenico's motion *in limine* excluding the admission of depositions of PayPal witnesses in the Ingenico trial). IOENGINE cannot be estopped from asserting infringement by PayPal based on the Ingenico Action verdict when it was unable to present evidence of PayPal's infringement—how the Accused PayPal Products operate when loaded with PayPal's specific program code and when configured to communicate with PayPal's servers—in that case. IOENGINE did not have a "full and fair opportunity" to litigate the issue of ***PayPal's*** infringement in the Ingenico Action.

As to the specific Synchronization Claims, with respect to Claim 114, Dr. Rubin's analysis relies on evidence that demonstrates how PayPal's devices infringe each time they perform an Online Authorization Request, which includes requests to PayPal servers. Ex. 6 ¶¶ 423-424. Dr. Rubin also relies on code from the PayPal Here SDK, which is code created and configured by PayPal rather than Ingenico. *Id*. ¶¶ 423-24, 102 ("The PayPal Here SDK allows developers to create their own third-party applications that interface with PayPal Here readers and backend servers"). And Dr. Rubin cites to functionality from the PayPal Here app, which was an app developed and coded by PayPal, not Ingenico. *Id*. ¶¶ 423-24, 101.

Further, PayPal's infringement includes the ways in which the Accused PayPal Products are designed and configured by PayPal to synchronize with PayPal servers, which were not at issue in the Ingenico Action. Specifically, the Synchronization Claims recite communications between the portable device (a PayPal card reader) and a communications network node (a PayPal server), including with respect to synchronizing content. *See* Ex. 6 ¶¶ 116 ("PayPal Here … communicate[s] with the PayPal Here backend servers"), 117 ("The SDK is designed to create a mobile application that communicates with PayPal's REST Servers"); 222 ("Once a user has successfully logged in, the PayPal Here application receives an access token that is used to make subsequent requests to The PayPal Here Server"), 424 (referencing actions "performed using PayPal's secure servers"), 455 ("The software facilitates collection and transmission of consumer's payment card data to a PayPal Payment Processor server on the network"). The jury in the Ingenico Action had no opportunity to consider this evidence or whether devices configured by *PayPal* that communicated with *PayPal's servers* infringe these claims.

Any effort by PayPal to invoke collateral estoppel as to infringement would prevent IOENGINE from presenting specific evidence of PayPal's infringement to a jury. PayPal's

infringement of these claims presents a question that no jury has considered, and relies on evidence that no jury has seen.  Accordingly, there can be no collateral estoppel here.

### C.    PayPal Should Not Be Allowed to File a New Summary Judgment Motion Seeking an Obviousness Determination

At the May 16, 2025 teleconference, PayPal proposed filing a summary judgment motion of obviousness on the Synchronization Claims. 5/16/222 Trans. at 20:15-18. As the Court suggested at that time, "there certainly is an argument that [PayPal] had an opportunity to file a summary judgment motion with respect to those claims and you didn't, and why should you be permitted to file a second summary judgment motion unless the summary judgment motion is predicated on collateral estoppel in the judgment from the first case." *Id*. at 27:13-23.  The Court's suggested argument is entirely correct.  To the extent that PayPal now seeks to file for summary judgment of obviousness, the Court should deny such a request.

PayPal had the opportunity to file a summary judgment motion directed to obviousness of the Synchronization Claims and chose not to do so.  *Id*. at 26:5-12 (PayPal admitting that it did not raise this issue on summary judgment).  The Court's scheduling order allotted PayPal and Ingenico a combined 12,500 for dispositive and *Daubert* motions.  D.I. 254 (Ex. 7) at ¶ 6.  Defendants made the most of that allotment: their opening brief in support of summary judgment and *Daubert* moved for summary judgment on no less than **seven** grounds (not including sub parts) and to preclude or strike expert testimony on another **three** grounds, and contained exactly the allotted 12,500 words. *See* D.I. 412 (Ex. 8) (certifying that the brief "contains 12,500 words").  PayPal now seeks to file a new motion that it could have filed at the time of summary judgment proceedings but made the decision not to, either for strategic or space reasons.  The Court should not allow PayPal to move on an issue it chose to pass on previously.

To the extent that PayPal argues that the Ingenico Action verdict is an intervening event, it

cannot explain why that impacts its summary judgment choices.  PayPal's position has always been that the same art relied on by Ingenico at trial, or when combined with other art, renders the Synchronization Claims obvious.  PayPal had every motive and opportunity to request summary judgment on this basis but chose to prioritize other issues, and now must live with its choice.

### D.    IOENGINE Should Be Permitted to Include a Single Claim That Was Found Not Invalid on Appeal from the IPR Proceedings

In its decision on Ingenico's IPRs, the Federal Circuit reversed the PTAB's determinations of unpatentability as to Claims 61, 62, 110, and 111 of the '703 Patent and Claims 4 and 7 of the '969 Patent.  *See* IPR Appeal *at* 1407.  These claims are covered by the Complaint in this action. D.I. 79 (Ex. 9) (First Amended Complaint) at ¶¶ 117, 198 (alleging infringement).  IOENGINE could assert these claims against PayPal through the filing of a new complaint in a separate action. However, IOENGINE believes that it would best serve judicial efficiency to address PayPal's infringement now, using discovery already produced in this action, rather than have the parties redo discovery in an entirely new litigation.  To that end, IOENGINE proposes including just one of these claims in this action: Claim 4 of the '969 Patent.

During a discovery teleconference following the lifting of the stay of proceedings pending IPR, counsel for IOENGINE expressly reserved the right to file a possible future proceeding on any claims as to which the Federal Circuit reversed the Board's decision.  *See* D.I. 140 (Ex. 10) at 31:23-32:1 (reserving the right for a "future proceeding should the Federal Circuit reverse the PTAB"); 40:9-17 ("THE COURT: So let me make sure I understand exactly what you said…You are saying that the eight claims, if I allow you to proceed on the eight claims, that you will not -- that any decision with respect to those claims in this litigation will have res judicata effect to all other claims ***that are available to you at this time***? Is that right?  MR. LEIBOWITZ: Yes, Your Honor").  Indeed, the Court recognized that IOENGINE agreed only that it would not seek to

proceed on any other claims "available … at th[at] time," and that IOENGINE expressly reserved the right to proceed on claims that were then unavailable but later became available. *Id*. at 42:15-20 ("THE COURT: … I think there's a qualification there, and I put the qualification in the question. And that is, with respect to claims that are available to them now, ***not with respect to claims that have, for the time being at least, been cancelled and may be resuscitated by an appeal to the Federal Circuit***").[7] IOENGINE thus remains free to seek relief for PayPal's infringement of these claims following the Federal Circuit's reversal of the Board.

While there is no question that IOENGINE could file a new infringement complaint to address Claim 4 of the '969 Patent, there are many reasons why including it in this case would be more efficient. The parties have already produced infringement and invalidity contentions that detail their positions on this claim. *See, e.g.* Ex. 11 at 5-6 (identifying Claim 4 as infringed by PayPal products); Ex. 12 at 1-2 (identifying PayPal's positions on Claim 4). In short, the parties do not begin on a blank slate. They have already informed each other of their arguments, and there will be no need to redo contentions. Further, the parties have produced significant discovery in this case that goes to the infringement and validity of this claim. Including this claim into the case at this time would not require additional fact discovery or discovery requests, whereas a new litigation would require the parties to start discovery from scratch.

The inclusion of Claim 4 would require only short, supplemental expert reports on validity and infringement that address this single claim. The experts in this case are already familiar with the discovery, including the relevant source code, documents, deposition testimony, and discovery

---

[7] This direct question and answer between the Court and counsel came at the end of the teleconference, and summarizes the other statements made on this issue. To the extent that there is any confusion as to the positions of the parties on the scope of IOENGINE's representations, this colloquy at the end of the conference, which included a direct question from the Court and follow up questions from Defendants, is determinative.

responses. This expert discovery could be completed quickly, simultaneously with other issues that the experts will need to address and is accounted for in the schedule proposed by IOENGINE.

Judicial economy would be best served by addressing PayPal's infringement of Claim 4 in this case, with contentions done, document discovery and fact depositions already completed, expert witnesses familiar with the source code and art, and taking minimal additional time in the schedule. Accordingly, IOENGINE respectfully requests that the Court allow IOENGINE to assert Claim 4 of the '969 Patent against PayPal at trial in this action.[8]

### E.    The Parties Should Be Permitted Brief Supplemental Expert Reports to Address the Federal Circuit's Decision on the Appeal of Ingenico's IPRs

Subsequent authority from the Federal Circuit in the appeal from the Ingenico IPR proceedings has clarified the scope and effect of certain terms in the Synchronization Claims at issue here, including "content," "program code," and "encrypted communications," particularly as they relate to each other. *See* IPR Appeal at 1403-05. The parties should be permitted brief supplemental expert reports to address the effect of this decision.

After the PTAB found certain claims of the Patents in Suit unpatentable, IOENGINE appealed and the Federal Circuit reversed in part as to certain claims under the printed matter doctrine. *Id*. at 1400, 1405. In that opinion, the Federal Circuit rejected the Board's decision to afford no patentable weight to limitations directed to "encrypted communications" and "program code" in the Patents in Suit. *Id*. at 1405. In considering those limitations, the Federal Circuit

---

[8] To the extent that PayPal seeks collateral estoppel against '969 Patent Claim 4, such estoppel would also be improper. *See supra* at § III.B. Claim 4 recites "the transmission of encrypted communications from the communication network node to the terminal" and so is also materially different from the claims invalidated in the Ingenico Action. Like the Synchronization Claims discussed above, Claim 4's specific fourth program code must perform *its* specifically claimed function and is necessarily interconnected to other elements that support *that* function. None of the prior art addressed in the Ingenico Action discloses these specific encrypted communications, the particular recited program code or the interconnected elements that perform this function.

explained that "the form of a communication, such as whether the communication is encrypted, [is not] considered to be content." *Id.* The Federal Circuit further explained that "'program code' is not claimed for its communicative content; no informational content is claimed." *Id.* The Federal Circuit then went on to draw an explicit distinction between program code and "content," explaining that program code, along with encrypted communications, are not the same as "content" that is communicated between the portable device and the communications network node of the claims. *See id.* at 1405 (finding that "'encrypted communications' and 'program code' are not being claimed here for the content they communicate").

This decision by the Federal Circuit distinguishes between functional "program code" or "encrypted communications" on the one hand, and "content" on the other. This is relevant to the Synchronization Claims, which specifically recite "synchronizing ***content*** on the portable device with content on the communications network node." '703 Patent at Claim 114; '969 Patent at Claim 10 (same). The Federal Circuit's decision also draws a line between "program code" ('703 Patent, claims 61-62, 110-111; '969 Patent, claim 7) and "encrypted communications" ('969 Patent, claim 4) as they relate to "content." *See* IPR Appeal at 1405 (distinguishing the claimed "program code" and "encrypted communications" from "content"). To the extent that PayPal intends to argue that any firmware update functionality of the DiskOnKey may anticipate or render obvious any of the Synchronization Claims or '969 Patent Claim 4, the parties should be permitted to address whether, in light of the Federal Circuit's intervening decision, firmware is program code, or "content." To address this intervening authority, IOENGINE proposes that both parties provide short supplemental expert reports (in accordance with IOENGINE's proposed schedule) limited to addressing this issue in light of the Federal Circuit's guidance on the limitations of "program code," "encrypted communications," and "content."

Dated: June 6, 2025

**SMITH KATZENSTEIN & JENKINS LLP**

*Of Counsel:*

Noah M. Leibowitz
Gregory T. Chuebon
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
noah.leibowitz@dechert.com
greg.chuebon@dechert.com

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff IOENGINE LLC*

**Appendix A**

IOENGINE's Proposed Schedule

| Deadline | Proposed Date |
|---|---|
| Deadline for PayPal to Supplement Financial Production | July 8, 2025 |
| Initial Supplemental Expert Reports | August 1, 2025 (3.5 weeks) |
| Responsive Supplemental Expert Reports | August 15, 2025 (2 weeks) |
| Close of Expert Discovery | September 5, 2025 (3 weeks from responsive reports) |
| Hearing on Privity and IPR Estoppel | September 11, 2025, or at the Court's convenience |
| Case Dispositive Motions (if allowed) and *Daubert* Motions | September 19, 2025 (2 weeks) |
| Answering Briefs on Case Dispositive Motions (if allowed) and *Daubert* Motions | October 3, 2025 (2 weeks) |
| Reply Briefs on Case Dispositive Motions (if allowed) and *Daubert* Motions | October 10, 2025 (1 week) |
| IOENGINE Serves Proposed Revised Joint PTO | October 24, 2025 (2 weeks) |
| PayPal Serves Proposed Revised Joint PTO | October 31, 2025 (1 week) |
| Parties File Proposed Revised Joint PTO | November 7, 2025 (1 week) |
| Parties submit agenda items and proposed rulings for Pretrial conference | November 14, 2025 (3 business days prior to Pretrial Conference) |
| Each party shall file (i) proposed *voir dire* questions, (ii) proposed preliminary jury instructions, (iii) proposed final jury instructions, and (iv) a proposed verdict form | November 14, 2025 (3 business days prior to Pretrial Conference) |
| Pretrial Conference | November 19, 2025 (15 days from Joint PTO) – or at the Court's convenience, 2025 |
| Hearing re: admissibility of trial exhibits | Week of November 17, 2025 |
| Jury Trial | Week of December 8, 2025 |
| Parties Jointly Submit Form of Order to Enter Judgment on the Verdict | 7 days after the jury returns a verdict. |