IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IOENGINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-452 (WCB) |
| | ) | |
| PAYPAL HOLDINGS, INC., | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**PAYPAL'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND
NONINFRINGEMENT BASED ON PRECLUSION**

OF COUNSEL:

Jared Bobrow
Travis Jensen
Robert L. Uriarte
Jacob M. Heath
ORRICK, HERRINGTON
   & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
(650) 614-7400

Alyssa M. Caridis
ORRICK, HERRINGTON
   & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Tyler Miller
ORRICK, HERRINGTON
   & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

Originally Filed:  August 18, 2025
Redacted Version Filed:  August 25, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
clark@morrisnichols.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      The Asserted Patents and Claims.......................................................... 2

        B.      The DiskOnKey Prior Art ..................................................................... 3

        C.      The Accused Products and Infringement Theories................................ 4

        D.      The *Ingenico* Trial and Appeal ............................................................. 5

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF INVALIDITY........... 6

        A.      IOENGINE Is Collaterally Estopped from Disputing that DiskOnKey
                Invalidates the Base Claims .................................................................. 6

                1.      Factors 1 and 2: the identical issue was previously adjudicated and
                        actually litigated.................................................................... 7

                2.      Factor 3: Invalidity of the base claims was necessary for the
                        *Ingenico* verdict ................................................................... 7

                3.      Factor 4: IOENGINE was fully represented in the prior action ............... 8

                4.      IOENGINE had a full and fair opportunity to litigate invalidity of
                        the base claims ..................................................................... 8

        B.      The Sync Claims Are Invalid Under *Soverain* ..................................... 8

        C.      The Sync Claims Are Invalid Under Collateral Estoppel as Anticipated by
                DiskOnKey and Obvious Over DiskOnKey Combined with Elazar.................. 10

IV.     THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF
        NONINFRINGEMENT BASED ON PRECLUSION .................................................. 15

        A.      Collateral Estoppel Bars IOENGINE from Relitigating Whether the
                Ingenico Readers Infringe the Sync Claims......................................... 16

                1.      Factors 1 and 2: the identical issue was previously adjudicated and
                        actually litigated.................................................................. 16

                2.      Factor 3: Noninfringement of the Sync Claims was Necessary for
                        the *Ingenico* Jury Verdict..................................................... 18

       3.    Factor 4: IOENGINE was fully represented in the prior action .............. 18

       4.    IOENGINE had a full and fair opportunity to litigate infringement ....... 18

   B.    The *Kessler* Doctrine Bars IOENGINE from Litigating Whether the Ingenico Readers Infringe the Synchronization Claims ..................................... 18

V.    CONCLUSION............................................................................................................ 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  637 F. Supp. 3d 141 (D. Del. 2022) ................................................................7, 16

*Biogen Int'l GmbH v. Amneal Pharm. LLC*,
  487 F. Supp. 3d 254 (D. Del. 2020) ............................................................6, 7, 16

*Brain Life v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) ...........................................................15, 19, 20

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
  778 F.3d 1311 (Fed. Cir. 2015) ................................................................ *passim*

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  52 F.4th 1340 (Fed. Cir. 2022) ............................................................................7

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
  713 F.3d 1377 (Fed. Cir. 2013) .........................................................................17

*Chrimar Sys., Inc. v. Foundry Networks, Inc.*,
  No. 06-13936, 2011 WL 13161438 (E.D. Mich. May 2, 2011) *report and rec. adopted*, No. 06-13936, 2012 WL 3133897 (E.D. Mich. Aug. 1, 2012),
  *aff'd*, 501 F. App'x 977 (Fed. Cir. 2013) ..........................................................10

*Ingenico Inc. v. IOENGINE, LLC*,
  No. 2023-1367, 2025 WL 1318188 (Fed. Cir. 2025) ..................................... *passim*

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3d Cir. 2006) ................................................................................7

*Kessler v. Eldred*,
  206 U.S. 285 (1907) ....................................................................................... *passim*

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) ......................................................................7, 10

*Ohio Willow Wood Co. v. ALPS S., LLC*,
  C.A. No. 2:04-1223, 2012 WL 3283437 (S.D. Ohio Aug. 10, 2012) ......................9

*ParkerVision, Inc. v. Qualcomm Inc.*,
  116 F.4th 1345 (Fed. Cir. 2024) ...................................................................10, 11

*In re PersonalWeb Techs, LLC*
    961 F.3d 1365 (Fed. Cir. 2020).............................................................18

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*,
    232 U.S. 413 (1914)...............................................................19, 20

*SpeedTrack, Inc. v. Office Depot, Inc.*,
    791 F.3d 1317 (Fed. Cir. 2015).............................................................19

**Statutes**

35 U.S.C. § 282.............................................................11, 12

TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | Claim Listing |
| 2 | U.S. Patent No. 9,774,703 to McNulty |
| 3 | DX-170, M-Systems DiskOnKey product as depicted in this document (serial no. 32410900036847), *Ingenico Inc. v. IOENGINE, LLC,* No. 18-826-WCB (D. Del., June 1, 2018) |
| 4 | DX-331, Using DiskOnKey upgrade, *Ingenico Inc. v. IOENGINE, LLC,* No. 18-826-WCB (D. Del., June 1, 2018) |
| 5 | Excerpts from the Expert Rebuttal Report of Dr. Harry Bims Regarding Noninfringement of U.S. Patent Nos. 9,059,969 and 9,774,703, dated January 7, 2020 [FILED UNDER SEAL] |
| 6 | Excerpts from the Expert Report of Avi Rubin, dated November 19, 2021 [FILED UNDER SEAL] |
| 7 | PayPal's Third Supplemental Response to IOENGINE's Interrogatory No. 9, dated September 17, 2021 [FILED UNDER SEAL] |
| 8 | PayPal's Fourth Supplemental Response to IOENGINE's Interrogatory No. 1, dated October 21, 2021 (10/20/21) [FILED UNDER SEAL] |
| 9 | PayPal's Second Supplemental Response to IOENGINE's Interrogatory No. 11, dated October 21, 2021 [FILED UNDER SEAL] |
| 10 | DX-363, U.S. Patent Publication No. 2004/0039932 (Elazar), *Ingenico Inc. v. IOENGINE, LLC,* No. 18-826-WCB (D. Del., June 1, 2018) |
| 11 | U.S. Patent No. 9,059,969 to McNulty |
| 12 | Excerpts from the deposition of Avi Rubin, dated January 18, 2022 [FILED UNDER SEAL] |
| 13 | DX-336, DiskOnKey upgrade presentation, *Ingenico Inc. v. IOENGINE, LLC,* No. 18-826-WCB (D. Del., June 1, 2018) |
| 14 | DX-333, DiskOnKey Software Development Kit, *Ingenico Inc. v. IOENGINE, LLC,* No. 18-826-WCB (D. Del., June 1, 2018) |
| 15 | Patent Owner's Preliminary Response, *Ingenico Inc. v IOENGINE, LLC,* No. IPR2019-00879, Paper 11 (PTAB, July 16, 2019) |

PayPal Holdings, Inc. ("PayPal") respectfully moves for summary judgment that claim 114 of U.S. Pat. 9,774,703 (the "'703 patent") and claim 10 of U.S. Pat. 9,059,969 (the "'969 patent") (the "Sync Claims") are invalid and that the accused readers supplied by Ingenico do not infringe.

## I.    **INTRODUCTION**

After more than seven years of litigation, IOENGINE asserts just two dependent claims (*i.e.*, the Sync Claims). The Court should grant summary judgment of invalidity and partial summary judgment of noninfringement of those claims based on preclusion. The base claims (*i.e.*, '969 claims 1-2 and '703 claim 104) on which the Sync Claims depend were invalidated in the *Ingenico*[1] trial as anticipated by DiskOnKey and as obvious over DiskOnKey in view of U.S. Pub. 2004/0039932 (Ex. 10, "Elazar"). *Ingenico*, D.I. 500, 8-9. The Sync Claims add only the routine step that a "communication" (already sent to a "network" per the base claims) "facilitates synchronizing" portable device content with a network node (*e.g.*, a network server). Ex. 1 (claim listing).

Summary judgment of invalidity is warranted for two independent reasons. ***First***, collateral estoppel applies and the Sync Claims are invalid because "the differences between the unadjudicated [] and adjudicated patent claims do not materially alter the question of invalidity." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319-20 (Fed. Cir. 2015). *Infra* §III.B. ***Second***, because collateral estoppel bars IOENGINE from disputing that DiskOnKey invalidates the base claims, the only question is whether DiskOnKey also discloses the new element in the Sync Claims for anticipation, or otherwise renders the Sync Claims obvious (either alone or in combination with Elazar). There can be no genuine dispute it does, and summary judgment of invalidity is warranted. *Infra* §III.C.

---

[1] "*Ingenico*" refers to *Ingenico Inc. v. IOENGINE, LLC*, C.A. No. 18-826-WCB (D. Del.).

The Court also should grant partial summary judgment that the Ingenico-supplied readers do not infringe based on preclusion. ***First***, collateral estoppel bars IOENGINE from asserting that PayPal's use, sale, importation, etc. of the Ingenico readers infringes the Sync Claims because the *Ingenico* jury found that the very same readers do not infringe those claims. *Ingenico*, D.I. 500, 3, 5. *Infra* §IV.A. ***Second***, IOENGINE is barred from litigating whether the Ingenico readers infringe the Sync Claims since the Ingenico readers acquired the status of noninfringing goods vis-à-vis the '969 and '703 patents under the *Kessler* Doctrine. *Infra* §IV.B.

## II.    <u>BACKGROUND</u>

PayPal's status report summarizes the procedural background.  D.I. 563, 3-6.  Most relevant here, the Court held a jury trial in *Ingenico* (§II.D) where the jury found the Sync Claims not infringed and all other asserted claims (*i.e.*, '969 claim 3 and '703 claims 56, 90, 101, 105, and 124) invalid.  *Ingenico*, D.I. 500.  IOENGINE appealed invalidity and the Federal Circuit affirmed. *Ingenico Inc. v. IOENGINE, LLC*, No. 2023-1367, 2025 WL 1318188 at *8 (Fed. Cir. 2025).

### A.    **The Asserted Patents and Claims**

The '703 and '969 patents describe a three-part communication architecture comprising a portable device (such as a USB thumb drive) connected to an "access terminal" (such as a laptop) which, in turn, connects to a server through a network (such as the Internet).  Ex. 2 ('703 patent), Abstract; Fig. 1; 3:49-4:6.  The specification also discloses various software modules (*e.g.*, program code) that establish the communications between the components.  Both Sync Claims are dependent claims.  Claim 114 of the '703 patent depends from independent claim 104, and '969 claim 10 depends from claim 2 which, in turns depends from claim 1.  Ex. 1.  The base claims (*i.e.*, '703 claim 104 and '969 claims 1-2) cover the three-part architecture described above.  *Id.*  The Sync Claims add nothing inventive to their respective base claims.  Claim 114 simply recites that the "communication" from the portable device to the server recited in the base claim must

"facilitate synchronizing content on the portable device with content on the communications network node." '703, cl. 114. Claim 10 of the '969 patent is substantially identical, except that it also recites that "the communication network node comprises a database." '969, cl. 10. Regarding the Sync Claims, it bears noting that, as Dr. Rubin admitted at trial, "[t]he claim isn't saying that something gets synchronized. It[] just says that the message that gets sent would facilitate synchronization, make it possible." *Ingenico*, D.I. 508 (Rubin), 592:7-17.

### B. The DiskOnKey Prior Art

Ingenico presented evidence at trial regarding "DiskOnKey," a portable USB drive made and sold in the early 2000s. *See Ingenico*, D.I. 531, 3; Ex. 3. The portable DiskOnKey thumb drive (the claimed "portable device") plugs into a computer terminal (the claimed "terminal") which, in turn, connects to a network server (the claimed "communication[s] network node"). All DiskOnKey materials discussed herein were admitted into evidence at the *Ingenico* trial.

The DiskOnKey included a firmware upgrade application (called "DiskOnKey Upgrade") that "allows you to upgrade your DiskOnKey remotely with the most up-to-date software version." Ex. 4, 1. The steps of this process are displayed on the screenshot below, where the checkmarks and progress bar indicate the status of the upgrade procedure. *Id*.



The user guide explains that "[d]ouble click[ing] the DiskOnKey Upgrade application icon" launches the application. *Id.*, 1-2. Next, "[t]he application connects to a remote server and checks if a newer [software] version exists for the current DiskOnKey." *Id.* As shown above, the first step of "Getting current version – 2.50" refers to querying the DiskOnKey to provide the firmware version that is currently installed. *Ingenico*, D.I. 509, 803:14-804:3. The second step of "Connecting to server" is self-explanatory. *Id.*, 807:18-808:15. At step three, the DiskOnKey device is authenticated. *Id.*, 808:16-820:2. The server then "Check[s] for newer version" in step four. Ex. 4, 3; *see also Ingenico*, D.I. 509 (Trial Tr.), 820:3-822:3. If new firmware is available on the server, the step of "Getting new version" executes and the latest firmware version is downloaded from the server and installed on the DiskOnKey device. *Id.*

## C.    The Accused Products and Infringement Theories

At a high level, the accused PayPal Here solution comprises three pieces of hardware, each with its own software: a card reader (whose hardware and software are provided by third parties); a third-party smartphone onto which a PayPal application can be installed; and backend payment processing servers. Ex. 5 (Bims Noninf. Rpt.), ¶¶99-152.

IOENGINE accuses four PayPal Here readers of being the claimed portable devices: the Mobile Card Reader, Chip & Swipe Reader, and Chip & Tap Reader (all supplied by Ingenico), and the Chip Card Reader (supplied by Miura). Ex. 6 (Rubin Inf. Rpt.), ¶¶102-106, 461; Ex. 5, ¶¶101-103. The accused Ingenico readers are listed below. PayPal neither makes the accused readers nor possesses any source code stored thereon. *Id.*, ¶101; Ex. 7.

| Card Reader | Supplier | Model(s) |
|---|---|---|
| Mobile Card Reader | Ingenico | G3X, G4X[], G5X |
| Chip and Swipe Reader | Ingenico | Moby/3000, M0B30AA |
| Chip and Tap Reader | Ingenico | RP457c-BT, RP457c-0BT8901B |

Ex. 5, ¶103; Exs. 8-9.

IOENGINE posits two infringement theories: (1) a "payment transaction" theory, and (2) a "firmware update" theory. *E.g.*, Ex. 6, ¶¶423-425 (payment theory), 402-422 (firmware theory).

***Payment Transaction Theory***.   IOENGINE tried this theory in *Ingenico*.   IOENGINE asserted that sending "payment information" from a card reader to a server as part of a payment transaction constituted synchronization and thus infringed the Sync Claims:

> Now the reason [] this is synchronization is that when the credit card is swiped and read on the portable device, the portable device has [] the credit card information. And when it's received by the server …, now it's also present in the database and so the [] payment information has been synchronized.

*Ingenico*, D.I. 508 (Rubin), 479:20-480:3 ('969 claim 10); *see also id.* 536:24-537:15 ('703 claim 114 "met for the same reasons" as '969 claim 10).   IOENGINE asserts the same theory against *PayPal*.   Ex. 6, ¶¶452-458 ('969 claim 10); ¶¶423-425 ('703 claim 114).

***Firmware Update Theory***.   IOENGINE contends that updating card reader firmware "synchroniz[es] content" between a portable device and server and satisfies the Sync Claims.   Ex. 6, ¶¶402-422.   IOENGINE chose not to try this theory in *Ingenico*.

### D.    The *Ingenico* Trial and Appeal

In the *Ingenico* case, the parties tried anticipation by DiskOnKey, obviousness over DiskOnKey combined with Elazar, and infringement (including all Ingenico reader models supplied to PayPal) of the same eight claims asserted in the *PayPal* case.   *Ingenico*, D.I. 500.   At trial, IOENGINE pursued its "transaction theory" of infringement.   The jury found that DiskOnKey anticipated '969 claim 3 and '703 claims 56, 90, 101, 105, and 124, and that DiskOnKey combined with Elazar rendered those same claims obvious.   *Ingenico*, D.I. 500, 8 (anticipation), 9 (obviousness).   The jury did not reach validity of the Sync Claims because it found

those claims not infringed. *Id.* The jury found that Ingenico reader models G3X, G4X, G5X, Moby/3000, and RP457c did not directly infringe '969 claim 10.[2] *Id.*, 3.

The Court entered judgment consistent with the jury's verdict. *Ingenico*, D.I. 506. IOENGINE did not challenge the noninfringement verdict, but did move for JMOL of no invalidity. *Ingenico*, D.I. 512. The Court denied IOENGINE's JMOL motion. *Ingenico*, D.I. 531. IOENGINE appealed and the Federal Circuit affirmed. *Ingenico*, 2025 WL 1318188, at *8.

## III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT OF INVALIDITY

The Court should grant summary judgment of invalidity for two reasons. ***First***, collateral estoppel of invalidity extends to the Sync Claims under *Soverain*. ***Second***, summary judgment is appropriate because IOENGINE is estopped from disputing invalidity of the base claims, and there can be no genuine dispute that DiskOnKey discloses the remaining dependent claim elements, or at least renders the claims obvious. Because collateral estoppel of invalidity vis-à-vis the base claims is a predicate for summary judgment, PayPal addresses that topic first.

### A.  IOENGINE Is Collaterally Estopped from Disputing that DiskOnKey Invalidates the Base Claims

IOENGINE is estopped from disputing (1) that DiskOnKey (including the firmware update software) is prior art to the Sync Claims, and (2) that DiskOnKey discloses every base claim element. Collateral estoppel "preclude[s] a party from relitigating an issue that has previously been decided." *Biogen Int'l GmbH v. Amneal Pharm. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020). The Federal Circuit applies regional circuit collateral estoppel law (here, Third Circuit law), which requires: (1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being

---

[2] The jury did not decide whether Ingenico directly infringed '703 claim 114 because Ingenico (like PayPal) won summary judgment of no direct infringement. D.I. 511, 34. But it did find no indirect infringement of claim 114 (and '969 claim 10). *Ingenico* case, D.I. 500, 5.

precluded was fully represented. *Id.* (citing *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006)). However, Federal Circuit law applies to issues involving substantive patent law. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1347 (Fed. Cir. 2013). The precluded party "must have had a full and fair opportunity to litigate the issue." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1347 (Fed. Cir. 2022) (citations omitted).

### 1. Factors 1 and 2: the identical issue was previously adjudicated and actually litigated

In the patent context, Federal Circuit law applies in analyzing the "identity of the issue." *Biogen*, 487 F. Supp. 3d at 262-263. Here, PayPal raises the same defenses—anticipation (based on DiskOnKey) and obviousness (based on DiskOnKey combined with Elazar) against the same claims as Ingenico raised at trial. D.I. 406-1 (Bims Inv. Rpt.), §§VII.D and X.I); *id.*, §§VI.D.4 and XI.E.1. At trial, DiskOnKey was the ***only*** primary reference and Elazar was the only secondary reference. *Ingenico*, D.I. 497 (Jury Instructions, §4.2 "Prior Art"); *Ingenico*, D.I. 531 (JMOL Order), 3. PayPal's DiskOnKey theories include on-sale, public use, and prior use/knowledge. *See*, *e.g.*, D.I. 406-1, ¶¶282, 290. These were the same legal theories at the *Ingenico* trial. *Ingenico*, D.I. 497, 18-19. The *Ingenico* jury found '969 claim 3 and '703 claims 56, 90, 101, 105, and 124 both anticipated (*Ingenico*, D.I. 500, 8) and obvious (*id.*, 9). The *Ingenico* jury applied the same "clear and convincing evidence" burden of proof applicable here. *E.g.*, *id.*, 8.

### 2. Factor 3: Invalidity of the base claims was necessary for the *Ingenico* verdict

That the base claims were anticipated by DiskOnKey and rendered obvious by DiskOnKey in view of Elazar was essential to the *Ingenico* verdict and judgment. "The 'essential to the prior judgment' element can be satisfied when the prior judgment was reached through alternative findings." *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 637 F. Supp. 3d 141, 145 (D. Del.

2022) (citing *Jean Alexander Cosmetics*, 458 F.3d at 255). Thus, the jury's separate anticipation and obviousness findings each create estoppel.

Invalidated claim 105 of the '703 patent depends on independent claim 104, which means the jury invalidated claim 104 (on which Sync Claim 114 depends). *See Soverain*, 778 F.3d at 1315. Likewise, the jury invalidated '969 claim 3, which means it invalidated claims 1 and 2 on which claim 3 (and Sync Claim 10) depend. *Id*. Thus, the jury's implicit finding of base claim invalidity was necessary to its decision that '969 claim 3 and '703 claim 105 were invalid.

### 3.    Factor 4: IOENGINE was fully represented in the prior action

IOENGINE was fully represented by the same counsel as here and vigorously litigated the *Ingenico* case, including the jury trial which culminated in the invalidity verdict.

### 4.    IOENGINE had a full and fair opportunity to litigate invalidity of the base claims

IOENGINE plainly had a full and fair opportunity to litigate the validity of the base claims. As summarized in §II.D, the Court presided over a five-day jury trial where invalidity (both anticipation and obviousness) based on DiskOnKey figured prominently. IOENGINE presented its own technical expert who testified about DiskOnKey, and it cross-examined Ingenico's expert. *E.g.*, *Ingenico*, D.I. 510, 1062:10-1078:2 (Dr. Rubin testifying about validity); D.I. 509, 904:10-921:23 (Geier cross-examination re DiskOnKey). IOENGINE moved for JMOL regarding invalidity and pressed the issue on appeal. *See* §II.D. Both this Court and Federal Circuit rendered well-reasoned opinions rejecting IOENGINE's validity assertions. *Id*.

### B.    The Sync Claims Are Invalid Under *Soverain*

The *Ingenico* jury invalidated the base claims on which the Sync Claims depend. Under *Soverain*, collateral estoppel of invalidity extends to the Sync Claims because "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the

question of invalidity." *Soverain*, 778 F.3d at 1319-20. This line of reasoning did not originate with *Soverain*. *See, e.g., Ohio Willow Wood Co. v. ALPS S., LLC*, C.A. No. 2:04-1223, 2012 WL 3283437 (S.D. Ohio Aug. 10, 2012), *aff'd in relevant part*, 735 F.3d 1333 (Fed. Cir. 2013).

In *Soverain*, the underlying independent claim (15) had implicitly been held invalid. 778 F.3d at 1315. Dependent claim 39 (asserted in follow-on litigation) recited "[a] hypertext statement in accordance with claim 15, wherein the network is an Internet." *Id.*, 1319-20. The district court found dependent claim 39 not invalid. *Id.*, 1313. On appeal, the Federal Circuit concluded that "the routine incorporation of Internet technology in claim 39 does not change the invalidity analysis" and reversed the district court, holding that "[t]he invalidity of [dependent claim 39] is established by issue preclusion." *Id.*, 1319-20. The same result should obtain here.[3]

The invalid base claims recite sending a "communication" from the portable device to a network server. *See* Ex. 1. Merely requiring that the "communication" (already caused to be sent by the fourth program code) "facilitate[s] synchronizing content on the portable device with content on the communication[s] network node [database]" (*id.*) does not "materially alter" the invalidity analysis. Synchronizing content (*e.g.*, files) between a computer and a server (and sending a "communication" to "facilitat[e]" doing so) was very well-known prior to the earliest priority date of the Asserted Patents in March of 2004. D.I. 406-1, Ex. 2, ¶¶120-39 (discussing well-known file synchronization techniques). As in *Soverain*, where "routine incorporation of Internet technology" did not "materially alter" the invalidity question, sending a "communication"

---

[3] IOENGINE previously argued that the *Ingenico* jury "implicitly found that the scope of [the Sync Claims] is materially different when it found the [base claims] infringed and the Sync[] Claims not infringed." D.I. 564, 8-9. But *Soverain* rejects this line of argument, stating that "[c]omplete identity of claims is not required to satisfy the identity-of-issues requirement for collateral estoppel." 778 F.3d at 1319-20. In *Soverain*, limiting "network" in the independent claim to the "internet" in the dependent claim did not "materially alter the question of invalidity," even though "internet" is narrower than "network." *Id.* The same is true here.

to "facilitate" routine file synchronization does not alter the invalidity landscape here. *Id*. at 1319-20.  Accordingly, "invalidity of [the Sync Claims] is established by issue preclusion." *Id*.

### C.    The Sync Claims Are Invalid Under Collateral Estoppel as Anticipated by DiskOnKey and Obvious Over DiskOnKey Combined with Elazar

Even if the Sync Claims differed sufficiently from the base claims to avoid issue preclusion under *Soverain*—they do not—IOENGINE is still collaterally estopped from disputing that DiskOnKey (alone and in combination with Elazar) satisfies all base claim limitations based on the *Ingenico* invalidity judgment for '969 claim 3 and '703 claim 105.   §III.A.2.  All that remains for summary judgment is to show that there is no genuine dispute that DiskOnKey discloses the dependent Sync Claim requirements for anticipation, or at least renders the Sync Claims obvious notwithstanding those requirements.  This is plainly the case.  The evidence uniformly shows that DiskOnKey discloses and renders obvious the additional Sync Claim limitation (D.I. 406-1, ¶¶903-913 (claim 114), 175 (claim 10)) and the Court should grant summary judgment.

The court's decision in *Chrimar Sys., Inc. v. Foundry Networks, Inc.*, No. 06-13936, 2011 WL 13161438 (E.D. Mich. May 2, 2011), *report and rec. adopted*, No. 06-13936, 2012 WL 3133897 (E.D. Mich. Aug. 1, 2012), *aff'd*, 501 F. App'x 977 (Fed. Cir. 2013), is instructive.  There, in the summary judgment context, the court considered validity of two claims (14 and 17) in light of the prior invalidity finding of claim 1.  To invalidate the challenged claims, the court recognized that the defendant "need only demonstrate that the [prior art] references contain the [claim elements] that are not also present in claim 1," and then considered those elements in granting summary judgment that claim 14 was anticipated and that claim 17 was obvious. *Id.*, *9; see Ohio Willow Wood*, 2012 WL 3283437, *aff'd in relevant part*, 735 F.3d 1333 (Fed. Cir. 2013) (similar).

Citing *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1357 (Fed. Cir. 2024), IOENGINE argues that the *Chrimar* approach is legally flawed because "collateral estoppel must

10

be assessed on a claim-by-claim basis, not element-by-element," and contends that PayPal seeks an "end-run around the requirements of 35 U.S.C. § 282 by attempting to improperly dissect the [base claims] into individual elements and then asserting collateral estoppel on an element-by-element basis."  D.I. 564, 9.  But *ParkerVision* is easily distinguished and does not support IOENGINE's assertion.  In *ParkerVision*, the Federal Circuit held that "an unpatentability decision **in an IPR proceeding** [does not] collaterally estop[] a patentee from making validity arguments regarding separate, related claims in district court."  116 F.4th at 1362.  The reason was simple: "[i]n the IPR proceedings, [the] burden of proof was only a preponderance of the evidence."  *Id*. This is a straightforward application of collateral estoppel law, which requires that the "identical issue" was litigated.  As noted in §III.A.1, PayPal is invoking collateral estoppel based on the *Ingenico* district court verdict and judgment, which applied the clear and convincing evidence standard, not on an IPR proceeding (preponderance of the evidence).[4]  In summary, *ParkerVision* declined to apply collateral estoppel because of the different burden of proof, not because applying estoppel to individual claim elements would create an "end-run" around § 282.

Turning to the Sync Claims, '969 base claim 2 and '703 base claim 104 both require that the "fourth program code … cause a communication to be transmitted to the communication[s] network node."  Ex. 1.  At trial, Ingenico relied on DiskOnKey's public key as the "communication" sent from the portable device (*i.e.*, DiskOnKey) to the server to prove invalidity

---

[4] To be sure, it has been asserted that IPR unpatentability findings create collateral estoppel in district court proceedings.  *See Kroy IP Holdings, LLC v. Groupon, Inc.*, 2025 WL 2178321 at *2 (Fed. Cir. Aug. 1, 2025) (in dissenting from denial of *en banc* review, asserting that "[PTAB decisions] determining that particular claims are unpatentable have collateral estoppel effect in district court infringement litigation").  But this Court need not wade into that debate here because PayPal relies on the *Ingenico* district court proceedings, not a PTAB proceeding.

of the base claims. *Ingenico*, D.I. 509 (Geier), 838:13-847:11 (DiskOnKey's public key satisfies '703 claim 105); 857:21-858:1 (same for '969 claim 3); 860:13-862:24.

Thus, for summary judgment of the Sync Claims, all PayPal needs to show is that there is no genuine dispute that DiskOnKey discloses using the public key to "facilitate[] synchronizing content on the portable device with content on the communication[s] network node [database]," or that doing so would have been obvious in light of DiskOnKey.[5] There can be no genuine dispute that DiskOnKey's Firmware Upgrade does just that. Indeed, the whole point of the Firmware Upgrade is to synchronize the DiskOnKey firmware with that on the server. §II.B. As the DiskOnKey manual used at trial states: "The application connects to a remote server and checks if a newer version exists for the current DiskOnKey." Ex. 4, 2.

IOENGINE is estopped from contesting that DiskOnKey sends its public key to the server: "The DiskOnKey identifies the designated upgrade server using Public Key Infrastructure (PKI)" and "[t]he upgrade server identifies the DiskOnKey using PKI." Ex. 13, 4. "[A]fter both are mutually identified, the DiskOnKey allows new firmware to replace the previous one." *Id*.; *see also* Ex. 14,, 71. Only after PKI authentication does the server check whether a "new [firmware] version" is available. Ex. 4, 2. If so, it is downloaded to the DiskOnKey for installation.

---

[5] Regarding the term "database" in '969 claim 10, there can be no genuine dispute that DiskOnKey's firmware upgrade discloses or renders obvious a server "database" (*viz.*, for storing and comparing the newest firmware version). This is especially true given the patent specification's broad description of "database" as "stored program code[] which is executed by the CPU" to "configur[e] the CPU to process [] stored data." Ex. 11 ('969 patent), 18:29-33; *see also id.*, 18:33-35 (describing databases as "conventional"); 18:47-50 (database is "implemented using various **standard data-structures**"); 18:60-66 (server database "may be consolidated and/or distributed in countless variations"). Dr. Rubin testified at trial that "[a POSITA] would understand that [synchronizing across digital environments] involves a database." *Ingenico*, D.I. 510, 1061:8-16; *see also* Ex. 12, 78:13-17 (admitting "databases were common … in 2001"); Ex. 11, 18:30-46 (databases were "conventional"). At a minimum, it would have been obvious to a POSITA to use a server "database" for firmware synchronization in the DiskOnKey system. *See generally* D.I. 406-1, Ex. 2, ¶¶120-139.

Sending the public key to the upgrade server to authenticate the DiskOnKey "facilitate[s] synchronizing content on the portable device with content on the communication[s] network node [database]" (*viz.*, checking for and downloading the latest firmware), or at least renders doing so obvious. Indeed, IOENGINE's expert agrees that the "synchronization" limitation is met by "synchronizing … firmware on the portable device with the latest version of such on a server." Ex. 6, ¶¶403-404. And Dr. Bims demonstrated clearly and convincingly how DiskOnKey (alone or in combination with Elazar) satisfies the Sync Claims.[6] Ex. D.I. 406-1, ¶¶903-913 (claim 114), 175 (claim 10). Because there can be no genuine dispute that DiskOnKey (alone or in combination with Elazar) discloses or renders obvious "facilitate[ing] the transmission of encrypted communications …," summary judgment is appropriate.

IOENGINE has also argued against summary judgment because Dr. Rubin testified that DiskOnKey "could have been implemented" to "downloaded [firmware] to the computer connected to the DiskOnKey" instead of to the DiskOnKey itself. D.I. 564, 12 (citing *Ingenico*, D.I. 509 (Rubin), 1071:17-1072:2). This cannot raise a genuine dispute because it is speculation and makes no sense—the whole point of downloading the latest firmware is to install it ***on the DiskOnKey***, not the terminal. Regardless of whether the new DiskOnKey firmware stops at the computer along the way, it must be downloaded to ***the DiskOnKey*** where it is installed. Moreover, even if DiskOnKey operated as IOENGINE speculates (it does not), it makes no difference because downloading the firmware directly to the DiskOnKey (with no intermediate stop at the terminal)

---

[6] To show obviousness, defendants have sometimes invoked collateral estoppel for an independent claim (invalidated by prior art X) and then relied on prior art Y to satisfy the dependent claim limitation without evidence of motivation to combine. Such an approach may compromise the presumption of validity under § 282. But that is not what PayPal is doing here. PayPal relies on ***the identical prior art*** that the *Ingenico* jury found rendered obvious the base claims, making the obviousness analysis straightforward and avoiding any § 282 concern.

would have been an obvious implementation since DiskOnKey is the final destination for the firmware. Indeed, the user guide states that "[b]efore you begin running the DiskOnKey Upgrade application make sure you have an active connection to the Internet." Ex. 4, 1. If the terminal already stored the latest firmware, there would be no need to connect to the server to perform the upgrade. Moreover, downloading the firmware directly to the DiskOnKey would provide added security because that is where the Crypto engine (for decrypting files) is located. *Ingenico*, D.I. 509 (Sobol), 736:3-737:19 (discussing DiskOnKey's dedicated "crypto engine"); *Ingenico*, Ex. 14, §5.8 (describing DiskOnKey's encryption/decryption capabilities).

As internal DiskOnKey documents explain, "[t]he DOK Upgrade is a ***secure client-server application*** that allows a DiskOnKey firmware to be remotely upgraded." Ex. 13, 2. It is "secure" because "DOK Upgrade employs the latest state of the art security technology embedded inside the Smart DiskOnKey Hardware." *Id*., 3. "The upgrade server identifies the DiskOnKey using PKI." *Id*., 4. "Only after both are mutually identified, the DiskOnKey allows new firmware to replace the previous one." *Id*.; *see also Ingenico*, Ex. 14, 71 ("DiskOnKey cryptography capabilities … enables you to … encrypt or decrypt data …. All the cryptographic actions are executed on the DiskOnKey."); *id*., 76-77 ("decryptBuffer" function "[d]ecrypts a buffer using a DES/3 encryption algorithm."). In addition to confirming how DiskOnKey Upgrade actually worked (*viz*., using secure communications with the server to download encrypted firmware directly from the server), the built-in PKI and encryption/decryption capabilities of DiskOnKey also establish (at a minimum) a reasonable expectation of success in using such an approach.

The Court should reject any attempt by IOENGINE to manufacture a dispute over the meaning of "content" (*viz*., to exclude software/firmware). D.I. 564, 19-20. There can be no legitimate dispute that "content" includes code (such as firmware/software) given that IOENGINE

admitted in the IPR proceedings that "synchronizing the contents of the portable device and server, includ[es] receiving updated data **and program code**." Ex. 15 at 34. Regardless, DiskOnKey in view of Elazar discloses transmitting non-code content, and thus renders the Sync Claims obvious. *E.g.*, Elazar, [0038] ("[The server] sends the content through the network to the digital appliance."); D.I. 406-1, ¶¶930-936 (discussing motivation to combine with Elazar), 912.

## IV.    THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT BASED ON PRECLUSION

As PayPal's status report notes, the only remaining infringement issues are direct infringement of '969 claim 10 and post-suit inducement of both Sync Claims. D.I. 563, 16. The *Ingenico* jury found no direct infringement of '969 claim 10 (and no indirect infringement of either Sync Claim) and IOENGINE did not appeal those findings. §II.D. This gives rise to collateral estoppel and the *Kessler* Doctrine vis-à-vis noninfringement for the Ingenico-supplied readers.

Collateral estoppel bars IOENGINE from relitigating whether the Ingenico readers directly infringe '969 claim 10. Because '969 claim 10 is an apparatus claim directed to a "portable device" (which IOENGINE maps to the Ingenico reader) and PayPal's customers cannot change the card reader hardware or software, there is no underlying direct infringement. Without direct infringement, collateral estoppel also requires summary judgment of no inducement of '969 claim 10. And because '703 claim 114 contains the same "synchronization" limitation as '969 claim 10, collateral estoppel extends to inducement of '703 claim 114. In addition, the *Kessler* Doctrine precludes IOENGINE from pursuing allegations that PayPal (or its customers) infringe the Sync Claims vis-à-vis the Ingenico card readers because those readers "acquired the status of noninfringing products." *Brain Life v. Elekta Inc.*, 746 F.3d 1045, 1059 (Fed. Cir. 2014) (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)). This extends to theories (like IOENGINE's "firmware update" theory) that it could have pursued against Ingenico.

A.    **Collateral Estoppel Bars IOENGINE from Relitigating Whether the Ingenico Readers Infringe the Sync Claims**

IOENGINE is collaterally estopped from relitigating the *Ingenico* jury verdict (and subsequent judgment) that the Ingenico readers do not infringe the Sync Claims. The legal test for collateral estoppel was summarized in §III.A. Regarding the need for a "final and valid judgment" in the first action (*Biogen*, 487 F. Supp. 3d at 258), that requirement is met here as IOENGINE elected not to appeal the Court's judgment of noninfringement. §II.D.

1.    **Factors 1 and 2: the identical issue was previously adjudicated and actually litigated**

In the patent context, Federal Circuit law applies to the "identity of the issue" and requires that "the accused products in the two suits are essentially the same." *Acceleration Bay*, 637 F. Supp. 3d at 145. At trial, IOENGINE litigated whether the Mobile Card Reader, PayPal Chip and Swipe Reader, and the PayPal Chip and Tap Reader (all supplied to PayPal by Ingenico) infringed the Sync Claims. §§II.C-D. IOENGINE accuses the Ingenico reader models in the *PayPal* case. *Id*. IOENGINE's infringement theory at trial was that sending "payment information" from a reader to a server constituted synchronization. *Id*. Ingenico argued noninfringement because the readers delete the payment information "as soon as it is sent," eliminating the possibility of synchronization. *Ingenico*, D.I. 508, 638:21-639:14 (Mr. Rotsaert); D.I. 509, 896:10-898:20 (Geier); D.I. 511, 1343:25-1345:8 (Ingenico closing argument).

Thus, the "issue" litigated was whether a card reader that does not retain payment information "synchroniz[es] content" between a portable device and server. The jury found against IOENGINE. *Ingenico*, D.I. 500, 3, 5. The verdict vis-à-vis '969 claim 10 necessarily turned on synchronization because the jury found infringement of '969 claim 3, which depends on the same base claims (*i.e.*, claims 1-2) as claim 10. *Ingenico*, D.I. 500, 3, 5; Ex. 1. Any argument that the *Ingenico* jury found '969 claim 10 not infringed because it recites a "database" is baseless

as Ingenico presented no such argument at trial.  Regarding retaining payment information, the Ingenico readers in the *PayPal* case operate in the same manner.  PayPal cannot change the card reader software at all, much less to retain card information.  §II.D; Ex. 7; Ex. 5, ¶113.

Collateral estoppel also bars IOENGINE from litigating inducement of both Sync Claims. The fact that the accused card readers do not satisfy the "facilitates synchronizing content" language of '969 claim 10 disposes of IOENGINE's inducement allegations for that claim because PayPal customers cannot change the card reader software.  Thus, there can be no underlying act of direct infringement (*i.e.*, the accused readers do not "synchronize content" regardless of who uses them), which is required for a finding of inducement.

The Court previously denied summary judgment of no direct infringement for '969 claim 10 because that claim "does not require … a terminal [smartphone] in order to infringe."  D.I. 511, 32-33.  This disposes of IOENGINE's argument that purported differences in the PayPal and Ingenico smartphone apps defeat collateral estoppel.  D.I. 564, 14.  The same logic applies to IOENGINE's "server" argument—*i.e.*, "communication network node" is no more a claim limitation than "terminal."  *See id.*, 15.

While the *Ingenico* jury did not decide direct infringement of '703 claim 114 (because Ingenico won summary judgment of no direct infringement), claim 114 contains the same "facilitate[s] synchronizing" language as '969 claim 10 and thus collateral estoppel applies to inducement of '703 claim 114 as well.  *See, e.g.*, *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1381 (Fed. Cir. 2013).  Any argument that the accused card readers are not subject to collateral estoppel of '703 patent claim 114 because that claim requires a "terminal" and/or a "communications network node" fails.  Base claim 104 was necessarily found to be infringed in the *Ingenico* case because the jury found infringement of '703 claim 105 which depends on claim

104.  Ex. 1; *Ingenico*, D.I. 500, 5.  Thus, the jury's noninfringement finding for claim 114 flows exclusively from the additional language present in claim 114.  But that language does not even recite a "terminal," making any "terminal" differences irrelevant to collateral estoppel.

### 2. Factor 3: Noninfringement of the Sync Claims was Necessary for the *Ingenico* Jury Verdict

The jury expressly found that Ingenico reader models G3X, G4X, G5X, Moby/3000, and RP457c did not infringe '969 claim 10.  *Ingenico*, D.I. 500, 3, 5.

### 3. Factor 4: IOENGINE was fully represented in the prior action

IOENGINE was fully represented by the same counsel as here and vigorously litigated the *Ingenico* case, including the trial which culminated in the Sync Claim noninfringement verdict.

### 4. IOENGINE had a full and fair opportunity to litigate infringement

IOENGINE had a full and fair opportunity to litigate whether the Ingenico-supplied readers infringed the Sync Claims in a 5-day jury trial and lost, fair and square.  Infringement was a central issue at trial.  IOENGINE presented its own technical expert and cross-examined Ingenico's expert.  *E.g.*, *Ingenico*, D.I. 508, 403:22-464:18, 477:6-541:2 (especially 477:8-481:25) (Dr. Rubin testifying about infringement); D.I 509, 921:24-937:1 (Geier cross-examination).

### B. The *Kessler* Doctrine Bars IOENGINE from Litigating Whether the Ingenico Readers Infringe the Synchronization Claims

The *Kessler* Doctrine "fills the gap left by claim and issue preclusion" and bars IOENGINE's "firmware update" infringement claims against the Ingenico readers.  *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) (discussing *Kessler*).  The *Kessler* Doctrine bars claims against a customer (*viz.*, PayPal) when a court previously found noninfringement involving the same (or essentially the same) products in a suit against the manufacturer (*viz.*, Ingenico).  *Kessler*, 206 U.S. 285.  As the Federal Circuit has explained:

> [T]he *Kessler* doctrine is a necessary supplement to issue and claim preclusion: without it, a patent owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the manufacturer's customers…. That result would authorize the type of harassment the Supreme Court sought to prevent in *Kessler* when it recognized that follow-on suits against customers could destroy the manufacturer's judgment right.

*SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015). That is precisely the situation here. IOENGINE argues it is free to pursue infringement claims against PayPal because the *Ingenico* jury "found that the [Sync Claims] were not infringed ***by Ingenico***" (D.I. 564, 13 (emphasis original)). But the *Kessler* Doctrine "grant[s] a 'limited trade right' that attaches to the product itself." *Speedtrack*, 791 F.3d at 1323 (cite omitted). The *Kessler* Doctrine is not limited to the specific theory presented in the *Ingenico* case. *Brain Life*, 746 F.3d at 1058-59. The *Kessler* Doctrine rights also extend to allegedly infringing acts that occur after final judgment. *Id.*, 1057.

IOENGINE seeks to invoke the *Rubber Tire* exception, which provides that "[i]f [a] commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in the original part as an article of commerce is necessarily gone." D.I. 567, 6 (quoting *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418-19 (1914)). IOENGINE contends the exception applies because PayPal provides a smartphone app and backend servers. *Id.*, 5-6. IOENGINE's argument fails for two separate reasons.

*First*, the circumstances here are nothing like *Rubber Tire*, where a purchaser bought rubber and used it to manufacture tires. *Rubber Tire*, 232 U.S. at 416. *Rubber Tire* recognized that the *Kessler* Doctrine applies "so long as the commodity to which the right applies retains its separate identity." *Id.* at 418-419. That is the case here, where the Ingenico products retain their "separate identity" as card readers. The readers are not used for the "manufacture of a new commodity." *Id.*, 419. Indeed, they are not "commodities" like rubber at all, but are specialized devices (whose hardware/software cannot be changed) for conducting card transactions. §II.D.

*Second*, the Court already ruled that '969 apparatus claims "[do not] require … a terminal in order to infringe."  D.I. 511, 33; *id*. 32 ('969 claim 1 is "explicitly directed to a 'portable device.'").  The same logic which led the Court to conclude that the "terminal" was not a substantive claim limitation applies to "communication[] network node."

Any argument that the Ingenico reader are not subject to the *Kessler* Doctrine vis-à-vis '703 claim 114 because that claim requires a "terminal" and/or a "communications network node" fails.  The jury's noninfringement finding for claim 114 flows exclusively from its additional language because the *Ingenico* jury implicitly found base claim 104 infringed when it concluded that claim 105 was infringed. Ex. 1; *Ingenico*, D.I. 500, 5.  But claim 114's new text does not recite a "terminal," making any purported differences in terminals irrelevant to that claim.

The only new language in claim 114 states that the "communication" which the fourth program code (on the portable device) caused to be sent "facilitate[s] synchronizing content on the portable device with content on the communications network node."  Ex. 1.  But any differences between the accused "communications network node" (*viz*., servers) in the *Ingenico* and *PayPal* cases are irrelevant because IOENGINE relies on the same industry standard vis-a-vis the accused servers.  *Compare Ingenico*, D.I. 508 (Rubin), 478:2-24 *with* Ex. 6, ¶¶452-458.  It simply does not matter who (*viz*., PayPal or its merchant customers) uses the accused readers because they "acquired the status of noninfringing products."  *Brain Life.*, 746 F.3d at 1058-1059.

This is a model situation "where circumstances justify th[e] result" of allowing "business as usual" to continue following a noninfringement finding.  *Brain Life*, 746 F.3d at 1056.  To cabin the *Kessler* Doctrine as IOENGINE proposes (*e.g.*, based on generic smartphones that neither Ingenico nor PayPal supply) would allow the *Rubber Tire* exception to swallow the rule.

## V.    **CONCLUSION**

PayPal respectfully requests that the Court grant summary judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Jared Bobrow
Travis Jensen
Robert L. Uriarte
Jacob M. Heath
ORRICK, HERRINGTON
    & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
(650) 614-7400

Alyssa M. Caridis
ORRICK, HERRINGTON
    & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Tyler Miller
ORRICK, HERRINGTON
    & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

August 18, 2025

Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
clark@morrisnichols.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 18, 2025, upon the following in the manner indicated:

Neal C. Belgam, Esquire                                          *VIA ELECTRONIC MAIL*
Daniel A. Taylor, Esquire
SMITH, KATZENSTEIN & JENKINS, LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
*Attorneys for Plaintiff*

Noah M. Leibowitz, Esquire                                      *VIA ELECTRONIC MAIL*
Gregory T. Chuebon, Esquire
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
*Attorneys for Plaintiff*

Luke M. Reilly, Esquire                                            *VIA ELECTRONIC MAIL*
Michael A. Fisher, Esquire
Judah Bellin, Esquire
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
*Attorneys for Plaintiff*

Michael H. Joshi, Esquire                                        *VIA ELECTRONIC MAIL*
DECHERT LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA  94306
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 25, 2025, upon the following in the manner indicated:

Neal C. Belgam, Esquire                                          *VIA ELECTRONIC MAIL*
Daniel A. Taylor, Esquire
Smith, Katzenstein & Jenkins, LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
*Attorneys for Plaintiff*

Noah M. Leibowitz, Esquire                                   *VIA ELECTRONIC MAIL*
Gregory T. Chuebon, Esquire
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
*Attorneys for Plaintiff*

Luke M. Reilly, Esquire                                          *VIA ELECTRONIC MAIL*
Michael A. Fisher, Esquire
Judah Bellin, Esquire
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
*Attorneys for Plaintiff*

Michael H. Joshi, Esquire                                       *VIA ELECTRONIC MAIL*
Dechert LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA  94306
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)